UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LAWRENCE JACOBS, JR.                          CIVIL ACTION

VERSUS                                        NO. 15-1334

DARREL VANNOY                                 SECTION "R" (2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.   Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1]   For the following reasons, I recommend that the petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    INTRODUCTION

On April 24, 2015, petitioner Lawrence J. Jacobs, Jr., through counsel, filed a petition for federal habeas corpus relief under 28 U.S.C. § 2254 challenging his 2006 Jefferson Parish conviction on two counts of second degree murder for which he is serving a life sentence.   ECF No. 1.   On May 13, 2015, the previously assigned Magistrate Judge Joseph Wilkinson, Jr. (retired), granted Jacobs' first unopposed motion to stay the proceedings to await the United States Supreme Court's ruling in *Montgomery v. Louisiana*, 577 U.S. 190 (2016), and his possible resentencing under *Montgomery* and *Miller v. Alabama*, 567 U.S. 460 (2012).   ECF No. 7.

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.   *Id*. § 2254(e)(2)(B).

Magistrate Judge Wilkinson granted a second or extended stay of the case on March 10, 2016, following the United States Supreme Court's grant of Jacobs' writ of certiorari and remand for the state courts to comply with the mandate in *Montgomery*.   ECF Nos. 9, 10.

On April 12, 2021, the undersigned held a conference with Jacobs' newly enrolled counsel and counsel for the Respondent after which the court granted Jacobs' unopposed motion to lift the stay.   ECF Nos. 16, 21.   At the court's direction, on May 12, 2021, Jacobs filed a superseding § 2254 habeas petition to provide a concise statement of the claims remaining before the court.[2] This Report and Recommendation issues to resolve those claims.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

On December 5, 1996, Jacobs and his co-defendant, Roy Bridgewater, were charged by a Jefferson Parish grand jury in a two-count indictment for the first degree murder of Nelson Beaugh and the first degree murder of Della Beaugh.[3]   The Louisiana courts summarized the facts of Jacobs' case as follows:

> On the morning of October 31, 1996, forty-five-year-old Nelson Beaugh and his seventy-year-old mother, Della Beaugh, were fatally shot in Nelson's home in Marrero, Louisiana.   Nelson's mother-in-law discovered their bodies when she arrived to clean the house that same morning.   Both victims had been shot in the head.
> An investigation led to the issuance of an arrest warrant for the defendant, Lawrence J. Jacobs, Jr., who was sixteen years old at the time . . . . When the police contacted the defendant's father, Lawrence Jacobs, Sr., Mr. Jacobs notified the case agent, Lieutenant Snow, that his son had run away from home two months earlier, but that he would assist in locating him.   Thereafter, Mr. Jacobs discovered that the defendant had fled to Jackson, Mississippi, where they had relatives.   Mr. Jacobs picked his son up in Jackson, drove him back to Louisiana, and surrendered him to Lt. Snow.[4]

---

[2] ECF No. 25, at i-ii.

[3] State Record (hereinafter "St. R.") Vol. 1 of 109 at 1-2, Indictment, 12/5/96.

[4] *State v. Jacobs*, 07-887 (La. App. 5th Cir. 5/24/11); 67 So. 3d 535, 550 (quoting *State v. Jacobs*, 99-1659   (La. 6/29/01); 789 So. 2d 1280, 1282); *see also* St. R. Vol. 54 of 109 at 13410, 5th Cir. Opinion, 07-KA887, 5/24/11.

A.     **Jacobs' First Capital Trial and Direct Appeal**[5]

Jacobs was separately tried before a jury on April 13 through 17, 1998.[6]   During jury selection, on April 15, 1998, the indictment was amended by the State to merge the first degree murders of both victims into count one against both defendants, and count two of the original indictment was dismissed.[7]   The amendment was memorialized by handwritten notation on the original indictment.[8]   Following trial, the jury found Jacobs guilty as charged of first degree murder.[9]   On May 18, 1998, Jacobs was sentenced to death pursuant to the jury's verdict finding the requisite aggravating circumstances.[10]

On direct appeal to the Louisiana Supreme Court, Jacobs asserted 27 assignments of error, only one of which was addressed by the court, *i.e.* the state trial court erred by denying the defense's challenge for cause as to jurors Dyer, Dunham, and Gerhardt.[11]   The court determined that Dyer and Dunham should have been dismissed for cause because of their respective predisposition towards the death penalty without rehabilitation.[12]   The court presumed prejudice

---

[5] This habeas corpus petition addresses issues related only to the second trial, not the first trial.   Information relating to the first trial is summarized for background purposes only.

[6] St. R. Vol. 3 of 109 at 538-40, Trial Mins., 4/13/98; *id*. at 542-44, Trial Mins., 4/14/98; *id*. at 549-50, Trial Mins., 4/15/98; *id*. at 553-54, Trial Mins., 4/16/998; *id*. at 556-57, Trial Mins., 4/17/98.   The Louisiana Fifth Circuit Court of Appeal summarized co-defendant Bridgewater's conviction proceedings:
In a separate trial, defendant's co-perpetrator, Roy Bridgewater, was convicted of first degree murder.   *State v. Bridgewater*, 00–1529 (La. 1/15/02), 823 So. 2d 877, *cert. denied*, 537 U.S. 1227 (2003).   On appeal, the Louisiana Supreme Court found that the State did not present sufficient evidence to support a first degree murder conviction. As a result, the supreme court vacated the verdict and rendered a judgment of guilty of second degree murder. *Bridgewater*, 823 So. 2d at 904.   On rehearing, the supreme court reversed its ruling, determined the evidence was sufficient to uphold Bridgewater's conviction for first degree murder, and reinstated his conviction.   *Bridgewater*, 823 So. 2d at 914-15.   After the United States Supreme Court held that the execution of individuals who were under the age of 18 at the time of their capital crimes is prohibited by the Eighth and Fourteenth Amendments, *Roper v. Simmons*, 543 U.S. 551 (2005), Bridgewater was resentenced to life imprisonment.
*State v. Jacobs*, No. 07-887   (La. App. 5th Cir. 5/12/09); 13 So. 3d 677, 680 n.1, *reversed*, No. 2009-1304 (La. 4/5/10); 32 So. 3d 227.

[7] St. R. Vol. 3 of 109 at 549, Trial Mins., 4/15/98; *id*. at 606, Amended Indictment, 4/15/98.

[8] *St. R. Vol. 3 of 109* at 549.

[9] *Id.* at 556; *id*. at 558, Jury Verdict, 4/17/98.

[10] St. R. Vol. 3 of 109 at 605, Sentencing Mins., 5/18/98; *id*. at 595, Penalty Verdict, 4/18/98.

[11] *Jacobs*, 789 So. 2d at 1283; St. R. Vol. 3 of 109 at 636, La. Sup. Ct. Order, 99-KA-1659, 6/29/01.

[12] *Id.* at 1285, 1288; St. R. Vol. 3 of 109 at 641, 647.

because the defense subsequently exhausted its peremptory challenges.[13]   On June 29, 2001, the

court reversed the conviction and sentence and remanded the matter for a new trial.[14]

> ### B.    Jacobs' Second Trial and Direct Appeal

> #### 1.   Reindictment in 2002 for First Degree Murder

After issuance of the United States Supreme Court's opinion in *Campbell v. Louisiana*,

523 U.S. 392 (1998), Louisiana's statutory structure on the selection of grand juries under LA.

CODE CRIM. PROC. ANN. art. 413(B) was amended in 1999.[15]   Following the remand and a number

of defense motions and writ applications, the Louisiana Supreme Court provided the State with

the opportunity to either reindict Jacobs before a grand jury selected under the amended rule or for

the state trial court to conduct a hearing to determine if there had been "the issue of discrimination

in the selection of the grand jury foreperson" in connection with the original indictment.[16]   On

September 12, 2002, Jacobs was indicted a second time for both first degree murders of Nelson

and Della Beaugh, with both murders listed in one count as they had been after the April 15, 1998,

amendment of the original indictment.[17]

> #### 2.   Jacobs' First Federal Habeas Petition under § 2241

In 2002 and 2003, Jacobs unsuccessfully challenged his reindictment on double jeopardy

grounds in a federal petition for habeas corpus relief under 28 U.S.C. § 2241, for which relief was

---

[13] *Id.* at 1288; St. R. Vol. 3 of 109 at 647.

[14] *Id.* at 1288; St. R. Vol. 3 of 109 at 647.

[15] In *Campbell*, the Supreme Court first recognized that a white defendant has third-party standing to assert an equal protection challenge, as well as a due process challenge, based upon discrimination against blacks in the grand jury selection process used in all Louisiana parishes (except Orleans) under LA. CODE CRIM. PROC. ANN. art. 413(B).   In *Campbell*, the petitioner specifically challenged the discriminatory selection of the grand jury foreperson under the Louisiana system; the Court, however, treated his claim as a challenge to the discriminatory selection of grand jurors and forepersons.   *Campbell*, 523 U.S. at 397.   As a result, LA. CODE CRIM. PROC. ANN. art. 413(B), was amended in 1999 to prevent any potential for discrimination in light of *Campbell*.   *See* LA. CODE CRIM. PROC. ANN. art. 413(B) (amended by La. Acts 1999, No. 984 § 1).

[16] *State v. Jacobs*, No. 2002-2087 (La. 8/30/02); 823 So. 2d 942.

[17] St. R. Vol. 3 of 109   at 720, Indictment, 9/12/02; *id*. at 721, Grand Jury Return, 9/12/02; *see also id*. at 606, Amended Indictment, 4/15/98.

denied by a judge of the Eastern District of Louisiana, the United States Fifth Circuit Court of Appeal, and the United States Supreme Court.[18]

### 3. Disqualification of Jacobs' Capital Counsel

During renewed discovery and continued motion practice, on September 23, 2004, the State filed a motion to traverse or alternatively disqualify two of Jacobs' capital defense attorneys, including attorney G. Ben Cohen, asserting they were not qualified under Louisiana Supreme Court Rule XXXI and the Louisiana Indigent Defendant Assistance Board's Indigent Defense Standards, Ch. 7, Part III, Std. 7-3.1 to represent an indigent defendant in a capital trial.[19] Following an evidentiary hearing on September 30, 2004, the state trial court granted the motion and disqualified attorney Cohen from the case.[20]

### 4. 2005 Amendment to Indictment

On May 13, 2005, the state trial court held a lengthy hearing on sixteen pretrial motions incident to Jacobs' second trial.[21] Although not mentioned in the hearing transcript or minutes provided, at some point that same day, the State amended the indictment to charge Jacobs with second degree murder and memorialized the amendment by handwritten notation on the original 1996 indictment just below the handwritten amendment made on April 15, 1998 rather than on the September 12, 2002 indictment.[22]

---

[18] *See Jacobs v. Cain*, 538 U.S. 1005 (2003); St. R. Vol. 3 of 109 at 755, Petition for Writ of Certiorari, dated by counsel on 3/5/03; *see also id*. at 791-92, U.S. 5th Cir. Order, 02-30726, 12/20/02; *id*. at 792, U.S. 5th Cir. Rehearing Order, 02-30724, 1/27/03; St. R. Vol. 4 of 109 at 794, E.D. La. Order, 6/3/02; *Jacobs v. Cain*, No. 02-758, 2002 WL 1204920, at *1 (E.D. La. Jun. 3, 2002) (Berrigan, J.).

[19] St. R. Vol. 7 of 109 at 1836, Motion to Traverse Qualifications, 9/23/04; St. R. Vol. 44 of 109 at 11464, Hearing Tr., 9/23/04.

[20] St. R. Vol. 8 of 109 at 2092, Min. Entry, 9/30/04.

[21] St. R. Vol. 13 of 109 at 3386-87, Min. Entry, 5/13/05; St. R. Vol. 46 of 109 at 11653, Hearing Tr., 5/13/05.

[22] St. R. Vol. 13 of 109 at 3398, Amended Indictment, 5/13/05.

### 5.  Jacobs' Second Non-Capital Trial and Sentencing

Following numerous motion hearings and subsequent writs in review of almost every trial court order, Jacobs proceeded to a second trial before a jury on August 21 through 25, 2006, and he was found guilty as charged for the murders of both victims.[23]    At an October 4, 2006, hearing, the state trial court denied Jacobs' motions for new trial, arrest of judgment, and post-verdict judgment of acquittal.[24]    After waiving statutory sentencing delays, the court sentenced Jacobs to serve consecutive life sentences in prison without benefit of parole, probation, or suspension of sentence.[25]    The court later denied Jacobs' motion to reconsider the sentence.[26]

### 6.  Jacobs' Direct Appeal of Second Degree Murder Convictions

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Jacobs' counsel raised sixteen trial errors:

(1)    racial discrimination infected the petit jury selection related to jurors Viola Hawkins, Melanie Auzenne, Ivory Jordan, Virgie Stevenson, Eric Hughes, Leola Florence, and Tempy Dillon;

(2)    the state trial court erroneously denied defense challenges for cause to impartial jurors Knight, Thouron, Vinturella, and Montgomery;

(3)    removal of counsel of choice is a structural error;

(4)    the state trial court erred in admitting the autopsy "rod" photographs because their prejudicial nature substantially outweighed their probative value;

(5)    the admission of the *Stage* offense as other crimes evidence had no independent relevance to this case;

---

[23] St. R. Vol. 24 of 109 at 6287-88, Trial Mins., 8/21/06; *id*. at 6338-40, Trial Mins., 8/22/06; St. R. Vol. 25 of 109 at 6391-93, Trial Mins., 8/23/06; *id*. at 6457-58, Trial Mins., 8/24/06; *id*. at 6463-64, Trial Mins., 8/25/06; *id*. at 6508, Jury Verdict, 8/25/06; St. R. Vol. 49 of 109 at 12180, Trial Tr., 8/21/06; St. R. Vol. 50 of 109 at 12479, Trial Tr., 8/22/06; St. R. Vol. 51 of 109 at 12766, Trial Tr., 8/23/06; St. R. Vol. 52 of 109 at 12902, Trial Tr., 8/24/06; *id*. at 13040, Trial Tr., 8/25/06; St. R. Vol. 54 of 109 at 13528, Trial Tr. Addendum, 8/25/06.

[24] St. R. Vol. 25 of 109 at 6536, Sentencing Mins., 10/4/06; *id*. at 6537, Motion for New Trial & Arrest of Judgment, 10/4/06; St. R. Vol. 26 of 109 at 6715, Motion for Post-Verdict Judgment of Acquittal, 10/4/06.

[25] St. R. Vol. 25 of 109 at 6536, Sentencing Mins., 10/4/06; St. R. Vol. 52 of 109 at 13098, Sentencing Tr., 10/4/06.

[26] St. R. Vol. 26 of 109 at 6742, Trial Court Order, 3/4/08; *id*. at 6719, Motion to Reconsider Sentence, 11/3/06.

(6)     the state trial court erroneously denied Jacobs' proposed instructions on leniency and the right of the jury;

(7)     there is insufficient evidence of second degree murder;

(8)     the state trial court's exclusion of relevant evidence violated Jacobs' right to due process and a fair trial;

(9)     Jacobs' statements should have been suppressed;

(10)    the State's reliance on unreliable scientific evidence violates due process;

(11)    defects in the grand and petit jury pool violated the Constitution;

(12)    the State failed to meet its burden to establish that the case had not prescribed;

(13)    the grand jury indictment failed to allege all necessary elements;

(14)    the state trial court erred in denying Jacobs' motion to quash La. Code Crim. Proc. Ann. art. 782 as unconstitutional;

(15)    Consecutive life sentences for a sixteen year-old offender convicted of second degree murder violates the Eighth Amendment; and,

(16)    the state trial court did not have proper jurisdiction over the case.[27]

Jacobs filed *pro se* a supplemental appellate brief asserting that the state trial court proceeded to trial without a valid indictment and that the prosecutor was without codal authority to amend a grand jury's indictment from first degree murder to second degree murder.[28]

### a.    Louisiana Fifth Circuit's Reversal of Convictions on *Batson* claims

On May 12, 2009, the Louisiana Fifth Circuit reversed Jacobs' convictions and ordered that a new trial be held.[29]   The court held that the state trial court erred in applying *Batson v. Kentucky*, 476 U.S. 79 (1986), to Jacobs' claims asserting the prosecution's discriminatory use of

---

[27] St. R. Vol. 53 of 109 at 13119-14164, Appeal Brief, 07-KA-887, 1/22/08; *see also id*. at 13235-51, Reply Brief, 07-KA-887, 4/18/08; *id*. at 13263-67, Post-Argument Supplemental Brief, 07-KA-887, 5/19/08.
[28] *St. R. Vol. 53 of 109* at 13279-83, *Pro Se* Supplemental Brief, 07-KA-887, 3/27/09.
[29] *Jacobs*, 13 So. 3d at 683; St. R. Vol. 53, at 13290 & 13293-94, 5th Cir. Opinion, 07-KA-887, at 1 & 4-5, 5/12/09.

peremptory challenges during *voir dire*.[30]    The court did not address Jacobs' remaining claims in light of its ruling on the *Batson* issue.[31]    The State filed a writ application with the Louisiana Supreme Court on June 16, 2009, seeking review of this ruling.[32]

While the State's application was pending, Jacobs filed *pro se* a motion to quash his original first-degree murder indictment based on the alleged expiration of the three-year statute of limitations.[33]    On May 5, 2010, the state trial court deemed the motion moot because, by that time, the Louisiana Supreme Court issued its opinion on the State's writ application.[34]

> b.    Louisiana Supreme Court's Reversal, Reinstatement, and Remand

In the Louisiana Supreme Court's April 5, 2010 ruling, the court reversed the appellate court, finding no *Batson* violation, discrimination, or disparate questioning in the State's use of its peremptory challenges and no error by the state trial court's rulings.[35]    The court remanded the matter to the court of appeal for review of Jacobs' remaining claims on appeal.[36]

On June 18, 2010, the Louisiana Supreme Court granted in part and denied in part Jacobs' application for rehearing.[37]    The partial grant clarified the issues for consideration by the Louisiana Fifth Circuit on remand, "including other *Batson* issues not previously addressed by the court of appeal or ruled on by this Court in its *per curiam* opinion."[38]    In denying in part the application, the Louisiana Supreme Court also noted that it was unpersuaded by Jacobs' arguments

---

[30]  *Id.* at 683; St. R. Vol. 53, at 13293-94.

[31]  *Id.* at 682 n.8; St. R. Vol. 53, at 13292.

[32]  St. R. Vol. 107 of 109 at 27455, State's La. Sup. Ct. Writ Application, 09-K-1304, 6/16/09.

[33]  St. R. Vol. 26 of 109 at 6783-88, *Pro Se* Motion to Quash, 10/9/09

[34]  *Id.* at 6850, Min. Entry, 5/5/10.

[35]  *State v. Jacobs*, No. 2009-1304 (La. 4/5/10); 32 So. 3d 227, 229; St. R. Vol. 107 of 109 at 27529, La. Sup. Ct. Order, 2009-K-1304, at 1, 4/5/10.

[36]  *Id.* at 229; St. R. Vol. 107 of 109 at 27529.

[37]  *State v. Jacobs*, No. 2009-1304 (La. 6/18/10); 37 So. 3d 994; St. R. Vol. 107 of 109 at 27545, La. Sup. Ct. Order, 2009-K-1304, 6/18/10; *see also id.* at 27516, Application for Rehearing, 09-K-1304, 4/19/10.

[38]  *Jacobs*, 37 So. 3d at 995; St. R. Vol. 107 of 109 at 27546, La. Sup. Ct. Order, 2009-K-1304, at 1, 6/18/10.

regarding the court's *Batson* analysis.[39]   It also rejected Jacobs' arguments regarding the recusal of Associate Justice Jeannette T. Knoll and declined to consider the need for recusal of Associate Justice Greg G. Guidry[40] because the basis of that claim had been pretermitted and remanded to the Louisiana Fifth Circuit.[41]

### c.   Louisiana Fifth Circuit's Ruling on Remaining Appeal Claims

After receiving additional briefing,[42] on May 24, 2011, the Louisiana Fifth Circuit affirmed Jacobs' convictions and sentences, declining review of several claims resolved in pretrial writ applications as "law of the case" and finding the fourth, eleventh, and fifteenth claims, and several supplemental arguments, at least in part, had not been preserved for appeal.[43]   The court found in the alternative that the defaulted claims were meritless, and further found no merit in the remaining claims.   The court noted errors in the amendment of Jacobs' indictment, which were harmless or meritless.[44]   The court later denied Jacobs' application for rehearing on July 7, 2011.[45]

The Louisiana Supreme Court denied Jacobs' subsequent writ application without stated reasons on February 10, 2012.[46]   The United States Supreme Court denied Jacobs' related petition for writ of certiorari on October 1, 2012.[47]

---

[39] *Id.* at 995; St. R. Vol. 107 of 109 at 27546.

[40] Former Associate Justice Guidry was a District Judge in the 24th Judicial District Court in Jefferson Parish and was later elected to the Louisiana Supreme Court.   He is now a United States District Judge in the Eastern District of Louisiana but is not presiding in this case.

[41] *Jacobs*, 37 So. 3d at 995-96; St. R. Vol. 107 of 109 at 27546, La. Sup. Ct. Order, 2009-K-1304, at 2, 6/18/10.

[42] St. R. Vol. 53 of 109 at 13319, Supplemental Brief, 07-KA-887, 8/30/10; *id*. at 13371, *Pro Se* Supplemental Writ Application for Review, 07-KA-887, 10/27/10; *see also* St. R. Vol. 54 of 109 at 13395, Response to State's Supplemental Brief, 07-KA-887, 11/29/10.

[43] *Jacobs*, 67 So. 3d at 545; St. R. Vol. 54 of 109 at 13400, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[44] *Id.* at 598; St. R. Vol. 54 of 109 at 13494.

[45] *Id.* at 535; St. R. Vol. 54 of 109 at 13499, Application for Rehearing, 07-KA-887, 6/7/11; *id.* at 13510, Denial of Rehearing, 07-KA-887, 7/7/11.

[46] *State v. Jacobs*, No. 2011-K-1753 (La. 2/10/12); 80 So. 3d 468, 469; St. R. Vol. 26 of 109 at 6967, La. Sup. Ct. Order, 2011-K-1753, 2/10/12; St. R. Vol. 107 of 109 at 27551, La. Sup. Ct. Writ Application, 11-K-1753, 8/5/11; *id*. at 27714, *Pro Se* Brief, 11-K-1753, 11/9/11 (dated 11/1/11).

[47] *Jacobs v. Louisiana*, 568 U.S. 838 (2012).   As noted later in this Report, Jacobs was later resentenced which altered finality of his conviction and sentence.   *In re Lampton*, 667 F.3d 585, 588-89 & n.10 (5th Cir. 2012) (finality under

C.     **Jacobs' Post-Conviction Proceedings**

     1.  ***Pro Se* State Court Application for Post-Conviction Relief and Counseled State Court Motion to Strike**

On September 12, 2013, Jacobs submitted *pro se* to the state trial court an application for post-conviction relief in which he asserted the following claims:

(1)     the state trial court had no jurisdiction to try the case and no jurisdiction to sentence him because he was arrested on November 3, 1996, and there was no valid indictment against him until September 9, 2002 and the juvenile court did not conduct a transfer hearing;

(2)     (a)  Jacobs received deficient and/or ineffective assistance of counsel when counsel failed to articulate a defense to the charged conduct and admitted facts which constituted an offense, or (b) in the alternative, the state courts' denial of a jury nullification instruction violated the Sixth Amendment;

(3)     Jacobs received ineffective assistance of trial and appellate counsel when counsel failed to present historical evidence of race discrimination in Jefferson Parish;

(4)     Jacobs received ineffective assistance of counsel when counsel failed to move to quash or strike or object to the State's use of an invalid 1996 indictment to secure convictions on two counts of second degree murder;

(5)     Jacobs received ineffective assistance of counsel when counsel failed to object to the State's use of "rod" photographs which had been the subject of extensive pretrial litigation;

(6)     Jacobs received ineffective assistance when counsel failed to litigate the racial impact of the exclusion of jurors from the grand and petit jury venire;

(7)     the prosecution was conducted in a bias manner where the prosecutors wore (a) "racist garb," (b) made "jarring facial expressions at petitioner," and (c) sought removal of Jacobs' capital defense counsel without doing the same for certified lawyers in other capital cases.[48]

---

the AEDPA is renewed by intervening state court judgment that imposes a new sentence) (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007) ("'[F]inal judgment in a criminal case means sentence.   The sentence is the judgment.'") (internal quotation omitted)).

[48] St. R. Vol. 26 of 109, at 6971, *Pro Se* Petition for Post-Conviction Relief, 9/16/13 (dated 9/12/13).

On September 16, 2013, Jacobs, through counsel, also filed a motion seeking to strike his consecutive life sentences without benefit of parole as illegal, citing his age and mental capacity at the time of the murders.[49]

### a. State Trial Court's Rulings

After ordering and receiving additional briefing on both matters,[50] on May 12, 2014, the state trial court denied the motion and the application.[51]    The court denied Jacobs' motion to strike, finding each argument meritless and noting that the Supreme Court's ruling in *Miller*, 567 U.S. at 460,[52] was not retroactively applicable to Jacobs' final conviction.[53]    The court also held that Jacobs' claims 1, 2(b), 4, 5, and 7(a), (c) were barred from post-conviction review by LA. CODE CRIM. PROC. ANN. art 930.4(C), because they had been fully litigated on appeal.[54]    The court also found no merit in Jacobs' remaining claims 3, 6, and 7(b).[55]

### b. Louisiana Fifth Circuit's Rulings

On June 30, 2014, the Louisiana Fifth Circuit denied Jacobs' writ application challenging the denial of the motion to strike his sentence, finding no error in the trial court's ruling.[56]    That same day, by separate order, the court denied Jacobs' counsel-filed writ application seeking review of the denial of relief on several of his ineffective assistance of counsel claims, previously presented as claims 2(a), 3, 4, 5, and 6 above.[57]    The court found no error in the state trial court's

---

[49] *Id.* at 6989, Motion to Strike Illegal Sentences, 9/16/13.

[50] *Id*. at 6998-99, Trial Court Order, 10/30/13; St. R. Vol. 27 of 109 at 7013, State's Opposition, 1/30/14; *id*. at 7040, State's Corrective Letter, 2/25/14; *id*. at 7041, Reply to State's Opposition to Motion to Strike, 3/7/14; *id*. at 7046, *Pro Se* Response to State's Opposition to Petition for Post-Conviction Relief, 3/10/14 (dated 3/3/14).

[51] St. R. Vol. 27 at 7057, Trial Court Order, 5/12/14.

[52] *Miller* held that mandatory life imprisonment without parole for those convicted for crimes committed under age 18 violates the Eighth Amendment's prohibition on cruel and unusual punishments.    *Miller*, 567 U.S. at 465.

[53] St. R. Vol. 26 of 109 at 7059-60.

[54] *Id*. at 7058-59.

[55] *Id.*

[56] *Id.* at 7078-79, 5th Cir. Order, 14-KH-425, 6/30/14.

[57] *Id.* at 7080-81.    In his writ application, Jacobs' counsel restated these claims into three as follows:

imposition of the procedural bar to review of the claims addressed on appeal or in the trial court's conclusion that these and other arguments were meritless.[58]

        c.    <u>Louisiana Supreme Court's Rulings</u>

On April 17, 2015, the Louisiana Supreme Court denied without stated reasons Jacobs' subsequent writ application challenging the denial of his post-conviction claims.[59]   That same day, by separate order, the Louisiana Supreme Court denied Jacobs writ application challenging the denial of his motion to strike his sentence, reiterating that *Miller* was not retroactively applicable on collateral review.[60]

**2.  Filing of Jacobs' Current Federal Petition under § 2254**

One week later, on April 24, 2015, Jacobs' counsel filed the instant federal habeas corpus petition under 28 U.S.C. § 2254.   ECF No. 1.   Jacobs almost immediately moved to and was granted a stay of these proceedings so that he could seek a writ of certiorari in the United States Supreme Court on the applicability of *Miller* to his case and/or to await a determination by the United States Supreme Court on the retroactivity of *Miller* on collateral review after the Court granted certiorari in *Montgomery v. Louisiana*, 575 U.S. 911 (2015).   ECF Nos. 6, 7.

---

(1) Counsel was ineffective for failing to object to and address the State's use of the wrong indictment or in the alternative for failing to object to the State's amendment of an indictment that had already been amended, or in the alternative for failing to object to the existence of race and discrimination in original indictment;

(2) Petitioner was deprived the assistance of counsel and the right to a jury trial based upon his counsel's concession of the elements of the offense; and

(3) Petitioner received ineffective assistance of counsel during *voir dire* and trial –

A. when his lawyer failed to object to the State's use of "rod photographs;"

B. during *voir dire* when counsel failed to proffer the historical evidence of race discrimination that counsel asked the court to consider as part of the *Batson* challenge; and

C. when his lawyer abandoned challenges to the confection of the grand and petit jury in this case.

St. R. Vol. 26 at 7081; *id*. at 7159, 5th Cir. Writ Application, 14-KH-424, 6/11/14.

[58] *Id.* at 7081-85.

[59] *Jacobs v. Cain*, 2014-1605 (La. 4/17/15); 168 So. 3d 394; St. R. Vol. 28 of 109 at 7275, La. Sup. Ct. Order, 2014-KP-1605, 4/17/05; St. R. Vol. 27 of 109 at 7086, La. Sup. Ct. Writ Application, 2014-KP-1605, 7/29/14.

[60] *State v. Jacobs*, 2014-1622 (La. 4/17/15); 165 So. 3d 69; St. R. Vol. 28 of 109 at 7276, La. Sup. Ct. Order, 2014-KP-1622, 4/17/05.

On January 25, 2016, the United States Supreme Court held that the substantive rule announced in *Miller*, which held unconstitutional life sentences without parole for juvenile offenders, is retroactively applicable on collateral review.[61]   On March 7, 2016, the Supreme Court also granted Jacobs' pending petition for writ of certiorari, vacated the Louisiana Supreme Court's April 17, 2015, post-conviction judgment on Jacobs' motion to strike his sentences, and remanded the matter for further proceedings consistent with *Montgomery*.[62]    On Jacobs' unopposed motion, the court extended the stay of this case on March 10, 2016, pending resolution of Jacobs' resentencing in the state courts.   ECF Nos. 9, 10.

### 3.  Jacobs' Post-*Miller* State Court Challenges and Resentencing

On March 15, 2016, Jacobs filed a motion to strike his illegal sentences and for relief from the life sentences without benefit of parole.[63]   The state trial court denied the motion without prejudice on March 24, 2016, because the United States Supreme Court's remand was directed to the Louisiana Supreme Court, and nothing was before the state trial court.[64]

On June 28, 2016, the Louisiana Supreme Court remanded the case to the state trial court for Jacobs' resentencing pursuant to *State v. Montgomery*,[65] and LA. CODE CRIM. PROC. ANN. art. 878.1.[66]

Jacobs filed a motion to correct his illegal sentence on June 29, 2016.[67]   He followed this with a motion to preclude the State from seeking another life sentence without parole, for arrest of

---

[61]  *Montgomery*, 577 U.S. at 212.

[62]  *Jacobs v. Louisiana*, 577 U.S. 1187 (2016).

[63]  St. R. Vol. 28 of 109 at 7366, Motion to Strike Illegal Sentences, 3/15/16.

[64]  *Id.* at 7373-74, Trial Court Order, 3/24/16.

[65]  2013-1163 (La. 6/28/16); 194 So. 3d 606.   In *State v. Montgomery*, the Louisiana Supreme Court provided guidance to the lower courts pending legislative action following the United States Supreme Court's *Montgomery* decision by instructing that they follow the post-*Miller* statutory works in art. 878.1 to evaluate whether the circumstances of juvenile convictions warrant parole restrictions.   *Montgomery*, 194 So. 3d at 608-09.

[66]  *State v. Jacobs*, 2014-1622 (La. 6/28/16); 194 So. 3d 612; St. R. Vol. 28 of 109 at 7422, La. S. Ct. Order, 14-KP-1622, 6/28/16; St. R. Vol. 29 of 109, 7504, La. Sup. Ct. Renewed Motion to Remand, 6/17/16.

[67]  St. R. Vol. 28 of 109 at 7391, Motion to Correct Illegal Sentence, 7/29/16.

judgment, and to bar imposition of life sentence without parole because he was only 16 years old at the time of the double murder.[68]   The state trial court denied each of the motions by separate order on August 4, 2016.[69]   The state trial court also set the resentencing for hearing.[70]

Although the motion to correct was denied, on December 1, 2016, Jacobs filed a supplemental memorandum seeking to have his resentencing done under the manslaughter statute rather than follow the statutory resentencing for second degree murder.[71]   Following additional briefing, the state trial court again denied Jacobs' motion to correct his sentence, declining to utilize the sentencing scheme suggested by his counsel.[72]

On May 22, 2017, the Louisiana Fifth Circuit denied Jacobs' writ application, finding that the Louisiana Supreme Court had provided clear directives for Jacobs' resentencing in its June 28, 2016, remand order and the state trial court did not err in following those directives.[73]   The Louisiana Supreme Court later denied Jacobs' related writ application on November 20, 2018, without stated reasons.[74]

On October 30, 2017, the State filed a notice of its intent to seek life imprisonment without parole and requested that a sentencing hearing be scheduled.[75]   In turn, Jacobs refiled his motions seeking to preclude the State from seeking a life sentence without parole.[76]   He also filed

---

[68] *St. R. Vol. 28 of 109* at 7403, Motion to Preclude State from Seeking Life Sentence Without Parole, 7/29/16; *id*. at 7410, Motion for Arrest of Judgment, 7/29/16; *id*. at 7414, Motion to Bar Life Sentence Without Parole, 7/29/16.

[69] *St. R. Vol. 28* at 7424, Trial Court Order, 8/4/16 (motion to preclude); *id*. at 7430, Trial Court Order, 8/4/16 (motion to correct); *id*. at 7436, Trial Court Order, 8/4/16 (motion for arrest of judgment); *id*. at 7442, Trial Court Order, 8/4/16 (motion to bar).

[70] *St. R. Vol. 28 of 109* at 7448, Trial Court Order, 8/4/16.

[71] *Id.* at 7484, Supplemental Memorandum, 12/1/16.

[72] St. R. Vol. 29 of 109 at 7563, Min. Entry, 4/19/17; *id*. at 7498, Memorandum in Opposition, 12/2/16; *id*. at 7531, Reply to State's Opposition Memorandum, 12/9/16.

[73] *St. R. Vol. 29 of 109* at 7573, 5th Cir. Order, 17-KH-260, 5/22/17.

[74] *State v. Jacobs*, 2017-1060 (La. 11/20/18); 257 So. 3d 187; St. R. Vol. 30 of 109 at 7983, La. Sup. Ct. Order, 2017-KP-1060, 11/20/18.

[75] St. R. Vol. 29 of 109 at 7596, State's Notice of Intent, 10/30/17.

[76] *St. R. Vol. 29 of 109* at 7664, Motion to Preclude the State from Seeking Sentence of Life Without Parole, 12/6/17; *id*. at 7714, Motion to Preclude the Prosecution from Seeking Life Without Parole Based on Age, 12/6/17.

numerous other motions for, *inter alia*, a bill of particulars, an order to prohibit an unreliable sentencing hearing, discovery of any possible basis to disqualify the prosecuting attorney, discovery of the State's protocol for determining that Jacobs should die in jail, disclosure of *Brady* material, striking the State's notice of intent based on arbitrary factors, quashing the State's notice of intent and preventing prospective application of amended La. Code Crim. Proc. Ann. art. 878.1(B), and striking the State's notice of intent because the sentencing question was not taken to the grand jury.[77]   After receiving the State's opposition memoranda and Jacobs' omnibus reply,[78] at a February 22, 2018, hearing, the state trial court denied the listed motions except the court granted in part the motions for a reliable sentencing hearing, for discovery regarding prosecuting attorneys' qualifications, disclosure of *Brady* material as to evidence to support the request for life sentence, evidence to support that the defendant is irreparably corrupt, and disclosure of witnesses and documentary evidence to be produced by the State at the hearing.[79]

On May 15, 2018, the Louisiana Fifth Circuit denied the State's writ application finding no abuse of discretion in the state trial court's partial grant of the bill of particulars.[80]   The Louisiana Supreme Court granted the State's related writ application and reversed the state trial court's ruling in light of the open-file discovery being provided.[81]

---

[77] *St. R. Vol. 29 of 109* at 7706, Request for Bill of Particulars, 12/6/17; *id*. at 7726, Motion to Prohibit Unreliable Sentencing Hearing, 12/6/17; St. R. Vol. 30 of 109 at 7744, Motion for Discovery re Disqualification, 12/6/17; *id*. at 7774, Motion for Discovery of Prosecution's Protocol, 12/6/17; *id*. at 7764, Motion for *Brady* Material, 12/6/17; *id*. at 7788, Motion to Strike, 12/6/17; *id*. at 7808, Motion to Quash, 12/6/17; *id*. at 7840, Motion to Strike, 12/6/17.

[78] St. R. Vol. 29 of 109 at 7885, State's Response to Funding Motions, 2/5/18; *id*. at 7895, State's Response to Motion Prohibiting Unreliable Sentencing Hearing, 2/5/18; *id*. at 7906, Opposition to Motion to Prohibit Retroactive Application of Art. 878.1(B), 2/5/18; *id*. at 7918, State's Opposition to Motions to Preclude, 2/5/18; *id*. at 7931, Opposition to Motions to Strike, 2/5/18; *id*. at 7938, Response to Motions for *Brady*, Discovery, and Bill of Particulars, 2/5/18; *id*. at 7945, Omnibus Reply to State's Responses, 2/20/18.

[79] *St. R. Vol. 29 of 109* at 7963, Min. Entry, 2/22/18; *see also id*. at 7975, 5th Cir. Order, 18-KH-154, 5/15/18; St. R. Vol. 31 of 109 at 8064, Partial Hearing Tr., 2/22/18.

[80] St. R. Vol. 30 of 109 at 7976, 5th Cir. Order, 18-KH-154, 5/15/18.

[81] *State v. Jacobs*, 2018-0958 (La. 11/20/18); 257 So. 3d 178; St. R. Vol. 30 of 109 at 7983, La. S. Ct. Order, 2017-KP-1060, 11/20/18; *id*. at 7987, La. S. Ct. Writ Application, 18-KP-958, 6/12/18.

After a hearing on June 12, 2019, the state trial court denied Jacobs' motion to recuse the Jefferson Parish District Attorney's office from the sentencing proceedings.[82]   Thereafter, on July 10, 2020, Jacobs filed a memorandum addressing the law applicable to *Miller* hearings and the applicability of a recently enacted subsection of LA. STAT. ANN. § 15:574.4, which would allow for parole eligibility for those sentenced to more than 25 years for felonies committed as juveniles and meeting other requirements.[83]   The State filed its own memorandum on July 10, 2020.[84]

Finally, on July 20, 2020, the hearing on Jacobs' resentencing pursuant to *Miller* began before the state trial court.[85]   Following an extended recess, the hearing continued before the court on September 1 and 2, 2020.[86]   On October 6, 2020, the state trial court vacated Jacobs' 2006 sentences and resentenced him to serve life in prison without benefit of probation or parole on each count and with parole eligibility in accordance with LA. STAT. ANN. § 15:574 and *Miller*.[87]   The court provided extensive and detailed reasons for its judgment and decision to allow parole eligibility for Jacobs.[88]   Jacobs did not seek further review of this sentence in the state courts. His convictions and new sentences are now final for purposes of AEDPA review.[89]

### D.    **Jacobs' Return to Federal Court**

On April 12, 2021, this court granted Jacobs' unopposed motion to lift the stay after his *Miller* resentencing.   ECF Nos. 16, 21.   Pursuant to the court's order, on May 12, 2021, Jacobs

---

[82] St. R. Vol. 31 of 109 at 8147, Min. Entry, 6/12/19; *id*. at 8120, Motion to Recuse, 4/2/19; *id*. at 8134, State's Opposition, 4/24/19.
[83] St. R. Vol. 33 of 109 at 8355, Memorandum on Applicability of Act 99, 7/10/20; *id*. at 8362, Memorandum on *Miller*, 7/10/20.
[84] *Id*. at 8386, State's Memorandum, 7/16/20; *id*. at 8390, State's Memorandum on Act 99, 7/16/20; *see also id*. at 8401, Jacobs' Reply to State's Memorandum on Act 99, 7/16/20.
[85] St. R. Vol. 33 of 109 at 8412, Min. Entry, 7/20/20.
[86] *Id*. at 8438, Min. Entry, 9/1/20; *id*. at 8489, Nunc Pro Tunc Min. Entry, 1/28/21; *id*. at 8439, Min. Entry, 9/2/20; *see also id*. at 8426, Motion to Recess, 8/3/20; *id*. at 8428, Trial Court Order, 8/6/20.
[87] St. R. Vol. 33 of 109 at 8450, Sentencing Minutes, 10/6/20.
[88] *Id*. at 8453-65, Reasons for Judgment, 10/6/20.
[89] *In re Lampton*, 667 F.3d at 588.

filed a superseding § 2254 habeas petition to clarify the claims he is pursuing after the
resentencing.   The claims currently and exclusively before this court are:

(1)    race discrimination in the selection of Jacobs' petit jury violated the equal
protection clause;

(2)    the Louisiana Supreme Court's decision reversing the grant of *Batson* relief
was tainted by judicial bias;

(3)    the state trial court removed Jacobs' counsel of choice in violation of the
Sixth and Fourteenth Amendments;

(4)    Jacobs was tried pursuant to an indictment infected with race and gender
discrimination;

(5)    alternative to issue four, counsel was ineffective for failing to challenge the
State's use of an indictment that charged two counts of second degree murder
instead of one;

(6)    the state trial court admitted Jacobs' custodial statement in violation of his
Fifth, Sixth, and Fourteenth Amendment rights;

(7)    the state trial court's exclusion of prosecutors' prior statement that
"Lawrence Jacobs didn't commit a murder" violated Jacobs' right to due process
and a fair trial;

(8)    Jacobs' conviction of second degree murder is based on insufficient
evidence in violation of his Fourteenth Amendment due process rights;

(9)    Jacobs was deprived the effective assistance of counsel and the right to a
jury trial based on his counsel's concession of the elements of the offense;

(10)    the exclusion of relevant evidence and admission of irrelevant and
prejudicial evidence deprived Jacobs of his rights to due process and a fair trial and
counsel was ineffective for failing to object to the autopsy "rod" photographs; and,

(11)    the state trial court erroneously denied Jacobs' proposed jury instructions
on lenience and the rights of the jury.[90]

On October 1, 2021, the State filed a response in opposition to Jacobs' petition recognizing

that the petition appeared to be timely filed and state court review was exhausted.[91]   However, the

---

[90]  ECF No. 25 at 9-65; *see also* ECF No. 21, Conference Minutes and Order, 4/12/21.
[91]  ECF No. 38.

State avers that, as explained later in this report, several of Jacobs' claims are in procedural default and the remaining claims, and in the alternative the defaulted claims, are meritless under AEDPA standards of review, and the denial of relief was neither contrary to nor an unreasonable application of Supreme Court law.

On December 1, 2021, Jacobs filed a reply to the State's opposition memorandum reasserting his claims in light of the State's defenses and arguments.[92]

## III.    LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.    The AEDPA went into effect on April 24, 1996,[93] and applies to habeas petitions filed after that date.[94]    Jacobs petition is deemed filed by his counsel on April 24, 2015.

### A.    Federal Evidentiary Hearing Not Warranted

Jacobs has not established that he is entitled to a federal evidentiary hearing on any of his claims.    Whether to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2), which provides that, when a petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing," except under the limited circumstances set forth in the statute.[95]    In this case, Jacobs,

---

[92] ECF No. 42.

[93] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.    *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992) (citing *United States v. Robles-Pantoja*, 887 F.2d 1250, 1257 (5th Cir. 1989).

[94] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[95] *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011).    28 U.S.C. § 2254(e)(2) provides as follows:
(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
(A) the claim relies on –
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

*pro se* and through counsel, diligently pursued and fully developed his claims in the state courts.[96] Thus, he is not *per se* barred from a federal evidentiary hearing under the conditions in the statute.

However, the Supreme Court has made clear that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."[97]  This limitation "applies even where there has been a summary denial" of the merits in state court proceedings.[98]  Thus, the decision to grant an evidentiary hearing is "generally left to the sound discretion of district courts," which must "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."[99]  No evidentiary hearing is required "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief. . . . ,"[100] or where there is no "factual dispute which, if resolved in [the petitioner's] favor, would entitle him to relief."[101]

As this Report will show, the record does not support Jacobs' claims and does not establish his entitlement to any federal habeas relief.   This court therefore need not conduct an evidentiary hearing or accept new testimony or evidence not previously before the state courts.   For these reasons, Jacobs' request for an evidentiary hearing must be denied.

B.    **Preliminary Considerations**

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court.   In

---

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

[96] *Williams v. Taylor*, 529 U.S. 420, 432 (2000) ("failed to develop" means a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.").

[97] *Cullen*, 563 U.S. at 181; *Allen v. Vannoy*, 659 F. App'x 792, 810-11 (5th Cir. 2016) (citations omitted).

[98] *Cullen* at 187 (citation omitted).

[99] *Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (citations omitted); *Allen*, 659 F. App'x at 811.

[100] *Schriro*, 550 U.S. at 465-66.

[101] *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000).

other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[102]

The State asserts, and the record reflects, that Jacobs' federal petition was timely filed in 2015 under the AEDPA and Jacobs appears to have exhausted state court review.[103]   The State also asserts that several of Jacobs' claims are in procedural default and barred from federal review.[104]

### 1.  Procedural Default Doctrine Generally

A federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.[105]   This "independent and adequate state law grounds" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.[106]   Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.[107]

Under the AEDPA, "[w]here a higher state court has ruled on a petitioner's [post-conviction] motion on grounds different than those of the lower court, we review the higher court's decision alone."[108]   Thus, the role of federal courts in reviewing habeas corpus petitions by

---

[102] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[103] *See* ECF No. 38 at 5.

[104] *Id*. at 38-53, 70-73.

[105] *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *Lee v. Kemna,* 534 U.S. 362, 375 (2002)).

[106] *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (citing *Coleman*, 501 U.S. at 722).

[107] *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).

[108] *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 803 (1991) (finding lower court's dismissal of claim on grounds of procedural default not "immortal" where higher court reaches the merits of a federal claim) (citing *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir. 2007)).

prisoners in state custody is exceedingly narrow.    Federal courts must respect the conscientious decisions of state courts and promote comity, federalism, and finality through the dutiful application of the AEDPA.[109]

Under § 2254 and the AEDPA, this court's review is limited to the last reasoned state court decision disposing of the claim, whether on the merits or by procedural bar,[110] and the procedural bar doctrine precludes this court's independent review of petitioner's defaulted claim through a habeas petition.[111]    Imposition of a procedural bar also prevents federal court review over any alternative discussion of the merits of the claim by a state court, with some exceptions.[112]    On federal habeas review, the court looks to the last reasoned opinion of the state courts to determine whether denial of relief was on the merits or based on state law procedural grounds.[113]

Under this doctrine, for state law procedural bars to prevent review by this federal habeas court, the bars must be both independent and adequate.    The question of the adequacy of a state procedural bar is itself a federal question.[114]    A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.[115]    The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of the claim on the merits.[116]    To be "adequate," the

---

[109]    *See Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) (cleaned up).

[110]    *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) ("Under AEDPA, we review 'the last reasoned state court decision.'"); *see also Ylst,* 501 U.S. at 803-04 (federal habeas court looks to the "last reasoned decision" of the state courts to determine if disposition was procedural).

[111]    *Cone*, 556 U.S. at 465 (citation omitted) (independent and adequate state court procedural bar prevents federal habeas review); *Rhoades*, 914 F.3d at 372 (same).

[112]    *Rhoades*, 914 F.3d at 372; *Robinson v. Louisiana*, 606 F. App'x 199, 204 (5th Cir. 2015) (citing *Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010)).

[113]    *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.").

[114]    *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee*, 534 U.S. at 375).

[115]    *Rhoades*, 914 F.3d at 372 (citation omitted); *Rogers v. Mississippi*, 555 F. App'x 407, 408 (5th Cir. 2014) (same).

[116]    *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).

state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.[117]   A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."[118]   However, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.[119]

On habeas review, state procedural rules enjoy a presumption of adequacy, and the burden is on the petitioner to demonstrate otherwise.[120]   It is not the federal habeas court's province to disagree with the application of the bar or to correct state court errors.[121]   It is only to determine its adequacy.[122]   Thus, when state courts apply a procedural bar that has neither foundation in the record nor basis in state law, federal courts need not honor that bar.[123]   However, when a foundation and basis exist in the record, the bar must stand.

### 2.   State's Procedural Default Defenses

The State relies on the last reasoned opinion of the Louisiana Fifth Circuit to assert that four of Jacobs' claims or arguments are in procedural default and barred from federal review, specifically his claims challenging the exclusion of the historical evidence of race discrimination

---

[117] *Walker v. Martin*, 562 U.S. 307, 309 (2011) (quoting *Beard*, 558 U.S. at 60-61); *Rogers*, 555 F. App'x at 408 (citation omitted); *see also Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases) (citations omitted).

[118] *Beard*, 558 U.S. at 60-61 (citing Daniel J. Melter, *State Court Forfeitures of Federal Rights*, 99 HARV. L. REV. 1128, 1140 (1986) ("[R]efusals to exercise discretion do not form an important independent category under the inadequate state ground doctrine")).

[119] *Martin v. Maxey*, 98 F.3d 844, 847-48 (5th Cir. 1996), *abrogated on other grounds as recognized in Evans v. Davis*, 875 F.3d 210 (5th Cir. 2017); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990) (citing cases).

[120] *Glover*, 128 F.3d at 902 (citation omitted); *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999) (same).

[121] *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

[122] *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (citing *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999)).

[123] *See, e.g.*, *Davis v. Johnson*, No. 00-684, 2001 WL 611164, at *4 & n.10 (N.D. Tex. May 30, 2001) (citing W*alker v. Engle*, 703 F.2d 959, 965-67 (6th Cir. 1983); *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. Dec. 5, 2011); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. Jul. 20, 1999).

during *voir dire* (urged in support of claim 1), the dismissal of his capital counsel (claim 3), alleged race and gender discrimination underlying the indictment (claim 4), and admission of the autopsy "rod" photographs (claim 10(c)).   ECF No. 38, at 31-32, 40, 45-46, 71-72.   The State cites to LA. UNIF. APP. R. 1-3 and LA. CODE CRIM. PROC. ANN. art. 841 as actually and/or arguably relied upon by the Louisiana Fifth Circuit to bar review of these claims before alternatively addressing each on the merits.   *Id*.   These state procedural rules considered together would bar review of a claim that was not preserved for appellate review by contemporaneous objection in the state trial court. *Id*.   Jacobs opposes imposition of a procedural bar to federal review of these claims, contending that any bar addressed by the state courts was improvidently or incorrectly applied.   ECF No. 42, at 38, 39-40, 43.

The State also recognizes, and Jacobs does not contradict, that the Louisiana courts also addressed a procedural bar, citing LA. CODE CRIM. PROC. ANN. art. 930.4(C), "clearly" intending to invoke LA. CODE CRIM. PROC. ANN. art. 930.4(A), when Jacobs reasserted a number of claims on post-conviction review that had already been resolved on direct appeal.   ECF No. 38, at 50. As noted by the State, the bar under art. 930.4(A) does not prevent federal review of claims litigated on direct appeal.   *Id*. at 50-51.   Instead, the restriction under art. 930.4(A) is not the kind of procedural bar that prevents a federal habeas court from reviewing the claims, but instead precludes Louisiana courts from reviewing a post-conviction claim already "fully litigated" on direct appeal.[124]   The rule presumes that the repetitive claim is not new or different from the claim or arguments previously litigated and resolved on appeal by the higher state courts.[125]   As a result, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a

---

[124] *Bennett v. Whitley*, 41 F.3d 1581, 1582-83 (5th Cir. 1994); *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014).
[125] *Bennett*, 41 F.3d at 1583.

decision on the merits."[126]    A federal habeas court simply "look[s]-through" the ruling on collateral review and considers the findings and reasons on direct appeal where the claims were first litigated.[127]    Thus, the State correctly asserts that LA. CODE CRIM. PROC. ANN. art. 930.4(A) only prevented further review of Jacobs' repetitive claims on state post-conviction review and does not prevent this court from considering the resolution reached in the prior state court proceeding. This court, therefore, would "look through" those latter decisions to assess the resolution of a claim when it was previously asserted and considered.

However, as for Jacobs' claims facing procedural default, for the following reasons, the court has determined that a merits review would better serve the interests of justice than a further and more lengthy discussion of the state procedural bars.

### 3.    The Court will Pretermit the Procedural Default Analysis

A federal habeas court may pretermit a finding concerning a state imposed procedural bar where, as the State alternatively argues here, the claim clearly fails on the merits.[128]    The federal courts have recognized that disposition on the merits of a claim is oft preferred over "engaging in a lengthy and convoluted procedural-default analysis . . ." as this court would have to do in this case.[129]    As the dissent noted in *Smith v. Texas*:

> In the absence of any legal obligation to consider a preliminary nonmerits issue, a court may choose in some circumstances to bypass the preliminary issue and rest its decision on the merits.   *See, e.g.*, 28 U.S.C. § 2254(b)(2) (federal habeas court may reject claim on merits without reaching question of exhaustion).   Among other things, the court may believe that the merits question is easier, and the court may think that the parties and the public are more likely to be satisfied that justice

---

[126]  *Id.*

[127]  *Id.* at 1582-83.

[128]  *Glover v. Hargett*, 56 F.3d 682, 684 (5th Cir. 1995) (citation omitted); *Wiley v. Puckett*, 969 F.2d 86, 104 (5th Cir. 1992); *Corzo v. Murphy*, No. 07–7409, 2008 WL 3347394, at *1 n. 5 (E.D. La. July 30, 2008) (citation omitted); *Lee v. Cain*, No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007) (same).

[129]  *Brewer v. Director, TDCJ-CID*, No. 15-050, 2022 WL 398414, at *12 (N.D. Tex. Feb. 8, 2022) (quotation and citation omitted) (appeal filed).

has been done if the decision is based on the merits instead of what may be viewed as a legal technicality.[130]

Likewise, in *Lambrix v. Singletary*, 520 U.S. 518, 520 (1997), the Supreme Court stated that "[w]e do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving [a legal] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."[131] The United States Fifth Circuit similarly and regularly pretermits procedural default and "cut[s] straight to the merits"[132] where the claim "can be resolved more easily by looking past any procedural default."[133]

In this case, the expressed state court procedural bars would require this court, as the State has already, to conduct a tedious and lengthy analysis of related state laws to determine which, if any, the state court meant to invoke. Should the court resolve that a basis for the state courts' procedural comments was not a clear or express imposition of the bar, after that discussion, the court still would have to conduct a review of the merits of Jacobs' claims. The court also would have to engage in a lengthy discussion of Jacobs' grounds for cause to excuse the bars, which turn at least in part on his ineffective assistance of counsel claims, which must also be reviewed separately on the merits anyway.

---

[130] *Smith v. Texas*, 550 U. S. 297, 324 (2007) (Alito, J., dissenting).

[131] Citing 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

[132] *Murphy v. Davis*, 901 F.3d 578, 589 n.4 (5th Cir. 2018) (citing *Bell v. Cone*, 543 U.S. 447, 451 & n.3 (2005) (declining to consider whether the court of appeals correctly held that the petitioner had not defaulted and citing § 2254(b) for the proposition that a habeas application "may be denied on the merits, notwithstanding a petitioner's failure to exhaust in state court"); *see also*, *e.g.*, *Ramey v. Lumpkin*, 7 F.4th 271, 281 (5th Cir. 2021) (citations omitted), *cert. denied*, 142 S.Ct. 1442 (2022); *Billard v. Prince*, 591 F. App'x 280 (5th Cir. 2015) (citation omitted); *Taylor v. Thaler*, 397 F. App'x 104, 107 (5th Cir. 2010) (same).

[133] *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) ("Although the question of procedural default should ordinarily be considered first, we need not do so invariably. . . In this case, we believe that [petitioner's] . . . claim can be resolved more easily by looking past any procedural default.") (citations and internal quotation omitted).

In short, to borrow the higher courts' phrasing, addressing the merits of Jacobs' claims would be "easier" and not hinged on a potentially precarious procedural perch. The court does not lightly make this decision and reiterates that "[a] State's procedural rules are of vital importance to the orderly administration of its criminal courts[,]" and are not to be "readily evaded."[134]   In this case, however, the state courts provided cogent and thorough reasons for denial of Jacobs' claims on the merits in the alternative to the brief references made to the claims' procedural failings.   This court is able to give appropriate deference[135] to the state courts' merits rulings and assure Jacobs that "justice has been done."[136]   For these reasons, the court will pretermit the procedural default analysis and address Jacobs' claims on the merits.

### C.    Review of Jacobs' Claims

#### 1.    Standards of a Merits Review

##### a.    AEDPA Standards

Title 28 U.S.C. § 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[137] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[138]   The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear

---

[134] *Lambrix*, 520 U.S. at 525.

[135] "When a state court rules alternatively on both procedural grounds and on the merits of a prisoner's claims, the AEDPA deference is still applicable."   *Woodfox*, 609 F.3d at 795 n.7 (quoting *Busby*, 359 F.3d at 721 n.14 ("That the state habeas court also invoked a procedural bar as an alternative basis to deny relief does not deprive the state of the benefit of AEDPA's deferential standard."); *Halprin v. Davis*, 911 F.3d 247, 254 n.2 (5th Cir. 2018) (same).

[136] *Smith*, 550 U.S. at 324 (Alito, J., dissenting).

[137] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

[138] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.   28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).   The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[139]   The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[140]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[141]   "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[142]

---

[139] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[140] *Williams*, 529 U.S. at 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[141] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[142] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.").

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a Supreme Court case incorrectly.'"[143] Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[144]   The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[145]

      b.    <u>AEDPA Standards, not *De Novo*, Apply to Review of Jacobs' Claims</u>

The AEDPA's deferential standard of review under § 2254(d) and *Williams*[146] applies to claims adjudicated on the merits by the state courts.   28 U.S.C. § 2254(d).   The deferential AEDPA standard of review does not apply to claims that are not adjudicated on the merits in state court.[147]   Where there is no merits adjudication in the state courts, federal habeas courts review those claims under pre-AEDPA *de novo* standards of review.[148]

However, as in Jacobs' case, "[w]hen a state court rules alternatively on both procedural grounds and on the merits of a prisoner's claims, the AEDPA deference is still applicable."[149]   As outlined above, in each instance when a Louisiana court (in the last reasoned decision) invoked a procedural rule to deny Jacobs' relief or decline review of his claims, the court also alternatively provided reasons addressing the merits of Jacobs' claims.   Thus, in addressing Jacobs' claims on

---

[143] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (internal citations omitted)).

[144] *Neal v. Puckett*, 286 F.3d 230, 246 & n.14(5th Cir. 2002) (citing cases).

[145] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

[146] 529 U.S. at 362.

[147] *Cullen*, 563 U.S. at 185-86; *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003) (citations omitted).

[148] *Henderson* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims asserted state courts, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009) (citations omitted).

[149] *Woodfox*, 609 F.3d at 795 n.7; *Busby*, 359 F.3d at 721 n.14 ("That the state habeas court also invoked a procedural bar as an alternative basis to deny relief does not deprive the state of the benefit of AEDPA's deferential standard.") (citations omitted); *Halprin*, 911 F.3d at 254 n.2 (same).

the merits, even those with alternative procedural rulings in the state courts, this federal habeas court is bound to apply the AEDPA deferential standards of review.[150]

### 2. Claim 1: *Batson* Challenges During *Voir Dire*

Jacobs alleges that racial discrimination "infected the petit jury selection" specifically as to the State's use of peremptory challenges against Black jurors Hawkins, Auzenne, Jordan, Stevenson, Hughes, Florence, and Dillon.   ECF No. 25, ¶I, at 13-38.   Jacobs urges that the State's proposed race-neutral reasons for excusing these jurors were pretextual and the state courts erred in accepting the pretextual reasons without examining other factors described by Jacobs as "an era of endemic race discrimination in jury selection in Jefferson Parish," racial hostility displayed by the prosecutors in the first and second trials, and proffered but not considered historical data of alleged discriminatory practices in Jefferson Parish.  *Id*. ¶I(A), at 15, 16-17, 18, 20.   Jacobs asserts that the State's use of strikes demonstrated purposeful discrimination through disparate questioning and treatment of similar jurors.  *Id*. ¶I(B)-(C), at 23, 25-26.   In his discussion of each of the questioned panelists, Jacobs rejects the State's multiple race-neutral reasons given for excusing each juror and urges that the reasons were pretextual and/or the state trial and appellate courts failed to make independent assessments of the plausibility of the State's explanations.   *Id*. ¶I(D), at 26, 32, 34, 35.   He further claims that the Louisiana Supreme Court erred in giving "automatic credit" to the State's demeanor based explanations in violation of federal law.   *Id*. at 36.

The State in opposition contends that Jacobs failed to establish *Batson* violations as to each of these prospective jurors or any error by the state courts' application of clearly established Supreme Court law to deny relief after finding that the State offered plausible and supported race-

---

[150] *Busby*, 359 F.3d at 721 n.14 (citing *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999); *Johnson v. McKune*, 288 F.3d 1187, 1192 (10th Cir. 2002)).

neutral reasons for excusing these potential jurors.    ECF No. 38, ¶1, at 11-13.    The State urges the court to find that denial of relief by the state courts was not contrary to or an unreasonable application of Supreme Court law applying *Batson* to each challenge made.    *Id*. at 26.

a.    Summary of *Voir Dire*

The parties do not contest, and the Louisiana courts determined that, over the course of the two-day *voir dire* for Jacobs' second trial in 2006, the State used seven of its eight peremptory exceptions to strike six Black and one Hispanic prospective jurors.[151]    *Voir dire* proceeded with the questioning of 42 of 48 potential jurors in three panels over two days.[152]

The state courts noted that the first panel comprised 15 people, 14 Whites and one Hispanic (juror Hughes).[153]    However, a review of the transcript reflects that, in addition to juror Hughes, there was a Hispanic female, Ann Marie Edwards, from Central America on that panel as well.[154] The second panel consisted of nine Whites and five Blacks for a total of 14 panel members.[155] The third panel had 13 people, with 11 Whites and two Blacks.[156]    However, the record reflects one of these panelists was also Hispanic, Maria Lewis, having been born in Ecuador, South America.[157]    In sum, the record shows that the three panels actually included three Hispanics and seven Blacks.

---

[151] *Jacobs*, 32 So. 3d at 236; St. R. Vol. 107 of 109 at 27542, La. Sup. Ct. Order, 2009-K-1304, at 14, 4/5/10.

[152] *Id.* at 236; St. R. Vol. 107 of 109, at 27542.    Some of the members of the panel were dismissed for cause based on English language barriers.    *See, e.g.*, St. R. Vol. 49 of 109 at 12233-37, 12243-44, Trial Tr., 8/21/06; St. R. Vol. 50 of 109 at 12480-81, Trial Tr., 8/22/06.

[153] *Jacobs*, 32 So. 3d at 236; St. R. Vol. 107 of 109 at 27541, La. Sup. Ct. Order, 2009-K-1304, at 13, 4/5/10.

[154] St. R. Vol. 49 of 109 at 12330 (came from Central America in 1979), 12401-02 (explaining fear in her home country and need for defendant to testify), 12422 ("I wasn't born here. . ."), Trial Tr., 8/21/06.

[155] *Jacobs*, 32 So. 3d at 236; St. R. Vol. 107 of 109 at 27542, La. Sup. Ct. Order, 2009-K-1304, at 14, 4/5/10.

[156] *Id.* at 236; St. R. Vol. 107 of 109, at 27529.

[157] St. R. Vol. 50 of 109 at 12705 (came from Ecuador, S.A. 23 years earlier), Trial Tr., 8/22/06.

In addressing the first panel, after cause excuses, nine jurors were accepted by the parties, including juror Hughes.[158]   The prosecution did not exercise any peremptory challenges for that panel.   The defense used one peremptory challenge to excuse a White panelist.

From the second panel, after cause excuses, the parties accepted six jurors, all of whom are indicated as White.[159]   The prosecution used seven peremptory challenges to excuse one White and all five Black panelists.   The State's other peremptory challenge was used to back-strike juror Hughes, after Hughes directly notified the court's staff that morning that he had a muscular medical condition that would prevent him from participating on the jury and for which he could or would provide a doctor's excuse.[160]   When defense counsel questioned any basis for a cause excuse, the prosecutor offered to use a peremptory challenge to back-strike Hughes from the jury.[161]   The defense also exercised six peremptory challenges to excuse six White jurors, including five by back-strike.

For the third panel, after cause excuses, the parties accepted seven jurors, including one Black (juror Handy), and one Hispanic (juror Lewis) as the alternate.[162]   The prosecution used one peremptory challenge to excuse a Black female, juror Dillon.   The defense exercised five peremptory challenges to excuse five White panelists, including four by back-strikes.

        b.        <u>Jacobs' *Batson* Challenge in the State Trial Court</u>

Following the selection from the second panel, Jacobs' counsel asserted *Batson* challenges to the State's use of peremptory exceptions to excuse five black jurors, Hawkins, Auzenne, Jordan, Stevenson, and Florence, and one Hispanic juror, Hughes.[163]   The *Batson* challenge was renewed

---

[158] St. R. Vol. 49 of 109 at 12473-76, Trial Tr., 8/21/06.
[159] St. R. Vol. 50 of 109 at 12611-17, Trial Tr., 8/22/06.
[160] *Id*. at 12612-13, 12620-21, 12642-44.
[161] *Id*. at 12613.
[162] *Id*. at 12754-58.
[163] *Id*. at 12619.

following selection from the third panel because the State used an additional peremptory challenge to excuse one of two Blacks from that panel, juror Dillon.[164]

In making the initial *Batson* challenge, Jacobs' counsel observed that, of the jurors questioned, six jurors (actually seven by this court's count) were non-White.[165]   Counsel further noted that, after having used no peremptory strikes on the first day on the mostly white panel, the State exercised seven peremptory challenges on the second panel to exclude five Blacks and one Hispanic, and one other to exclude a White woman.[166]   Jacobs' counsel further argued that during questioning of the mostly White first panel, the prosecutor did not ask anyone if they knew someone in jail or discuss the life sentence issue; but, he did ask these questions to Black members in the second panel.[167]

Although the state trial court never actually found that Jacobs' counsel made a *prima facie* showing that the strikes were motivated by race discrimination, the court allowed the prosecutor to present race-neutral reasons for striking each juror.   The prosecutor first noted that he was not aware that juror Hughes was Hispanic.[168]   He also indicated that he was of the opinion that when a potential juror indicates that he does not want to be on a jury, the juror usually holds it against the State if they are forced to sit at trial.[169]

For juror Stevenson, the prosecutor recalled that during *voir dire* of the prior panel, she was not paying attention and was seen sleeping in the audience.[170]   He also was concerned that she was a Sunday school teacher with a forgiving soul who may be inclined to forgive the facts of

---

[164] *Id*. at 12758.
[165] *Id*. at 12619.
[166] *Id*.
[167] *Id*. at 12620.
[168] *Id*.
[169] *Id*. at 12621.
[170] *Id*. at 12623, 12653-54.

the case against Jacobs.[171]   Stevenson also indicated that she had two nephews in jail who had been prosecuted in Jefferson Parish.[172]   The prosecutor stated that he preferred to not have a juror, like Stevenson, who wanted to give a plaintiff money in a civil jury trial where others leaned in favor of the insurance company.[173]

The prosecutor further stated that he believed juror Hawkins was adamant that Jacobs should testify and prove his innocence.[174]   He recalled that the court almost dismissed her for cause except that she somewhat rehabilitated herself during questioning by defense counsel.[175] The prosecutor was not wholly convinced that she was rehabilitated and decided to exercise a peremptory challenge.

As for juror Jordan, the prosecutor took offense to his wearing shorts to court and found that disrespectful.[176]   He also expressed concern with the fact that Jordan worked in a casino where "sometimes things that law and order type citizens should not possibly get involved in" occur.[177] Jordan also was a victim of an armed robbery and volunteered that it took the police two hours to show up.[178]   The prosecutor also noted that Jordan had an apparent speech impediment that he thought might interfere with his duties.[179]

The prosecutor indicated that he excused juror Florence because she too was sleeping during most of the prior day's *voir dire*.[180]   She also indicated that she sat as a juror on a drug case which ended in a hung jury because they did not know what to do in deliberations.   Florence also

---

[171] *Id*. at 12624, 12653-54.
[172] *Id*. at 12653-54.
[173] *Id*. at 12624.
[174] *Id*. at 12625.
[175] *Id*.
[176] *Id*. at 12626, 12662-63.
[177] *Id*.
[178] *Id*. at 12626, 12661-62.
[179] *Id*. at 12626-27.
[180] *Id*. at 12627.

brought to the court's attention that she had received a subpoena to appear in a Jefferson Parish criminal case and was disturbed that she had not heard from anyone in the prosecutor's office about it.   The prosecutor was concerned that she may be involved in some ongoing case through his office which could pose a conflict.[181]

As for juror Auzenne, the prosecutor was concerned about her initial introductory statement when she volunteered that she had never been accused of a crime when no one asked that question.[182]   The prosecutor was disturbed by her failure to make eye contact with him during his questioning but was "all smiles, giggles and laughs with defense counsel."[183]   The prosecutor also noted that she was a former employee at the Orleans Parish District Attorney's office, which made him believe she may have had experiences there that would make her unsuitable as a juror.[184]

Defense counsel presented counterarguments detailing instances where she believed the prosecutor failed to question or excuse White jurors with similar medical concerns or questionable demeanors.[185]   She also noted that, in reversing Jacobs' first trial, the Louisiana Supreme noted that the state trial court should be cautious in assuring that *Batson* violations did not occur when Jacobs was retried.[186]   She also proffered to the court a "survey data summary" proposing to demonstrate past discriminatory jury selection in Jefferson Parish, which the state noted had been rejected as statistically flawed in another case by then Jefferson Parish District Judge Greg G. Guidry.[187]   The state trial court denied defense counsel's motion to proffer the survey report.[188]

---

[181] *Id.*
[182] *Id.* at 12627-28.
[183] *Id.* at 12628.
[184] *Id.*
[185] *Id.* at 12630, 12638-39.
[186] *Id.* at 12631.
[187] *Id.* at 12632-37.
[188] *Id.* at 12637.

In responding to the individualized comments by Jacobs' counsel, the prosecutor noted that juror Hughes made clear that he did not want to serve on the jury, compared to juror Thibodeaux, who was diabetic and did not ask to be released.[189]   The state trial court also recalled that Thibodeaux stated she was fine to serve when the staff brought her crackers to ease dizziness she had during the extremely long *voir dire* session.[190]   After lengthy discussions about juror Hughes' release, the state trial court accepted the State's race-neutral reasons specifically noting, "I think they're credible and I think that the defense has not carried its burden of showing purposeful discrimination."[191]

After commenting on the selection strategy, counsel's juror comparisons, and arguments from both sides, the court accepted the State's race-neutral reasons for excusing jurors Stevenson, Hawkins, and Florence.[192]   When overruling Jacobs' *Batson* challenge as to juror Jordan, the state trial court noted that, while the court did not notice the shorts, the court "did notice that [Jordan] had a shyness or a reluctance . . . to answer questions or volunteer information . . ."[193]   The court also noted that it appeared that Jordan "was just perturbed by the whole situation," referring to Jordan's claim that it took police two hours to respond to his armed robbery.[194]   With that, the court denied the *Batson* challenge as to Jordan.

With regard to juror Auzenne, the state trial court denied the *Batson* challenge agreeing with the State that she seemed disinterested "based on the totality of the circumstances from [his] observations."[195]

---

[189] *Id.* at 12641.
[190] *Id.* at 12640-41.
[191] *Id.* at 12644.
[192] *Id.* at 12654, 12658, 12669.
[193] *Id.* at 12664-65.
[194] *Id.* at 12665.
[195] *Id.* at 12674.

When the *Batson* challenge was renewed after the third panel to the State's peremptory excuse of juror Dillon, the State pointed to Dillon's hypothetical concern for the safety of runaway teens, which he found to be favorable to the defense's theory that Jacobs ran away and was under bad influences.[196]   The state trial court had recorded the same comments in its notes about Dillon and denied Jacobs' *Batson* challenge.[197]

c.    <u>Direct Appeal of *Batson* Issue to the Louisiana Fifth Circuit</u>

On direct appeal, the Louisiana Fifth Circuit relied on *Batson* and its interpretation of *Snyder v. Louisiana*, 552 U.S. 472 (2008), when it held that the state trial court erred in accepting the prosecutor's race-neutral reasons without entering independent confirmations on its recollection or other evidence to support the stated reasons.[198]   The court found error in the state trial court's acceptance of the State's reasons to excuse juror Hughes which it found implausible and giving of an inference of discriminatory intent where the record contained no descriptive information regarding Hughes's medical condition.[199]   As to juror Florence, the court recognized that the proffered reason, her having been on a hung jury, was a valid race-neutral reason for a peremptory strike.   However, the court found that the prosecutor did not question Florence enough about her jury duty or the subpoena she had to support the strike, and the record had no other indication that Florence was sleeping.[200]

Finally, the court commented that the strikes for jurors Auzenne, Jordan, and Stevenson were based on "at least one race-neutral ground" and did "not rise to the level of a racial taint that could not be purged."[201]   However, the court cautioned that the state trial court failed in its due

---

[196] *Id*. at 12759.
[197] *Id*. at 12760.
[198] *Jacobs*, 13 So. 3d at 677; St. R. Vol. 53 of 109 at 13290, 5th Cir. Opinion, 07-KA-887, 5/12/09.
[199] *Id.* at 691; St. R. Vol. 53 of 109 at 13307.
[200] *Id.* at 692; St. R. Vol. 53 of 109 at 13308-09.
[201] *Id.* at 693; St. R. Vol. 53 of 109 at 13309.

diligence to assess the credibility of the demeanor-based strikes and the possibility of disparate treatment between similarly situated jurors.[202]    The court reversed Jacobs' convictions and sentences and remanded the matter for a new trial.

       d.     Louisiana Supreme Court's Last Reasoned Decision on Jurors Auzenne, Jordan, Stevenson, Florence, and Hughes

In 2010, the Louisiana Supreme Court reversed the appellate court and provided the last reasoned decision on Jacobs' *Batson* challenges to the State's peremptory strikes used to exclude jurors Auzenne, Jordan, Stevenson, Florence, and Hughes.[203]    Overall, the Louisiana Supreme Court resolved that the Louisiana Fifth Circuit on direct appeal misinterpreted and misapplied United States Supreme Court precedent regarding a state trial court's assessment of the prosecutor's reliance on demeanor-based reasons for its peremptory strikes.[204]    In reversing the appellate court, the Louisiana Supreme Court premised its discussion of Jacobs' *Batson* claims on certain factual findings as to jurors Auzenne, Jordan, Stevenson, Florence, and Hughes.    Initially, the court reiterated that, even the Louisiana Fifth Circuit had concluded that the prosecutor's strikes as to Auzenne, Jordan, and Stevenson "do not rise to the level of a racial taint that could not be purged."[205]    In other words, as noted by the state Fifth Circuit, the State's use of the peremptory challenges were not race-based.    The court made the following factual observations.

       i.     Juror Hughes

The court noted the appellate court's conclusion that the prosecutor learned of Hughes' medical condition either from the trial judge or his staff after Hughes discussed his alleged

---

[202] *Id.* at 693-95; St. R. Vol. 53 of 109 at 1310-13.

[203] *Jacobs*, 32 So. 3d at 229-33; St. R. Vol. 107 of 109 at 27529, La. Sup. Ct. Opinion, 2009-K-304, 4/5/10.

[204] *Id.* at 231-33 (citing *Thaler v. Haynes*, 559 U.S. 43, 48-49 (2010) (citing *Snyder*, 552 U.S. at 472)); St. R. Vol. 107 of 109 at 27534-37.

[205] *Id.* at 233-34; St. R. Vol. 107 of 109 at 27537.

muscular problem with the bailiff and/or the judge's secretary.[206]    The court also noted that it was only after discussions with the state trial court judge and after defense counsel rejected the prosecutor's request for a joint challenge for cause that the prosecutor exercised a peremptory challenge to back-strike Hughes from the jury.[207]    The court then held that the Louisiana Fifth Circuit erred in failing to recognize that the state trial court already knew about Hughes' condition before the prosecutor made the statement.[208]    The court noted that there was no need for evidence in the record for the claim to be credible because Hughes notified the judge's staff that he had a medical condition.    "The condition was plausible because the trial judge knew about the prospective juror's request before the prosecutor did."[209]    The court also noted that the prosecutor proffered another race-neutral reason in his stated belief that a potential juror like Hughes would hold jury service against the prosecutor which is prejudicial to the State.    The court also found no race-based concern with the prosecutor's failure to ask other panelists about medical conditions that could prevent their service.[210]    In addition, the court found that juror Thibodeaux's diabetes was not similar to Hughes' complaint to establish disparate questioning on the medical condition issue, and she did not ask to be released from jury service as did Hughes.[211]

ii.    Juror Florence

The Louisiana Supreme Court also found error in the appellate court's assessment of the State's peremptory strike used against juror Florence.[212]    Specifically, with respect to the State's proffered reason that she served on a hung jury, the court noted that juror Florence volunteered

---

[206] *Id.* at 229-30; St. R. Vol. 107 of 109 at 27530-33.

[207] *Id.* at 229; St. R. Vol. 107 of 109 at 27530.

[208] *Id.* at 230; St. R. Vol. 107 of 109 at 27531.

[209] *Id.* at 230; St. R. Vol. 107 of 109 at 27531.

[210] *Id.* at 230; St. R. Vol. 107 of 109 at 27532.

[211] *Id.* at 230-31; St. R. Vol. 107 of 109 at 27532-33, La. Sup. Ct. Order, 2009-K-1304, 4/5/10.

[212] *Id.* at 231-33; St. R. Vol. 107 of 109 at 27533-37.

that her jury did not know what to do, where the compared juror Rood, also on a hung jury, did not indicate there had been any lack of understanding in her prior service.[213]   The court found this sufficient to explain the State's decision to strike one and not the other.   The court also held there was no requirement that the trial judge independently assess the plausibility of the prosecutor's other proffered race-neutral reasons.[214]   The court recognized that being a victim of a crime also was a race-neutral reason that required no further inquiry by the trial court.   Similarly, citing the United States Supreme Court's decision in *Thaler*, the court held that trial court had no duty to articulate personal recollection or confirmation of a demeanor-based reason proffered by the prosecutor as support for a peremptory strike.[215]   "Even if the trial judge did not observe Ms. Florence sleeping, his ruling on whether the prosecutor raised the challenge due to a purposeful discriminatory intent could have been validly based on the judge's personal observation of the prosecutor's demeanor[,]" as suggested by the Supreme Court in *Thaler*.[216]

iii.    Jurors Auzenne, Jordan, and Stevenson

With regard to the other jurors addressed, the Louisiana Supreme Court reiterated its finding of clear error in the Louisiana Fifth Circuit's insistence that the state trial court have articulated on the record whether he had observed and remembered the demeanor-based explanations offered by the prosecution.   The court further noted that, as to Auzenne, Jordan, and Stevenson, the Louisiana Fifth Circuit "acknowledged that these strikes do not rise to the level of a racial taint that could not be purged."[217]   The court held that the prosecutor presented race-neutral reasons for using a peremptory strike against Auzenne, which were properly accepted by

---

[213]  *Id.* at 231; St. R. Vol. 107 of 109 at 27534.
[214]  *Id.* at 232-33; St. R. Vol. 107 of 109 at 27535-36.
[215]  *Id.* at 232-33; St. R. Vol. 107 of 109 at 27535-36.
[216]  *Id.* at 233; St. R. Vol. 107 of 109 at 27536-37.
[217]  *Id.* at 233; St. R. Vol. 107 of 109 at 27537.

the state trial court.  The court noted, as did the appellate court, that a prospective juror's inattentiveness and body language may be valid race-neutral reasons for exercising a peremptory challenge.[218]    Relying on *Thaler*, the court held that when accepting the prosecutor's explanations, the trial judge was not required to articulate whether he observed or remembered the demeanor-based concerns proffered by the prosecutor, noting that the trial court heard Auzenne's "strange comment" about never having been accused of a crime.[219]   The court further held that the State offered a second race-neutral basis for the strike related to Auzenne's prior employment with the New Orleans District Attorney's Office.[220]

Similarly, the court found no error under *Snyder* and *Thaler* in the trial court's acceptance of the State's demeanor based challenges to Jordan, who wore shorts and worked at a casino, and Stevenson, whom the State challenged because she was sleeping at times, had two nephews in jail after Jefferson Parish prosecutions, and would be influenced by her church work.[221]

The court therefore found that, applying a proper reading and application of United States Supreme Court precedent, there was no *Batson* violation because the prosecutor stated plausible race-neutral reasons even if the state trial court did not artfully articulate its own basis for accepting those reasons.

   e.  Louisiana Fifth Circuit's Last Reasoned Decision on Jurors Hawkins and <u>Dillon</u>

On remand and consistent with the law explained by the Louisiana Supreme Court, the Louisiana Fifth Circuit addressed two remaining *Batson* issues for jurors Hawkins and Dillon who

---

[218] *Id.* at 234 (citing *Jacobs*, 13 So. 3d at 693 n. 75 (citing *State v. Coleman*, 2006-518 (La. 11/2/07) 970 So. 2d 511, 515)); St. R. Vol. 107 of 109 at 27538.

[219] *Id.* at 234; St. R. Vol. 107 of 109 at 27538-39.

[220] *Id.* at 234; St. R. Vol. 107 of 109 at 27539.

[221] *Id.* at 234-35; St. R. Vol. 107 of 109 at 27539-41.

had not been included in its previous opinion.[222]    In doing so, the court reiterated the United States Supreme Court's holding in *Thaler* "that neither *Batson* nor *Snyder* held that a demeanor-based explanation for a peremptory challenge must be rejected unless the judge personally observed and recalls the relevant aspect of the prospective juror's demeanor."[223]    As for juror Hawkins, the court noted that Hawkins had stated that she would want Jacobs to prove his innocence and that the prosecutor could say nothing to change her mind on that point.[224]    The state trial court suggested that she be removed for cause but deferred to allow defense counsel to attempt to rehabilitate her. She later indicated to defense counsel that she would not hold Jacobs' failure to testify against him, but believed that a defendant should testify.[225]    The state urged that it used a peremptory challenge because Hawkins partially redeemed herself from a cause challenge but her comments on the need for a defendant to testify were still prejudicial and troubling enough to prompt the peremptory challenge.    The court found no error in the state trial court's finding that this was a race-neutral reason.[226]

As for juror Dillon, the State indicated that she was too sympathetic to runaway teenagers like the defendant, which the prosecutor believed showed a likelihood she would side with the defense.[227]    The Louisiana Fifth Circuit found no error in the state trial court's finding that this strike was race-neutral and without discriminatory intent.[228]

---

[222] *Jacobs*, 67 So. 3d at 556-59 (citing *Thaler*, 559 U.S. at 47-48); St. R. Vol. 54 of 109 at 13400, 5th Cir. Opinion, 07-KA-887, 5/24/11.
[223] *Id.* at 556 (citing *Thaler*, 559 U.S. at 47-48); St. R. Vol. 54 of 109 at 13420.
[224] *Id.* at 556-57; St. R. Vol. 54 of 109 at 13421-22.
[225] *Id.* at 557; St. R. Vol. 54 of 109 at 13422.
[226] *Id.* at 557-58; St. R. Vol. 54 of 109 at 13422-23, 5th Cir. Opinion, 07-KA-887, at 23-24, 5/24/11.
[227] *Id.* at 558; St. R. Vol. 54 of 109 at 13423.
[228] *Id.* at 558; St. R. Vol. 54 of 109 at 13423.

This was the last reasoned opinion on the *Batson* issue for jurors Hawkins and Dillon because the Louisiana Supreme Court denied[229] Jacobs' related writ application without stated reasons.[230]

f.   Clearly Established *Batson* Precedent

In *Batson*, the United States Supreme Court held that the Equal Protection clause of the Fourteenth Amendment prohibits prosecutors from exercising peremptory challenges on the basis of race.[231]   The Louisiana appellate courts relied on *Batson*, which is the appropriate and clearly established Supreme Court precedent, to address Jacobs' claim.[232]   Shortly before Jacobs' second trial in 2006, in *Rice v. Collins*, 546 U.S. 333 (2006), the United States Supreme Court outlined the three-step analysis for a *Batson* challenge:

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry.  First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.  476 U.S., at 96-97, 106 S. Ct. 1712.  Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.  *Id*., at 97-98, 106 S. Ct. 1712.  Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices.  *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S. Ct. 1769, 131 L. Ed.2d 834 (1995) (*per curiam*).  Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.  *Batson*, *supra*, at 98, 106 S. Ct. 1712. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  *Purkett*, *supra*, at 768, 115 S. Ct. 1769.[233]

---

[229] *Jacobs*, 80 So. 3d at 468-69; St. R. Vol. 26 of 109 at 6967, La. Sup. Ct. Order, 2011-K-1753, 2/10/12.

[230] *See Wilson*, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.").

[231] *Batson*, 476 U.S. at 89; *see also Davis v. Ayala*, 576 U.S. 257 (2015).

[232] *Moody v. Quarterman*, 476 F.3d 260, 266-67 (5th Cir. 2007).

[233] *Rice*, 546 U.S. at 338.

The opponent of the strike bears the burden of persuasion regarding racial motivation.[234] To establish a prima facie case under the first step, the petitioner must establish the following factors: (1) the prosecutor's challenge was directed at a member of a defendant's cognizable racial group; (2) the challenge was peremptory rather than for cause; and (3) sufficient circumstances raise an inference that the prosecutor used peremptory strikes to exclude the venire person because of race.[235] When no *prima facie* showing has been made, the trial court need not consider the next two steps.[236]

Once a court receives the race-neutral explanation for peremptory strikes in the second step, the challenger must present clear and convincing evidence of racial motivation behind the proffered reasons.

> A prosecutor's intuitive assumptions, inarticulable factors, or even hunches can, however, be proper bases for rejecting a potential juror. At *Batson*'s third step, courts do not assess whether counsel's reason is suspect, or weak, or irrational. Instead, courts address whether counsel is telling the truth in his or her assertion that the challenge is not race-based.[237]

Once the court reaches the final step of determining whether purposeful discrimination has occurred, "the defendant may rely on all relevant circumstances to raise an inference of purposeful discrimination."[238] In *Batson,* the Court noted that circumstances to be considered when ultimately deciding purposeful discrimination include a "pattern" of strikes against jurors and the nature of the questions and statements by the prosecutor during *voir dire.*[239] Considerations enumerated by other federal courts include (1) the percentage of similar panelists challenged by

---

[234] *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (citation omitted).

[235] *Batson*, 476 U.S. at 96 (citations omitted).

[236] *Chamberlin v. Fisher*, 855 F.3d 832, 837-38 (5th Cir. 2018).

[237] *United States v. Thompson*, 735 F.3d 291, 297 (5th Cir. 2013) (citations and quotation marks omitted).

[238] *Fields v. Thaler*, 588 F.3d 270, 274 (5th Cir. 2009) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (internal quotations omitted)).

[239] *Batson*, 476 U.S. at 96-97.

the prosecutor with a peremptory strike, (2) comparison of stricken panelists to white panelists allowed to serve, (3) the prosecutor's use of procedural mechanisms to move particular jurists to the back of the panel, where they are less likely to be selected, (4) evidence of contrast between questions posed to black and non-black panelists indicating intent to load questions to make a case to exclude the black panelists, and (5) evidence of a systematic policy or practice within the prosecutor's office of excluding minority jurors.[240]

### g.    AEDPA Standards Applied to *Batson* Claims

In addressing a *Batson* claim on habeas review, if the state trial court reached the second step of obtaining race-neutral reasons, the court does not examine whether a *prima facie* showing was made under step one.[241]   The court instead considers the next steps:    The race-neutrality issue under the second step of *Batson* and the ultimate question of discriminatory intent under the third step, which are questions of fact entitled to the AEDPA's presumption of correctness.[242]

> Under AEDPA, . . . a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Thus, a federal habeas court can only grant [the petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge.    State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence."    § 2254(e)(1).[243]

---

[240] *United States v. Nelson*, 450 F.3d 1201, 1207-08 (10th Cir. 2006) (citing *Miller-El*, 545 U.S. at 231).

[241] *Guidry v. Lumpkin*, 2 F.4th 472, 484 (5th Cir. 2021) (citation omitted).   If deemed necessary, the United States Fifth Circuit has recognized that the particular showing of a *prima facie* case under the first *Batson* step more likely involves a mixed question of law and fact.  *Williams v. Cain*, 359 F. App'x 462, 465 n.2 (5th Cir. 2009) (citing *Overton v. Newton*, 295 F.3d 270, 276-77 (2d Cir. 2002) (collecting cases and stating that "the threshold decision concerning the existence of a *prima facie* case of discriminatory use of peremptory challenges involves both issues of fact and an issue of law." (internal quotation marks omitted)).

[242] *Hernandez v. New York*, 500 U.S. 352, 364, 369 (1991) (collecting cases); *accord Rice*, 546 U.S. at 338-342; *Moody*, 476 F.3d at 267.

[243] *Rice*, 546 U.S. at 338-39 (2006) (citation omitted); *accord Foster v. Chatman*, 578 U.S. 488, 500 (2016) (*Batson*'s third step "turns on factual determinations, and, in the absence of exceptional circumstances, we defer to state court factual findings unless we conclude that they are clearly erroneous.") (quoting *Snyder*, 552 U.S. at 476-77); *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005) ("A state trial court's finding of the absence of discriminatory intent is a pure issue of fact that is accorded great deference and will not be overturned unless clearly erroneous." (internal quotations and citation omitted)).

The trial court's finding regarding the credibility of an attorney's proffered explanation of the basis for a peremptory challenge is "entitled to 'great deference.'"[244] There is no clearly established federal law[245] requiring that a judge have personally observed a venire member's demeanor during *voir dire* in order to make credibility findings on that subject.[246] Thus, even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . on habeas review that does not suffice to supersede the trial court's credibility determination."[247]

Instead, pursuant to § 2254(e), state court's factual findings must be presumed correct, unless the federal court finds that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary."[248] If convincing evidence establishes that the factual determination was unreasonable, the federal habeas court's focus must be on the third step of the *Batson* test.[249] At that step, the federal habeas courts "presume [the state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' § 2254(e)(1)."[250] "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[251]

---

[244] *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (quoting *Batson*, 476 U.S. at 98, n.21).

[245] Legal principles are "clearly established" for purposes of AEDPA review when, as of the time of the relevant state-court decision, Supreme Court holdings, as opposed to the dicta, establish those principles. *Yarborough*, 541 U.S. at 660-61 ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'") (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).

[246] *See Thaler*, 559 U.S. at 48 ("[W]here the explanation for a peremptory challenge is based on a prospective juror's demeanor, the judge should take into account, among other things, any observations of the juror that the judge was able to make during *voir dire*. But *Batson* plainly did not go further and hold that a demeanor-based explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor.").

[247] *Rice*, 546 U.S. at 341-42; *see Woodward v. Epps*, 580 F.3d 318, 336 (5th Cir. 2009) ("Whether a defendant has carried his burden under *Batson*'s third step to prove purposeful discrimination is based on the persuasiveness and credibility of the prosecutor's justification for his exercise of the peremptory strike. Because of the importance of demeanor and credibility evidence in making such determinations, we give strong deference to the determination of the trial judge, consistent with AEDPA.") (citations omitted).

[248] *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

[249] *Rice*, 546 U.S. at 342; *Moody*, 476 F.3d at 266.

[250] *Rice*, 546 U.S. at 338-39 (citing *Miller-El*, 545 U.S. at 240); *Moody*, 476 F.3d at 267.

[251] *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams*, 529 U.S. at 411).

h.    State Courts' Denial of Relief was Based on Reasonable and Supported Findings of Fact and/or was Neither Unreasonable nor Contrary to *Batson*

Jacobs has consistently argued that the reasons presented by the prosecutor at his second trial were pretextual and based on a long-term practice of racial bias in the selection of jurors by the Jefferson Parish prosecutors.[252]   He argues that even where seemingly race-neutral reasons were offered to the state courts, the courts did not properly resolve the issue of disparate questioning of similar White panelists and failed to consider other evidence of a pattern of racial discrimination shown in the report proffered to but not considered by the state courts.

As outlined in great detail above, the purview of this court under the AEDPA is not a *de novo* review or that of a next-level of appeal.   This court is limited by the AEDPA and does not sit as a "super state supreme court" on habeas review.[253]   Jacobs' invitation to review anew each challenged juror, the prosecutor's related reasons for striking, and the trial court's rulings must be declined.   As summarized above, the AEDPA's limitation means that the state courts' factual findings as to the credibility of the prosecutor's proffered reasons are presumed correct and given deference, unless Jacobs shows by clear and convincing evidence that those findings were unreasonable.[254]   For the following reasons, Jacobs has not met this burden.

Contrary to Jacobs' arguments, demeanor based reasons are regularly accepted race-neutral justifications for preemptory strikes.[255]   The trial court has the discretion to determine the

---

[252] *See, e.g.,* ECF No. 25 at 26, 32, 35.

[253] *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (internal quotations and citations omitted); *Goodrum v. Quarterman*, 547 F.3d 249, 266 (5th Cir. 2008) ("Because AEDPA limits our review to the reasonableness rather than the correctness of the state court's decision, we need not and do not decide today the result we would reach if this case had come before us on direct appeal . . ."); *Pierre v. Loc. Rule Pol'y Maker for First Cir. Ct. of Appeal*, 831 F. App'x 134, 135 (5th Cir. 2020) (§ 1983 prisoner case) (citing *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986) (habeas case)).

[254] 28 U.S.C. § 2254(e)(1); *Rice*, 546 U.S. at 338-39 (citing *Miller-El*, 545 U.S. at 240).

[255] *See, e.g.*, *United States v. Turner*, 674 F.3d 420, 436 (5th Cir. 2012) ("We have specifically approved of eye contact, or the lack thereof, as a valid neutral explanation.") (citation omitted); *Moore v. Keller Indus., Inc.*, 948 F.2d 199, 202 (5th Cir. 1991) ("We also have found 'disinterested demeanor' and 'inattentiveness' to be valid, race-neutral reasons for peremptory strikes.") (collecting cases).

credibility or truthfulness of the offered reasons, even when demeanor-based, in light of the proceedings before it.[256]   In the last reasoned decisions of the Louisiana Supreme Court and the Louisiana Fifth Circuit, the courts independently confirmed that the record supported the factual conclusions underlying the prosecutor's strikes and the trial court's finding of race-neutral reasons to deny the *Batson* challenges.   Jacobs has pointed to no reason offered by the prosecutor that was other than race-neutral for this court to find that these conclusions were unreasonable for purposes of the second step of *Batson*.   This court must defer to the state courts' factual findings that the prosecutor's stated reasons were race-neutral under the second step of *Batson*.

Turning to the state courts' resolution of factors under the third *Batson* step, Jacobs has offered no clear and convincing evidence to show that the state courts' factual findings were unreasonable.   In challenging the credibility of the prosecutor's proffered reasons, Jacobs relied on comparative juror analysis, disparate questioning, and alleged that an "era of endemic race discrimination" in the selection of black jurors in Jefferson Parish demonstrates the pretextual nature of the prosecutor's proffered reasons and pattern or propensity for race discrimination. ECF No. 25, ¶I(A), at 15.   Similarly, Jacobs also suggests that pattern and pretextual bases are shown because *Batson* was a concern to the Louisiana Supreme Court on direct appeal after the first, capital trial.   ECF No. 25, ¶I, at 13.

As to the latter comment, Jacobs' suggestion is not supported by the record.   In the first direct appeal of the capital conviction after the first trial, the Louisiana Supreme Court reversed Jacobs' conviction based on the trial court's denial of *cause* challenges, not peremptory strikes, to two jurors who had a predisposition towards the death penalty without having been rehabilitated.[257]

---

[256] *Thaler*, 559 U.S. at 48.
[257] *Jacobs*, 789 So. 2d at 1285, 1288; St. R. Vol. 3 of 109 at 641, 647, La. Sup. Ct. Order, 99-KA-1659, 6/29/01.

Only in a footnote did the Louisiana Supreme Court reference Jacobs' *Batson* claim, which among others was deemed moot by the court's cause-challenge ruling.[258]   In that dicta, the court noted, without specificity, that the *Batson* claim "also appears to raise serious questions regarding the propriety of the jury selection process in this case."[259]   The focus of its footnote was not on any implication that there was suspected racial bias in the use of strikes, but instead on the state trial judge's failure to "control the proceedings" and "properly address" and "guide the attorneys through" each of the three *Batson* steps, including "by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race-neutral reasons for the strikes."[260]

There is no statement in the Louisiana Supreme Court's footnote or opinion to suggest that the court believed that *Batson* violations occurred in the first trial, and the court in fact pretermitted any such review.   Instead, the court took "this opportunity to remind the trial court of its unique and integral role in the dynamics of *voir dire* and to caution it to be especially sensitive to the alleged racially discriminatory use of peremptory challenges."[261]   That is not an indication by the court that *Batson* violations actually occurred in the first trial, and any assertion otherwise is unfounded.

In addition, many of Jacobs' arguments presented here regarding past strikes against Black jurors are cited from briefs and reports that were not considered by the state courts in reaching their decisions.   *See*, *e.g.*, ECF No. 25, ¶I(A)(1), at 16-17; *id*., ¶I(A)(2), at 18-19.   Some have nothing to do with jury selection at all.   *Id*. at 18-19.   While Jacobs may have intended to proffer the so-called "Black Strikes" report, the Louisiana Fifth Circuit determined that no such proffer

---

[258] *Id.* at 1283 n.2; St. R. Vol. 3 of 109 at 636-37.
[259] *Id.* at 1283 n.2; St. R. Vol. 3 of 109 at 637.
[260] *Id.* at 1283 n.2; St. R. Vol. 3 of 109 at 637.
[261] *Id.* at 1283 n.2; St. R. Vol. 3 of 109, at 637, (citing *State v. Myers*, 99-1803, pp. 5-6 (La. 4/11/00); 761 So. 2d 498, 502).

was made, and the report was not considered in its review.[262]   This federal habeas court is limited to the record that was before the court reaching the claims on the merits,[263] *i.e.,* the Louisiana Supreme Court in 2010 and the Louisiana Fifth Circuit in 2011.   The so-called "Black Strikes" report of alleged past discrimination was not before either court during their review, and therefore, cannot be considered by this court under AEDPA standards of review.

Nevertheless, the Louisiana Supreme Court took the opportunity to address some of Jacobs' disparate questioning claims and his "statistical argument" in its 2010 opinion.[264]   The court recognized, as did the Louisiana Fifth Circuit, that statistically it was "unlikely [to be] pure chance" that the State used 87% of its peremptory strikes to exclude non-white jurors that made up less than 19% of the venire.[265]   However, based on review beyond statistics, both state courts resolved that the peremptory strikes for Auzenne, Jordan, and Stevenson did not present a *Batson* violation, and the strikes used for Hughes and Florence also were not racially motivated.   The court concluded that "after a comprehensive review," the five peremptory challenges reviewed by the court at that time "did not evince a racially-discriminatory intent," and Jacobs' statistical argument failed.[266]   The court referenced only five of the jurors subject to Jacobs' *Batson* challenge.   This is because jurors Hawkins and Dillon were skipped or not considered by the

---

[262] The Louisiana Supreme Court did not mention the purported proffer or external evidence in its 2009 opinion reversing Jacobs' direct appeal because the matter was apparently brought for the first time in Jacobs' arguments on remand to the Louisiana Fifth Circuit.   The Louisiana Fifth Circuit in 2011 addressed the report in a footnote finding any issue about the admissibility of the report was not preserved for appeal:

On appeal, defendant states that the trial judge erred in refusing to allow him to introduce evidence of "historical discrimination" before and during trial.   First, defendant did not brief this issue, so it is deemed abandoned. U.R.C.A. Rule 1–3; Rule 2–12.4. Second, defendant *did not proffer the evidence* that he sought to introduce so, even if this argument was briefed, *we have nothing to review.*   Each of the other claims are addressed with respect to the prospective juror in question.

*Jacobs*, 67 So. 3d at 554 n.16; St. R. Vol. 54 of 109 at 13417, 5th Cir. Opinion, 5/24/11.

[263] *Cullen*, 563 U.S. at 181; *see also Lewis v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012) ("The import of *Pinholster* is clear: because [the petitioner's] claims have already been adjudicated on the merits, § 2254 limits our review to the record that was before the state court.").

[264] *Jacobs*, 32 So. 3d at 236; St. R. Vol. 107 of 109 at 27542, La. Sup. Ct. Order, 2009-K-1304, 4/5/10.

[265] *Id.* at 236; St. R. Vol. 107 of 109, at 27542.

[266] *Id.* at 236-37; St. R. Vol. 107 of 109 at 27543.

Louisiana Fifth Circuit in 2009, and the challenges against them were not before the Louisiana Supreme Court in 2010.   Thus, the Louisiana Supreme Court could only comment on "five of the seven peremptory challenges" used by the State.   Any suggestion by Jacobs that the Louisiana Supreme Court somehow acknowledged *Batson* violations based on this reference to "five of the seven"[267] is disingenuous, especially in light of Jacobs' request for clarification of the Supreme Court's remand directive on that very point.

In sum, the Louisiana Supreme Court reasonably concluded that the statistical arguments did not meet Jacobs' burden under the third *Batson* step to prove pretext or purposeful discrimination.   Jacobs has not shown by clear and convincing evidence that these factual conclusions were unreasonable to meet his burden under the AEDPA.

Remaining for consideration under step three is Jacobs' claim of disparate questioning and selection of Black jurors versus similar White jurors.   As to disparate questioning, the Louisiana Supreme Court concluded that the prosecution properly altered or condensed its questioning as *voir dire* panels proceeded.[268]   The findings are reasonable in light of the record and the prosecutor's statements that any distinction in his questioning was based on inadvertent exclusion or because he was attempting to condense the time it was taking, because the later panels were present for the presentations made to earlier panels.[269]

As to disparate treatment of Black and White prospective jurors, the law is clear that "[i]f a prosecution's proffered reasons for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination."[270]   The Louisiana Supreme Court (as to jurors Hughes, Florence, Auzenne,

---

[267] ECF No. 25 at 24.

[268] *Jacobs*, 32 So. 3d at 236; St. R. Vol. 107 of 109 at 27542, La. Sup. Ct. Order, 2009-K-1304, 4/5/10.

[269] *See*, *e.g.*, St. R. Vol. 50 of 109 at 12621, Trial Tr., 8/22/06.

[270] *Miller-El*, 545 U.S. at 241 (citation omitted).

Jordan, and Stevenson) and the Louisiana Fifth Circuit (as to jurors Hawkins and Dillon) held that the comparative jurors offered by Jacobs were not so similar as to have established discriminatory selection.

This court has reviewed each of the race-neutral reasons and explanations proffered by the prosecutor as to each of the relevant jurors.   This court has also reviewed the detailed discussions at trial and the state appellate courts' factual findings that the State did not engage in disparate questioning and otherwise provided clear and distinct reasons for excusing the Black jurors versus those White jurors held out by Jacobs to be similar.   Jacobs has provided no clear and convincing evidence to show error in the factual findings as to any of the stricken jurors.   Without need to repeat every finding given deference under the AEDPA as to each juror, the court provides these additional comments.

i.      Juror Hughes

As to juror Hughes, Jacobs claims the state trial court erred in allowing the State's peremptory excuse where there was no evidence placed on the record to explain his medical condition and its effect on his ability to serve.   ECF No. 25, ¶I(D)(5), at 32-34.   To the contrary, as noted by the Louisiana Supreme Court, it was the state trial judge's staff who first received juror Hughes' call and the details of his medical dilemma.[271]   This is evidenced by the state trial judge's comments:

> THE COURT:
>
> Yeah, there is a juror on the first panel that's asking to be excused.   He said he was going to have his doctor fax something over, but I don't think we've received it yet. [. . .]
> But, I mean, I wasn't going to excuse him because - - from the information that I was given from the deputy that he had some kind of muscular problem and he had

---

[271] *Jacobs*, 32 So. 3d at 230; St. R. Vol. 107 of 109 at 27531, La. Sup. Ct. Order, 2009-K-1304, 4/5/10; St. R. Vol. 50 of 109, 12612, Trial Tr., 8/22/06.

seen his chiropractor and the chiropractor may or may not be sending us something.
. . .

During the *Batson* challenge, the trial court made clear that he knew about juror Hughes'

condition and had not said anything to the lawyers to see how selection went during the second

day.[272]   The court also made clear that it accepted the State's explanation for back-striking

Hughes, whom the State did not know was Hispanic, because Hughes did not want to serve on the

jury.[273]   On the other hand, the State accepted juror Thibodeaux, the diabetic juror who never

asked to be excused from the jury.   The court found there to be "credible" race-neutral reasons

for the back-strike and that the defense had "not carried its burden of showing purposefully [sic]

discrimination."[274]

The Louisiana Supreme Court found no error in the state trial courts' findings and that they

were supported by the record.   Jacobs has presented no clear and convincing evidence to

overcome the presumption of correctness owed these findings.

ii.    Juror Florence

The Louisiana Supreme Court held that the Louisiana Fifth Circuit made critical errors in

finding a *Batson* violation in the State's peremptory strike for juror Florence, who had served on

a prior hung jury that did not know what to do in deliberations, was seen sleeping, had been a

victim of a crime, and had been subpoenaed for a different criminal matter in Jefferson Parish.[275]

The court first found that juror Florence could be distinguished from juror Rood, who also sat on

a hung jury but who did not indicate that her jury was confused about its duties.[276]   There also was

---

[272] St. R. Vol. 50 of 109 at 12644.
[273] *Id.*
[274] *Id.*
[275] *Jacobs*, 32 So. 3d at 231; St. R. Vol. 107 of 109 at 27533-37, La. Sup. Ct. Order, 2009-K-1304, 4/5/10.
[276] *Id.* at 231; St. R. Vol. 107 of 109 at 27534.

no indication that juror Rood had been sleeping or the victim of a crime.[277]   The court also correctly cited United States Supreme Court precedent in *Thaler*, which does not require (as the state appellate court had) that the trial court personally and independently recall a juror's demeanor to accept a prosecutor's demeanor-based peremptory strike or one based on the juror having been victim to a crime.[278]   Further, the court found plausible that the acceptance of the prosecutor's race-neutral reasons was based on the trial court's personal observations of the prosecutor's demeanor as allowed by the Supreme Court in *Thaler*.[279]

Jacobs has presented no clear and convincing evidence to overcome the presumption of correctness owed these findings that the State presented race-neutral reasons to excuse juror Florence without purposeful discrimination.

iii.    Jurors Auzenne, Jordan, and Stevenson

As mentioned previously, the Louisiana Fifth Circuit and the Louisiana Supreme Court each found that the reasons proffered by the State for using peremptory strikes for jurors Auzenne, Jordan, and Stevenson were race-neutral and "did not rise to the level of racial taint that could not be purged."[280]   The court nevertheless reviewed the reasons given by the prosecutor for each of these potential jurors to confirm the lower courts' factual findings that the State provided race-neutral reasons for each juror that were not shown by Jacobs' to be pretextual.

Jacobs has presented no clear and convincing evidence to show error in the state courts' factual findings that the strikes used for Auzenne, Jordan, and Stevenson were other than race-neutral or were purposefully discriminatory.

---

[277] *Id.* at 231 n.4; St. R. Vol. 107 of 109 at 27534.
[278] *Id.* at 233; St. R. Vol. 107 of 109 at 27534, 27536.
[279] *Id.* at 233; St. R. Vol. 107 of 109 at 27536.
[280] *Id.* at 233; St. R. Vol. 107 of 109 at 27537.

iv.    Juror Hawkins

On remand of Jacobs' direct appeal, the Louisiana Fifth Circuit determined that the prosecutor was not racially motivated in striking juror Hawkins where she indicated a sincere belief that, despite her partial rehabilitation on the point of Jacobs' having to testify, she still expected Jacobs to prove his innocence; and this was a race-neutral reason for the strike.[281]   The court also considered the trial court's finding that juror Hawkins was distinct from juror Vinturella, a White juror.[282]   The court also noted that Jacobs' claim that another juror, Arnold, also expected Jacobs to testify was not supported by the record.[283]   The court found that juror Arnold only commented that the police had to have had probable cause to make the arrest and guilt depended on what the State presented.[284]

Jacobs has presented no clear and convincing evidence to show error in the state courts' factual findings that the strike used for juror Hawkins was not race-neutral or that there was any purposeful discrimination.

v.    Juror Dillon

With regard to juror Dillon, the Louisiana Fifth Circuit recognized that the State struck Dillon because she was too sympathetic to runaway teenagers like defendant, which the prosecutor believed showed a likelihood she would side with the defense.[285]   The Louisiana Fifth Circuit found no error in the state trial court's finding that this strike was race-neutral and without discriminatory intent on the part of the prosecutor, citing *Snyder*.

---

[281] *Jacobs*, 67 So. 3d at 557; St. R. Vol. 54 of 109 at 13421-22, 5th Cir. Opinion, 07-KA-887, 5/24/11.
[282] *Id.* at 557; St. R. Vol. 54 of 109 at 13421-22
[283] *Id.* at 557 n.20; St. R. Vol. 54 of 109 at 13422.
[284] *Id.* at 557 n.20; St. R. Vol. 54 of 109 at 13422.
[285] *Id.* at 557-58; St. R. Vol. 54 of 109 at 13422-23.

Jacobs has presented no clear and convincing evidence to show error in the state courts' factual findings that the strike used for juror Dillon was not race-neutral or that there was any purposeful discrimination on the part of the prosecutor.

i.    Summary of Denial of Claim One

The court has considered the record, including the last reasoned opinions of the Louisiana Supreme Court and the Louisiana Fifth Circuit, addressing Jacobs' *Batson* challenges to the State's use of peremptory strikes to excuse jurors Hughes, Florence, Auzenne, Jordan, Stevenson, Hawkins, and Dillon.   The courts relied on the sound and reasonable application of appropriate Supreme Court precedent including the three-step test under *Batson*, as expounded upon in *Snyder*, *Thaler*, and their progeny, in reaching the factual conclusions that the State provided race-neutral reasons for excusing each juror and that Jacobs failed to show pretext or purposeful discrimination by clear and convincing evidence.   The state courts also concluded under the second and third steps of *Batson* that the prosecutor did not engage in disparate questioning nor did the prosecutor accept similar White jurors when compared to those Black jurors excused.   In sum, the state courts found no merit in Jacobs' *Batson* challenges to any of these listed jurors.

Jacobs has failed to establish that the state courts' factual findings were unreasonable under § 2254(d)(2) and has failed to show by clear and convincing evidence that the state courts' factual findings are not entitled to the presumption of correctness accorded under § 2254(e)(1).   Jacobs is not entitled to federal habeas relief on his *Batson* claim.

### 3.   Claim 2:   No Judicial Bias in Reversal of Initial Appellate Decision

Jacobs asserts that the reversal of his direct appeal by the Louisiana Supreme Court on the *Batson* issue was tainted by judicial bias through involvement in the decision by Associate Justice Knoll and then Associate Justice Guidry of the Louisiana Supreme Court.   ECF No. 25, ¶II, at 38.

As to Justice Knoll, Jacobs claims that beginning in 2002, Justice Knoll recused herself due to a relationship with an assistant district attorney who prosecuted Jacobs in his first trial.  *Id*., ¶A, at 39 & n.19.   Jacobs takes exception with Justice Knoll's return to participation in some rulings in 2006 and beyond while occasionally recusing herself in others.  *Id*. at 39-40, n.20.   Jacobs also argues that Justice Knoll had this relationship with a prosecutor who would have been in the Jefferson Parish District Attorney's Office when historical race-based jury decisions were being made by that office.  *Id*. at 40-41.   Jacobs argues that her failure to recuse from the decision to reverse the appellate court's grant of relief on his *Batson* challenge created a *per curiam* 4-1-1 decision and raised an appearance of impropriety, citing *Caperton v. A.T. Massey Coal, Co.*, 556 U.S. 868 (2009).

As for Justice Guidry, Jacobs claims that he should have been recused from the reversal decision because he previously made factual findings as a state trial judge concerning the historical evidence, including the "Black Strikes" report, Jacobs sought to introduce in the *Batson* challenge. ECF No. 25 ¶B, at 41.

The State in opposition argues that this federal court does not sit to review alleged errors of state law requiring grounds for recusal.   ECF No. 38 ¶2, at 33.   Further, the State claims that Jacobs has not cited any clearly established federal law that would have required either Justice to recuse.  *Id*. at 35.   In addition, the State asserts that, in its reasoned review of the question, the Louisiana Supreme Court explained the reasons for the Justices' decisions not to recuse and found no basis for them to have done otherwise.  *Id*. at 36-37.

a.     Louisiana Supreme Court's Last Reasoned Opinion

Jacobs first asserted the issue of judicial bias in his motion for rehearing filed in the Louisiana Supreme Court on April 19, 2010, after reversal of his direct appeal following his second

trial and conviction for two counts of second degree murder.[286]   On June 2, 2010, Justice Guidry issued a "Notice of No Recusal" in response to Jacobs' request that he recuse himself.[287]   The Justice found no basis for his recusal "simply" because he may have considered similar evidence in an unrelated case when he was a state district judge.[288]   He also stated that he found "nothing in the circumstances of the instant case that would prevent [him] from acting impartially and without bias as a member of this court."[289]

On June 18, 2010, the Louisiana Supreme Court, including Justice Guidry and Justice Knoll, granted the rehearing to clarify its remand directives and denied rehearing as to the remainder of the application.[290]   The court rejected Jacobs' arguments regarding any basis for the recusal of Justice Knoll, noting that Justice Knoll had recused herself from matters related to the first degree murder prosecution because of a familial relationship with a prosecutor who may have been involved with that prosecution.[291]   The court made clear that Jacobs' was reindicted on first degree murder on September 12, 2002, and later charged by amendment on two counts of second degree murder, both of which occurred "after Justice Knoll's family member left the prosecutor's office."[292]   The court concluded that, "[c]onsequently, there was no basis for Justice Knoll to recuse herself after her family member left the employ of the prosecutor's office and a new prosecution, in which her family member could have had no involvement, was commenced."[293] The court also noted that "[t]here has never been any inference that Justice Knoll has any sort of

---

[286] St. R. Vol. 107 of 109 at 27517, Application for Rehearing, 09-K-1304, 4/19/10.

[287] *Id.* of 109 at 27550, Notice of No Recusal, 2009-K-1304, 6/2/10.

[288] *Id.* at 27550.

[289] *Id.*

[290] *Jacobs*, 37 So. 3d at 995; St. R. Vol. 107 of 109 at 27545-46, La. Sup. Ct. Order, 2009-K-1304, 6/18/10.

[291] *Id.* at 995; St. R. Vol. 107 of 109 at 27546.

[292] *Id.* at 995; St. R. Vol. 107 of 109 at 27546.

[293] *Id.* at 995; St. R. Vol. 107 of 109 at 27547.

knowledge of this case outside of the record; her recusal was based strictly on her familial relationship."[294]

As to Justice Guidry, the court declined to consider the need for his recusal.[295]   The court reiterated that the basis of the arguments regarding historical evidence related to the *Batson* analysis had been pretermitted by and was now on remand to the Louisiana Fifth Circuit.[296]   The court found that there was nothing before the court that would have required his recusal.[297]   This was the last reasoned state court opinion on the issue of recusal.

    b.    Judicial Bias on Habeas Review

As an initial matter, to the extent Jacobs complains that the Louisiana Supreme Court Justices violated Louisiana law on recusal, the alleged violation or misapplication of state law standards of judicial recusal does not warrant federal habeas corpus review or relief.[298]   A federal court simply does not have jurisdiction to determine petitioner's rights under "state recusal statutes or ethical canons as such."[299]   Instead, federal habeas review is limited to reviewing whether a state prisoner is being held "in custody in violation of the Constitution or laws or treaties of the United States."[300]   A federal habeas corpus court will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause.[301]

The question of fundamental fairness under the Due Process Clause presents a mixed question of law and fact.[302]   Under the AEDPA, this federal habeas court must determine whether

---

[294] *Id.* at 995 n.1; St. R. Vol. 107 of 109 at 27547.

[295] *Id.* at 995-96; St. R. Vol. 107 of 109 at 27547.

[296] *Id.* at 995-96; St. R. Vol. 107 of 109 at 27547.

[297] *Id.* at 996; St. R. Vol. 107 of 109 at 27547.

[298] *Cf. Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Estelle*, 502 U.S. at 67-68 (citing *Lewis*, 497 U.S. at 780; *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).

[299] *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008).

[300] 28 U.S.C. § 2241(c)(3).

[301] *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir . 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)).

[302] *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000).

the denial of relief by the state courts was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence before the state court.[303]    In doing so, factual determinations made by the state court are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.[304]

Fundamental due process requires that a defendant receive "'a fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case."[305]    The alleged failure to follow state or federal recusal statutes generally does not violate due process.[306]    In addition, the Supreme Court has held that "'matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion.'"[307]    Thus, claims of judicial bias are difficult to prove on federal habeas review, because the Supreme Court has determined "that what degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision."[308]    The Due Process Clause sets "a constitutional floor, not a uniform standard."[309]

As stated by the United States Supreme Court in *Bracy*, when reviewing allegations of judicial bias, it ordinarily "presume[s] that public officials have properly discharged their official

---

[303] 28 U.S.C. § 2254(d)(1), (2).

[304] 28 U.S.C. § 2254(e)(1).

[305] *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal citation omitted); *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (citation omitted); *Samuel v. Warden, Avoyelles Corr. Ctr.*, 51 F. App'x 483 (5th Cir. 2002) (same).

[306] *Richardson*, 537 F.3d at 474 (citations omitted).

[307] *Caperton*, 556 U.S. at 876 (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)).

[308] *Buntion*, 524 F.3d at 672 (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986) (internal quotation omitted)); *see also Ryan v. Clarke*, 387 F.3d 785, 793-94 (8th Cir. 2004) ("Application of this vague standard, when viewed through the deferential lens of *Williams v. Taylor* and the AEDPA, necessarily leaves state courts considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of, [relevant Supreme Court precedent]") (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1012-13 (8th Cir. 2004)).

[309] *Bracy*, 520 at 904 (citation omitted).

duties."[310]  In its statements of clearly established law, the Supreme Court recognizes two kinds of judicial bias: actual bias and presumptive bias.[311]  Actual bias considers objective standards that require recusal when a judge has "a direct, personal, substantial, pecuniary interest" in a case and "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."[312]  The Supreme Court has stated, however, that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[313]  Judicial opinions will only support an actual bias claim if they reveal favoritism or antagonism such that fair judgment is impossible.[314]  The Supreme Court later clarified that a reviewing court must determine "whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias."[315]

The Supreme Court also has found presumptive bias to exist in three situations: (1) the decision-maker has a direct or pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision-maker has the dual role of investigating and adjudicating disputes and complaints.[316]  "[I]t is only *clearly established* by Supreme Court precedent that presumptive bias exists in the three circumstances discussed above."[317]

---

[310] *Id*. at 909 (internal quotations marks and citations omitted).

[311] *Buntion*, 524 F.3d at 672 (citing cases).

[312] *Caperton*, 556 U.S. at 871 (quoting *Tumey*, 273 U.S. at 523, and *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

[313] *Liteky v. United States*, 510 U.S. 540, 555 (1994) (examining judicial bias in the context of a motion for recusal under 28 U.S.C. § 455) (citation omitted); *Reese v. Cain*, 265 F. App'x 230 (5th Cir. 2008) (citing *Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005)); *see also Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003); *Watson v. U.S. ex rel. Lerma*, 285 F. App'x 140, 142 (5th Cir. 2008) (citations omitted).

[314] *Liteky*, 510 U.S. at 555.

[315] *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (quoting *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016)).

[316] *Bigby*, 402 F.3d at 559 (citing *Valley v. Rapides Par. Sch. Bd*., 118 F.3d 107, 1052 (5th Cir. 1997).

[317] *Richardson*, 537 F.3d at 476 (emphasis in original).

i.    Associate Justice Knoll

Jacobs alleges bias in Justice Knoll's participation in the 2010 reversal of his direct appeal on the *Batson* issue.   ECF No. 25 ¶II(B), at 38.   He points to her familial relationship with a former Jefferson Parish Assistant District Attorney who was involved in Jacobs' initial capital prosecution, and her decision to recuse in two more instances in 2015 after she did not recuse from the 2010 ruling that reinstated Jacobs' conviction on the *Batson* issue.

Jacobs has not, however, presented any evidence to dispute the Louisiana Supreme Court's finding that the tenure of Justice Knoll's relative as a district attorney ended prior to Jacobs' 2002 reindictment and years before the relevant writ application was considered by the Louisiana Supreme Court in 2010.   The record contains no clear and convincing evidence that Justice Knoll had "a direct, personal, substantial, pecuniary interest" in Jacobs' criminal proceedings or any probability of actual bias as required under United States Supreme Court precedent.[318]

Jacobs also suggests that there is somehow a potential bias because Justice Knoll's family member worked at the district attorney's office during a time he describes as a "part of a history of race-based decision-making within the office. . . ."   ECF No. 25, ¶II(A), at 41.   Jacobs apparently seeks to impute grounds for recusal upon Justice Knoll in 2010 based on his assumption that her relative may have been in the district attorney's office when discriminatory decision-making took place prior to his indictment in 2002.   Jacobs, however, has presented no clear or convincing evidence that would indicate that Justice Knoll's relative was engaged in any *Batson* violation or other discriminatory decision-making that impacted his conviction.   To the extent he may suggest the familial relationship with the former prosecutor was basis for actual bias, he has not pointed to any Supreme Court or other precedent that would make the leap to a finding of

---

[318] *Caperton*, 556 U.S. at 871 (quoting *Tumey*, 273 U.S. at 523, and *Withrow*, 421 U.S. at 47).

actual bias that he proposes to this court.   Jacobs has not shown even a likelihood of actual basis on the facts of the case.

The record contains nothing to indicate that Justice Knoll met any of the only three bases for presumptive bias recognized by the United States Supreme Court.[319]   She has not been shown to have a direct or pecuniary interest in the outcome of Jacobs' case.   She was not the target of personal abuse or criticism by Jacobs prior to the recusal motions.[320]   She also did not play a dual role of investigating and adjudicating the dispute before her.

Jacobs has not pointed to any Supreme Court precedent that would show that the Louisiana Supreme Court erred in its finding that Justice Knoll should not have recused herself for reasons of either actual or presumptive bias.   He also has not established that their underlying factual findings were unreasonable.   Therefore, Jacobs has not established that the denial of relief was contrary to or an unreasonable application of Supreme Court law or that the Louisiana Supreme Court's factual findings related to the recusal issue were unreasonable or otherwise clearly and convincingly erroneous.   He is not entitled to relief on this issue.

ii.    Associate Justice Guidry

In an attempt to show bias, Jacobs focuses on the fact that Justice Guidry, as a trial court judge in a different criminal case, made factual findings and excluded the same historical evidence, including the "Black Strikes" report, of prior race discrimination in jury selections in Jefferson Parish.   ECF No. 25 ¶II(B), at 41.

---

[319] *Bigby*, 402 F.3d at 559 (citing *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 107, 1052 (5th Cir. 1997)); *Richardson*, 537 F.3d at 475 (citation omitted) (emphasis in original).
[320] As Jacobs concedes, Justice Knoll did recuse herself after he brought her role in the case under criticism in 2010; however, Jacobs had not targeted or criticized her on the record prior to that.

According to the record, then-24th Judicial District Judge Guidry in 2003[321] denied a *Batson* motion in a different defendant's case after receiving the same report and deeming it a "flawed study."[322]   As with Justice Knoll, Jacobs has not shown a likely probability of bias based on Justice Guidry's ruling seven years earlier in a different case and in a different judicial posture. As quoted above, the Supreme Court has stated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[323]

Jacobs has not presented any evidence to reveal favoritism or antagonism in Justice Guidry's rulings in 2003 or 2010.[324]   The Louisiana Supreme Court also had the benefit of Justice Guidry's Notice of No Recusal in which he found, *inter alia*, nothing that would prevent him from acting impartially and without bias.[325]   Even more compelling is the fact that the Louisiana Supreme Court made clear that nothing related to Justice Guidry's prior ruling, *i.e.* the propriety of the "Black Strikes" report, was before the court in the writ application considered in 2010.[326]

Nor has Jacobs shown any basis for presumptive bias under the limited categories so recognized by the Supreme Court; there is no suggestion that Judge Guidry had a direct or pecuniary interest in the outcome of Jacobs' case, he was not previously the target of personal abuse or criticism by Jacobs, and he did not play a dual role of investigating and adjudicating his case.

Therefore, Jacobs has not established that the denial of relief was contrary to or an unreasonable application of Supreme Court law or that the Louisiana Supreme Court's factual

---

[321] St. R. Vol. 50 of 109 at 12632-33, Trial Tr., 8/22/06.
[322] *Id.* at 12633-34.
[323] *Liteky*, 510 U.S. at 555 (citation omitted).
[324] *Id.*
[325] St. R. Vol. 107 of 109 at 27550, Notice of No Recusal, 6/2/10.
[326] *Jacobs*, 37 So.3d at 995-96; St. R. Vol. 107 of 109 at 27547, La. Sup. Ct. Order, 2009-K-1304, at 2, 6/18/10.

findings related to the recusal issue were unreasonable or otherwise clearly and convincingly erroneous.   He is not entitled to relief on this issue.

### 4.   Claim 3:   Removal of Jacobs' Unqualified Capital Counsel

Jacobs alleges that he was denied the right to counsel of his choosing when the state trial court dismissed one of his attorneys, G. Ben Cohen, who had been representing Jacobs since before the first capital trial.   ECF No. 25, ¶III, at 42; ECF No. 42, ¶III, at 34.   Jacobs asserts that, at the time, the Louisiana Capital Assistance Center ("LCAC") was representing him as an indigent defendant.   ECF No. 25, ¶III, at 43.   He argues that Mr. Cohen, at the time, was not an LCAC employee and instead, was representing Jacobs *pro bono*, equating himself to free retained counsel not under the appointment.   *Id*.   As such, Jacob asserts, his dismissal from the capital case by the state trial court denied Jacobs' Sixth Amendment right to counsel of choice.   He also notes that there is no state or federal law that would have required him to re-enroll for the court to consider the claim on direct appeal.   *Id*. at 45; ECF No. 42, at 35.

Alternative to its procedural default defense, the State argues that Mr. Cohen conceded that he was not qualified under the Louisiana Supreme Court rules to represent a capital defendant at trial.[327]   ECF No. 38, ¶3, at 40.   Furthermore, as found by the state courts, Mr. Cohen did not move to enroll when Jacobs' case was no longer a capital case, *i.e.,* after the indictment was amended to charge two counts of second degree murder, when the rules of capital defense qualifications no longer applied.   *Id*.   The State also argues that, as a matter of Louisiana law relevant to appointment of counsel, this claim is not cognizable on federal review.   *Id*. at 39-40. In addition, the State noted that the Louisiana Fifth Circuit, in the last reasoned opinion on the issue, alternative to the procedural default, found that the claim lacked merit under United States

---

[327] As discussed previously, this is one of the claims for which the State asserted a procedural default defense and the court is looking past that defense because the claim lacks merit.

Supreme Court precedent because Jacobs, as an indigent, did not have absolute right to counsel of choice.   ECF No. 38, ¶3, at 39-40.   As such, because Mr. Cohen was not qualified under Louisiana Supreme Court rules to represent Jacobs in a capital trial, the State argues that his removal was appropriate under state law and was not unconstitutional.   *Id*. at 41-42.

        a.      <u>Louisiana Fifth Circuit's Last Reasoned Opinion</u>

The record reflects that, on September 23, 2004, while Jacobs was still facing capital first degree murder charges, the State filed a "Motion to Traverse Qualifications to Represent Indigent Defendant in Capital Murder Case or Alternatively Motion to Disqualify Counsel for Defense."[328] The prosecutors challenged the qualifications of both Mr. Cohen and one of his co-counsel, Christine Lehmann, under LA. SUP. CT. Rule XXX1(A)(1)(a) and La. Standards on Indigent Defense, Chap. 7, Part III, Std. 7-3.1, to represent Jacobs in the on-going first degree murder, capital trial.   *Id*.   The motion asserted that Mr. Cohen was listed by the indigent defender assistance board only as qualified to be appellate lead counsel, and Ms. Lehmann did not appear on their roles at all.[329]

The state trial court held a hearing on the motion on September 30, 2004.[330]   In addressing Mr. Cohen's objections to the motion, the State argued that allowing unqualified counsel to continue could be support for a future ineffective assistance of counsel claim.[331]   When Mr. Cohen claimed violation of Jacobs' equal protection rights, the State responded that the motion was not personal but intended to protect the record without "seeding reversible error."[332]

---

[328] St. R. Vol. 7 of 109 at 1836, Motion to Traverse Qualification, 9/23/04.

[329] *Id*. at 1837; St. R. Vol. 44 of 109 at 11464, Hearing Tr., 9/23/04 (State's oral request for ruling on the motion).

[330] St. R. Vol. 8 of 109 at 2092, Min. Entry, 9/30/04; St. R. Vol. 54, at 13610, Hearing Tr., 9/30/04.

[331] St. R. Vol. 54 of 109 at 13612, Hearing Tr., 9/30/04.

[332] *Id*. at 13614-15.

Upon questioning by the state trial court, Mr. Cohen stated, "I'm a certified appellate counsel and that's the extent of my certification."[333]   As for Ms. Lehmann, Mr. Cohen also informed the court that she was acting as a third chair counsel, and her certification as a second chair counsel was pending before the Louisiana Indigent Defense Assistance Board.[334]   He conceded, however, she too was not certified at that time.[335]   Mr. Cohen also had already attempted to locate certified first chair counsel should he be removed as lead counsel over his objection.[336]   In response, the prosecutor argued that this was not sufficient because the law required "not less than two certified trial attorneys, one of which must be certified as lead counsel."[337]   After listening to the arguments of counsel, the state trial court granted the State's motion to remove Mr. Cohen finding that Mr. Cohen admittedly did not meet the minimum standards to sit as first or second chair trial counsel for Jacobs.[338]   Mr. Cohen objected to his removal citing a violation under, *inter alia*, the Sixth Amendment's right to counsel of choice.[339]

The Louisiana Fifth Circuit, in the last reasoned opinion on the issue and in the alternative to procedural default, found no merit in Jacobs' claim.[340]   The court relied in part on *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006), which held that a defendant requiring appointment of counsel does not have an absolute right to counsel of first choice and discretion is left to the court in the interest of fairness.

---

[333] *Id*. at 13615.
[334] *Id*. at 13616.
[335] *Id*.
[336] *Id*. at 13617.
[337] *Id*. at 13618-19.
[338] *Id*. at 13628-29.
[339] *Id*. at 13631.
[340] *Jacobs*, 67 So. 3d at 565; St. R. Vol. 54 of 109 at 13435-36, 5th Cir. Opinion, 07-KA-887, 5/24/11.

b.    Sixth Amendment Right to Counsel

To whatever extent Jacobs may challenge Mr. Cohen's removal from the case under state guidelines and laws, that is not the province of this court.[341]  As mentioned previously, federal habeas review is limited to review of the constitutionality of a state prisoner's conviction and custody.[342]

Jacobs alleges that he was denied his Sixth Amendment right to counsel of his choice. Questions related to the Sixth Amendment right to counsel present mixed questions of law and fact.[343]  This federal habeas court must therefore determine whether the denial of relief by the state courts was contrary to or an unreasonable application of Supreme Court law.

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.'"[344]  The Supreme Court has consistently held that "the Sixth Amendment guarantees a defendant the right to be represented by *an otherwise qualified attorney* whom that *defendant can afford* to hire."[345] However, at the time of Jacobs' criminal proceeding, the Supreme Court clearly established in *Gonzalez-Lopez*, and continues to abide, that an indigent defendant *does not* have the right to have the state appoint his preferred counsel of choice.[346]   "[T]hose who do not have the means to hire

---

[341] *See Swarthout*, 562 U.S. at 219 (". . . federal habeas corpus relief does not lie for errors of state law.") (citation omitted).

[342] 28 U.S.C. § 2241(c)(3).

[343] *Childress v. Johnson*, 103 F.3d 1221, 1224 (5th Cir. 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).

[344] *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004), and citing *United States v. Cronic*, 466 U.S. 648, 653–654 (1984) and *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)).

[345] *Luis v. United States*, 578 U.S. 5, 12 (2016) (emphasis added and citation omitted).

[346] *Gonzalez-Lopez*, 548 U.S. at 151 (citations omitted); *Luis*, 578 U.S. at 12 ("And an indigent defendant, while entitled to adequate representation, has no right to have the Government pay for his preferred representational choice.") (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)); *United States v. Conlan*, 786 F.3d 380, 391 (5th Cir. 2015) (citations omitted).

their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."[347]

The parties do not contest that Jacobs, in 2004, was proceeding as an indigent with representation by the LCAC through the Indigent Defense Board. ECF No. 25, ¶III, at 43. The issue Jacobs presents is whether he was entitled to have Mr. Cohen remain as his counsel of choice. Under Supreme Court precedent, Jacobs was not entitled to counsel of his choice.

Jacobs also argues that Mr. Cohen was not technically an employee of the LCAC and was working *pro bono* on Jacobs' case. Assuming this technicality was presented to the state courts, it does not alter the proper application of Supreme Court precedent relied upon by the state courts. Specifically, the Court's requirement that counsel be "*an otherwise qualified attorney*."[348] While *Luis* was not issued until 2016, the gravamen of its requirement of qualified and effective counsel is well-healed in Supreme Court law:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an *effective advocate* for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.[349]

The Court has also recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness . . . ."[350] Thus, the Sixth Amendment right to choose one's preferred counsel is not an absolute one; it may be circumscribed where the interests of justice require.[351]

In this case, Mr. Cohen was removed as lead trial counsel at a time when he was *not* qualified under state rules applicable to capital trials. He conceded his lack of qualification

---

[347] *Caplin & Drysdale*, 491 U.S. at 624.
[348] *Luis*, 578 U.S. at 12 (emphasis added).
[349] *Wheat v. United States*, 486 U.S. 153, 159 (1988) (emphasis added and citations omitted).
[350] *Gonzalez-Lopez*, 548 U.S. at 152 (citation omitted).
[351] *Wheat*, 486 U.S. at 159.

himself before the state trial court.   Mr. Cohen went so far as to claim that he was not representing Jacobs through LCAC (the only entity appointed to represent Jacobs) and that he was benevolently representing Jacobs on his own, knowing he was not certified to do so.[352]   This adds credence to the prosecutor's concerns at the time that an inevitable ineffective assistance of counsel claim could result if Mr. Cohen remained trial counsel when he knowingly was not qualified to do so.

For example, the United States Fifth Circuit has recognized that, while it may not be a *per se* rule, a lawyer's lack of credentials to represent a client may be considered on review of a *Strickland* claim.[353]   The Fifth Circuit noted that the cases addressing the issue of unqualified counsel "demonstrate that the key to adequate representation is not technical license to practice in the jurisdiction involved, but a credential from *some* forum demonstrating the specialized knowledge of a lawyer."[354]   While the Fifth Circuit addressed the question under different circumstances and made no *per se* rule, the court made clear that the issue should be considered in addressing a *Strickland* claim.[355]   Thus, it was reasonable for the state courts to consider Mr. Cohen's lack of state-imposed credentials to act as a capital trial counsel on behalf of indigent defendant Jacobs in determining whether he should be removed from that role.

Jacobs has failed to establish a denial of his Sixth Amendment right to counsel when Mr. Cohen was removed from the case and replaced by counsel from the LCAC that purportedly was well qualified to represent Jacobs at trial, according to Mr. Cohen himself.[356]   Furthermore, to the extent relevant, Jacobs has presented no Supreme Court precedent, and the court can find none,

---

[352] *See* St. R. Vol. 54, at 13628, Hearing Tr., 9/30/04.

[353] *United States v. Maria-Martinez*, 143 F.3d 914, 916-18 (5th Cir. 1998) (citing *Bellamy v. Cogdell*, 974 F.2d 302, 306 (2d Cir.1992)).

[354] *Maria-Martinez*, 143 F.3d at 917 (emphasis in original).

[355] *Id*. at 919.

[356] *See* St. R. Vol. 54 of 109 at 13619, Hearing Tr., 9/30/04 ("Clive Stafford Smith has made it clear that . . . he's coming back to try this case. […]   I think he's as good a lawyer as it gets.").

that would support his contention that he was denied his Sixth Amendment right to counsel in this situation.   Jacobs also has not established that the state courts' denial of relief on this claim was based on unreasonable findings of fact or an unreasonable application of Supreme Court law.   He is thus not entitled to federal habeas relief on this claim.

### 5.   Claim 4: No Discrimination underlying Grand Jury Indictment

Jacobs alleges that the indictment read at his 2006 trial was tainted by racial and gender discrimination which requires reversal of his conviction.   ECF No. 25, ¶IV, at 45.   He alleges that, at the time of his original indictment in 1996, the selection of grand jury forepersons involved discriminatory practices.   *Id*.   Jacobs avers that, at the start of the 2006 trial, "the prosecutors swore in the jury by reading the original 1996 indictment, and convicted Mr. Jacobs of *two counts* of second degree murder, rather than *one count* on which he had been indicted in 2002." (emphasis in original) *Id*. at 47.   Essentially, he asserts that "the State" read aloud the wrong indictment.   *Id*.   He also asserts that the Louisiana Fifth Circuit, in its initial opinion before reversal, noted that the 2005 amendment of the 1996 indictment was "problematic," although this was not the basis for its ruling.   *Id*. at 49-50.   Jacobs further argues that, because he challenged the 1996 indictment prior to his first trial and the Louisiana Supreme Court found it "constitutionally unsound," his claim was preserved for review after his second trial, should not have been procedurally defaulted, and should now be reviewed *de novo*.   *Id*. at 49.

Alternative to its procedural default defense, the State argues that placing the 2005 handwritten amendment on the 1996 indictment and the reading of that indictment at the 2006 trial were inadvertent.   ECF No. 38, ¶4, at 43.   The State asserts that Jacobs neither objected to either issue nor urged a motion to quash the indictment after 2001.   *Id*.   Further, the State notes that Jacobs repeatedly cites to *Kennedy v. Cain*, No. 11-922, 2013 WL 5674339, at *3 (E.D. La. Oct.

15, 2013), as support for his claims, but fails to mention that opinion was reversed by the United States Fifth Circuit, in *Kennedy v. Cain*, 624 F. App'x 886, (5th Cir. 2015), for the trial court's failure to give AEDPA deference to the state courts' factual and statistical findings. *Id*. at 44-45.

Referencing another unpublished opinion from this court, the State also argues that the reindictment in 2002 rendered moot any claim of defect related the grand jury foreperson selection process. *Id*. at 46-47. The accidental amendment and reading of the incorrect written document would easily have been corrected, the State argues, had the mistake been noticed at the time, noting that there was no objection from the defense. The State concludes that the purpose of habeas is not to use a "technical 'gotcha' trap" to undermine a conviction. *Id*. at 48.

### a.    State Court Rulings

Jacobs asserted his challenge to the incorrectly amended indictment in his supplemental briefs during his remanded appeal of his 2006 conviction. He argued there in relevant part that, after receiving a transcript of the reading of the indictment at the 2006 trial, he determined that the jury was read an amended version of the tainted 1996 indictment and not the 2002 indictment.[357] Jacobs reiterated that, as the Louisiana Supreme Court had already decreed, the 1996 indictment was issued when the grand jury foreperson selection process was racially discriminatory and, therefore, it was improperly used in the second trial.[358]

The State argued, in addition to procedural defenses, that the inadvertent amendment to the 1996 indictment instead of the 2002 indictment was not prejudicial because Jacobs knew he had been reindicted and was facing the amended charges of second degree murder.[359]

---

[357] *Jacobs*, 67 So. 3d at 597 (giving the timeline of Jacobs' evolving appellate claim); St. R. Vol. 54 of 109 at 13491-92, 5th Cir. Opinion, 07-KA-887, 5/24/11.
[358] *Jacobs*, 67 So. 3d at 597.
[359] *Id*.

The Louisiana Fifth Circuit initially noted that it had already determined that Jacobs' 2006 prosecution was instituted with a valid grand jury indictment from 2002, which charged him with two counts of first degree murder.[360]    The court declined to consider Jacobs' other arguments because Jacobs failed to properly challenge the amendment to the indictment in the trial court before asserting it in his supplemental briefs.[361]    The Louisiana Supreme Court denied Jacobs' subsequent writ application without stated reasons.[362]

b.    Written Amendment and Reading of the Indictment

At the outset, Jacobs makes no substantive challenge to the propriety of the 2002 grand jury indictment or the state courts' conclusion that his 2006 prosecution was initiated by and followed from that constitutionally sound indictment issued by a grand jury that was not tainted by racial or any other bias.    Under Louisiana law, the issuance of the 2002 indictment superseded and prevailed over the constitutional concerns with the 1996 indictment and allowed Jacobs' prosecution to proceed.[363]    Jacobs never challenged the 2006 indictment on grounds of racial or gender discrimination in the state courts.    He still has not, and instead, uses those terms on the misconception that he was tried under the 1996 indictment and ignores the existence and implications of the 2002 indictment.

Jacobs' claim is premised on the State's placement of the 2005 amendment in writing on the wrong piece of paper, *i.e.,* the 1996 indictment, and the reading of that wrong piece of paper, rather than the 2002 indictment, before the 2006 trial.    This, he claims, acted somehow to revive

---

[360] *Id*.

[361] *Id*. at 598.

[362] *Jacobs*, 80 So. 3d at 468.

[363] *State v. Seals*, 09-1089 (La. App. 5 Cir. 12/29/11); 83 So. 3d 285, 351 (citing *State v. Alo*, 06-473 (La. App. 5 Cir. 12/27/06); 948 So. 2d 275, 278; *State v. Freeman*, 37,312, pp. 3-4 (La. App. 2 Cir. 7/16/03); 850 So. 2d 1088, 1090, *writ denied*, 03-2466 (La. 2/6/04); 865 So. 2d 740).

by amendment the unconstitutionally tainted indictment under which he could not constitutionally be prosecuted pursuant to *Campbell*, 523 U.S. at 396.[364]

Long before the deferential influence of the AEDPA, federal courts resolved that the "sufficiency of an indictment or information is primarily a question of state law."[365] Deficiencies in state court indictments "are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process."[366] However, when the sufficiency of the indictment is determined by the state's highest court to be sound under state law, consideration of the question is foreclosed in federal habeas corpus proceedings.[367] Jacobs presented his arguments to both the Louisiana Fifth Circuit and the Louisiana Supreme Court to no avail. Although the Louisiana Fifth Circuit provided reasons for rejecting the claim on procedural grounds, the court also found on its review, both of the claims and on errors patent review, that the 2002 indictment and the improvidently placed written amendment were sufficient under state law.[368] This would preclude federal review.

Nevertheless, considering the claim *de novo* or under the AEDPA, Jacobs has not established that the actual indictment or amendment under which he was prosecuted were constitutionally deficient. As noted above, he made no such claim about the 2002 indictment

---

[364] *See* ECF No. 25, ¶IV, at 46.
[365] *Tapia v. Tansy*, 926 F.2d 1554, 1560 (10th Cir. 1991) (citations omitted); *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994) (same).
[366] *Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985); *see, Johnson v. Puckett*, 930 F.2d 445, 447 (5th Cir. 1991) ("In a federal court, habeas corpus can be invoked with respect to indictments only where they are 'so fatally defective' that under no circumstances could a valid conviction result from facts provable under the indictment.") (citation omitted); *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988) ("[T]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction.") (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (internal citation omitted)).
[367] *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984) (citing cases); *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (if the state courts have held that an indictment is sufficient under state law, "a federal court need not address that issue.") (citations omitted), *remanded on other grounds sub nom Williams v. Collins*, 12 F.3d 70 (5th Cir. 1994); *Morlett*, 851 F.2d at 1523 (if question of sufficiency of indictment is presented to highest court, then the question is foreclosed from federal habeas review) (citing *Liner*, 731 F.2d at 1203).
[368] *Jacobs*, 67 So. 3d at 590-91; St. R. Vol. 54 of 109 at 13478-80, 5th Cir. Opinion, 07-KA-887, 5/24/11.

which initiated his 2006 prosecution.   In addition, Louisiana law allows a district attorney to amend grand jury indictments to charge a defendant with a lesser offense.[369]   The prosecutor also may do so without a formal indictment.[370]

Therefore, the Jefferson Parish District Attorney had the authority to reduce Jacobs' charges from first degree murder to second degree murder without involving the grand jury.   More importantly, under Louisiana law, the prosecutor was not required to make a formal written amendment to the indictment for the reduction of the charges to be in effect.[371]   Louisiana law favors an oral or written amendment solely for purposes of placing a defendant on notice of the crime for which he is charged so he may prepare a defense.[372]   In addition, the technical sufficiency of an indictment may not be challenged in Louisiana after conviction when the defendant was fairly informed of the charges against him.[373]

As the state appellate court resolved, and the record shows, Jacobs clearly was on notice that he was charged with and being tried for two counts of second degree murder.   Jacobs entered a plea of not guilty to the 2002 indictment on two counts of first degree murder.[374]   Under Louisiana law, first degree murder includes the elements of the lesser offense of second degree murder.[375]   Jacobs was on notice of the crimes charged, even without a written amendment on the 2002 indictment.   Jacobs also entered a plea of not guilty to the amended second degree murder

---

[369] LA. CODE CRIM. PROC. ANN. art. 487; *State v. Seals*, 09-1089 (La. App. 5 Cir. 12/29/11); 83 So. 3d 285, 351 (citing *State v. Davis*, 385 So. 2d 193, 196 (La. 1980)).

[370] *Seals*, 83 So. 3d at 351 (citing *State v. Edwards*, 287 So. 2d 518, 525 (La. 1973)).

[371] *Id.* at 351-52.

[372] *State v. Wright*, 40,945 (La. App. 2 Cir. 5/19/06); 931 So. 2d 432, 442, *writ denied*, 2006-1727 (La/ 3/16/07); 952 So. 2d 694.

[373] *State v. James*, 305 So. 2d 514, 516-17 (La. 1974); *State v. Robicheaux*, 412 So. 2d 1313, 1320-21 (La. 1982); *see also United States v. Cooper*, 714 F.3d 873, 877 (5th Cir. 2013) ( "The validity of an indictment is governed by practical, not technical considerations, and [t]he basic purpose behind an indictment is to inform a defendant of the charge against him." (internal quotations and citations omitted)).

[374] *Jacobs*, 67 So. 3d at 545; St. R. Vol. 54 of 109 at 13402-03, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[375] *Davis*, 385 So. 2d at 197.

charges presented by the district attorney on May 13, 2005, acknowledging that the charges were reduced.[376]    Jacobs proceeded over the fourteen months to pursue and assert his defenses to the amended second degree murder charges while preparing for trial.[377]    During that time, neither Jacobs nor his counsel had reason to question the fact that he was charged with and being tried for two counts of second degree murder of Nelson Beaugh and Della Beaugh based on the amended charges made known on May 13, 2005.

As for the reading of the improper piece of paper, where the 2005 amendment had been scribbled, Jacobs has again shown no due process or other constitutional violation.    Notably, it was not "the State" that read the indictment at the start of the 2006 trial as Jacobs asserts.[378]    It was instead a clerk for the state trial court who read the 1996 indictment with insertions of language to reflect the 2005 amendment of the charges to second degree murder.[379]    This fact also does *not* somehow change the initiating document from the 2002 indictment to the 1996 indictment.    As noted above, Jacobs' 2006 prosecution was initiated by the 2002 indictment for two counts of first degree murder as amended by the State in 2005 to two counts of second degree murder.    Where that amendment was memorialized is of no moment as no such writing was necessary at all as long as Jacobs was on notice of the crimes to prepare his defense, and he was.

Further, although the incorrect document was read aloud in 2006, the factual information provided to the jury regarding the two murders did not change, whether read in one paragraph or two or from one piece of paper or another.    The jury was properly advised that Jacobs was charged

---

[376] *Jacobs*, 67 So. 3d at 546; St. R. Vol. 54 of 109 at 13402-03, 5th Cir. Opinion, 07-KA-887, 5/24/11; *see State v. Domingue*, 517 So. 2d 346, 347 n.1 (La. App. 1 Cir. 11/10/87) ("Since second degree murder is a lesser included offense of first degree murder, the state may abandon the charge of the greater crime and proceed with the prosecution of the lesser, and no formal amendment of the indictment is necessary.") (citing cases).

[377] *Jacobs*, 67 So. 3d at 546; St. R. Vol. 54 of 109 at 13403, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[378] *See* ECF No. 25, at 47 (… "the State had read aloud …").

[379] St. R. Vol. 54 of 109 at 13650, Tr. of Reading of Indictment, 8/23/06.

with the second degree murder of Nelson Beaugh and the second degree murder of Della Beaugh

on October 31, 1996, in Jefferson Parish, and Jacobs was prepared to answer and defend against

both charges. As this court previously held in an eerily similar case referenced in the State's

response: "Under state law, the [2005] amendment of the charge to second degree murder was

properly conveyed to [petitioner] and his counsel in open court and any error in placing a written

notation on the face of the defunct [1996] indictment did not change that fact under state law," and

did not create a constitutional defect.[380]

For these reasons, even under *de novo* considerations, Jacobs has failed to establish that he

was tried under an unconstitutional indictment. Furthermore, to the extent relevant, Jacobs has

presented no Supreme Court precedent, and the court can find none, that would support his

contention that the improvidently written amendment on the wrong indictment read aloud before

trial resulted in the denial of his constitutional rights or rendered his conviction unconstitutional.

Jacobs also has not established that the state courts' denial of relief on this claim was based on

unreasonable finding of fact or an unreasonable application of Supreme Court law. He is not

entitled to relief on this claim under either standard of review.

### 6.   Claim 6:   Voluntariness of Jacobs' Inculpatory Statement

Jacobs alleges that the state courts erred in failing to suppress his custodial statement taken

on November 3, 1996, because he did not knowingly, intelligently, or voluntarily waive his rights.

ECF No. 25, ¶VI, at 52. Jacobs claims that his youth, intellectual function, and the coercive and

misleading tactics of the investigator rendered his statement involuntary under *Schneckloth v.*

*Bustamonte*, 412 U.S. 218, 226 (1973). *Id.* He asserts that the use of the statement violated his

Fifth, Sixth, and Fourteenth Amendment rights. *Id.*

---

[380] *Seals v. Vannoy*, No. 16-9892, ECF No. 23, at 94 (E.D. La. 7/7/17), *R&R adopted,* ECF Nos. 25, 26 (E.D. La. 5/6/19) (Vance, J.), *aff'd*, 1 F.4th 362 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 844 (2022).

Jacobs contends that his statement was involuntary because Lt. Snow-Pernia induced him to confess in exchange for her promise to tell the judge that she believed he was innocent. *Id.* He also claims that his father encouraged him to give a statement because he too was induced by misleading promises and representations by Lt. Snow-Pernia that she would speak to the judge about her belief that Jacobs was innocent and failed to disclose that she had a warrant for Jacobs arrest for first degree murder. *Id.* at 53-54. He also asserts that the family did not understand that Lt. Snow-Pernia was a detective or that bringing him in was turning him over to police. *Id.* They instead they thought she was someone who was sent to look out for Jacobs' best interest. *Id.* at 54.

Jacobs further contends that his statement was taken in the middle of the night when he was only 16 years old and intellectually impaired. *Id.* at 54-55. His waiver consisted of simple "yes" answers without any indication that he understood what he was doing. *Id.* at 55. Jacobs argues that, based on a 1998 psychiatric evaluation by his medical expert, it was likely that his emotional, mental, and physical situation prevented him from understanding a waiver of his rights or the implications of his statements to police. *Id.* at 55-57. Jacobs also alleges that Lt. Snow-Pernia simply accepted his "yes" answers and signature on the form as a waiver without assuring he understood his rights. *Id.* at 57.

The State asserts that the Louisiana courts weighed the credibility of Lt. Snow-Pernia in rejecting Jacobs' arguments, and the testimony of his father, uncles, and medical expert in denying the motion to suppress. ECF No. 38, ¶6, at 57. The State also notes that Jacobs' father did not testify at his second suppression hearing and that his father's testimony at the second trial did not corroborate the account given by his uncles. *Id.* The State further discounts the information and testimony of Jacobs' medical advisor, whose testimony was rejected by the State courts in favor

of the legal tests pronounced by the Supreme Court.   *Id*. at 57-58.   The State contends that Jacobs

has failed to establish any error by the state courts or that the courts unreasonably determined facts

or unreasonably applied clearly established Supreme Court law in denying relief.

        a.    <u>State Court Rulings</u>

After remand of his capital case for new trial, on December 6, 2002, Jacobs filed a renewed

motion to suppress his recorded statement made to Lt. Snow-Pernia so he could introduce

testimony from a medical expert on his susceptibility to duress.[381]   The State argued to the state

trial court that the same motion had been denied twice before the first trial after the court heard

testimony, including that of Jacobs' father, which was found not credible.[382]   After argument from

counsel in a January 27, 2003, hearing, the state trial court orally denied the motion without stated

reasons.[383]   The Louisiana Fifth Circuit granted Jacobs' subsequent writ application finding it

error for the state trial court to deny the motion without an evidentiary hearing.[384]   The Louisiana

Supreme Court denied the State's related writ application on October 10, 2003.[385]

On remand, the state trial court held hearings on the motion to suppress the statement on

August 26, 2004 and May 12 and 13, 2005.[386]   The state trial court denied the motion to suppress

his statement on July 21, 2005, without stated reasons.[387]   On October 19, 2005, the Louisiana

---

[381] St. R. Vol. 43 of 109 at 11050, Hearing Tr., 1/27/03.

[382] *Id*. at 11051-53.

[383] *Id*. at 11053.

[384] St. R. Vol. 67 of 109 at 16319, 5th Cir. Writ Application, 03-K-389, 3/27/03; St. R. Vol. 68 of 109 at 16688, 5th Cir. Order, 03-K-389, 3/27/03.

[385] *State v. Jacobs*, 2003-1540 (La. 10/10/03); 855 So. 2d 331; St. R. Vol. 92 of 109 at 22951, La. Sup. Ct. Writ Application, 03-KK-1542, 6/2/03.

[386] St. R. Vol. 7 of 109 at 1686, Min. Entry, 8/26/04; St. R. Vol. 44 of 109 at 11341, Hearing Tr., 8/26/04; St. R. Vol. 12 of 109 at 2849, Min. Entry, 5/12/05; St. R. Vol. 45 of 109 at 11533, Hearing Tr., 5/12/05;St. R. Vol. 13 of 109 at 3386, Min. Entry, 5/13/05; St. R. Vol. 46 of 109 at 11653, Hearing Tr., 5/13/05.

[387] St. R. Vol. 16 of 109 at 4058, Min. Entry, 7/21/05; *id*. at 4059, Trial Court Order, 7/21/05.  While the record contains a transcript dated July 21, 2005, the transcript only includes argument related to defendant's motion to continue trial also heard that day.   St. R. Vol. 46 of 109 at 11811, Hearing Tr., 7/21/05.

Fifth Circuit denied Jacobs' writ application finding no error in the state trial court's ruling.[388]

The court held that the evidence supporting a finding that Jacobs' statement was knowing and

voluntary.[389]    The Louisiana Supreme Court denied Jacobs' writ application without stated

reasons on June 16, 2006.[390]

Without objections, a transcript and the taped statement were admitted at trial, and the tape

was played for the jury.    The Louisiana Fifth Circuit later summarized Jacobs' statement to Lt.

Snow-Pernia as follows:

> According to defendant, Bridgewater held guns on the victims while defendant
> loaded the van with the victims' belongings.    Defendant claimed that he was going
> to disable the telephones in the house, but that Bridgewater told him the victims
> would not be able to call the police when they left.    When Bridgewater told him to
> go to the van, defendant realized what Bridgewater was going to do.    He heard the
> first two gunshots when he entered the garage.    Defendant said he was armed with
> a .32 and that Bridgewater had a .357.[391]

The court also noted in its reasoned opinion other aspects of Jacobs' statement:

> Defendant took the position in his statement to Lieutenant Pernia that robbery was
> his sole motive, that he was not the shooter in the Beaugh murders, and that he had
> no knowledge beforehand that Bridgewater planned to kill the victims.
> Essentially, defendant placed himself in a secondary role in the Beaugh murders.

Jacobs challenged the admissibility of the statement on direct appeal claiming that the statement

was induced by coercion, misrepresentations, and promises.    The Louisiana Fifth Circuit noted

that it had thoroughly addressed the voluntariness of the statement in its pretrial ruling and declined

to review the issue as "law of the case."[392]    In the alternative, the court reviewed the testimony

from the suppression hearing establishing that Jacobs was read his rights and that both he and his

---

[388] St. R. Vol. 20 of 109 at 5139-40, 5th Cir. Order, 05-K-820, 10/19/05.

[389] *Id.* at 5140.

[390] *State v. Jacobs*, 2006-1727 (La. 6/16/06); 929 So. 2d 1275; St. R. Vol. 24 of 109 at 6228, La. Sup. Ct. Order, 2005-KK-2406, 6/16/06.

[391] *Jacobs*, 67 So. 3d at 570; St. R. Vol. 54 of 109 at 13445, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[392] *Id.* at 582 (citing *State v. Johnson*, 06-859 (La. App. 5 Cir. 4/11/07); 957 So. 2d 833, 840); St. R. Vol. 54 of 109 at 13465.

father signed waivers of rights acknowledging that they both understood the rights Jacobs was

waiving.[393]   The court acknowledged the respect due to the trial court's credibility determinations

of the witnesses' testimony at the suppression hearings.[394]   The court further resolved that, if it

were to address the merits, it would find no abuse of the trial court's discretion in finding Lt. Snow-

Pernia's testimony more credible than Jacobs' father, his uncles, and his medical expert.[395]   This

was the last reasoned opinion on the admissibility of Jacobs' inculpatory statement.

### b.   Review of Jacobs' Claim Under the AEDPA

The admissibility of a confession or inculpatory statement at this constitutional level is a

mixed question of law and fact.[396]   A federal court on habeas review must respect the state court's

determination of voluntariness, knowingness, and intelligence, as long as it was not "contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court."[397]   In doing so, a federal habeas court must afford a presumption of correctness

to state courts' findings of fact, if they are fairly supported by the record.[398]   Similarly, the habeas

standards of review oblige federal judges to respect credibility determinations made by the state

court trier of fact.[399]

### i.   Applicable Supreme Court Law

A statement made by a person in custody is inadmissible at trial unless the person was

informed that he has the right to have an attorney present during questioning, that he has the right

---

[393] *Id.* at 582-83; St. R. Vol. 54 of 109 at 13466.

[394] *Id.* at 584; St. R. Vol. 54 of 109 at 13469.

[395] *Id.* at 584; St. R. Vol. 54 of 109 at 13469 (*citing State v. Keller*, 09-403 (La. App. 5 Cir. 12/29/09); 30 So. 3d 919, 930).

[396] *Miller v. Fenton*, 474 U.S. 104, 112 (1985) (citation omitted); *ShisInday v. Quarterman*, 511 F.3d 514, 522 (5th Cir. 2007).

[397] 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998) (citations omitted).

[398] *Miller*, 474 U.S. at 117.

[399] *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir.1993) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992).

to remain silent, and that anything that he says may be used as evidence against him.[400]   These rights may be waived as long as the waiver is knowingly, intelligently, and voluntarily made.[401]

The Supreme Court recognizes two inquiries to determine whether an accused has intelligently, voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination.[402]   First, waiver of the right must be voluntary and not the product of intimidation, coercion, or deception.[403]   Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived.[404]   In making these inquiries, due process requires the court to consider the "totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation."[405]

In assessing a voluntary, knowing, and intelligent waiver, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'"[406]   Although mental state or condition of the defendant may be a significant factor in the voluntariness determination, "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'"[407]   In *Connelly*, the Supreme Court explained that the sole concern of the Fifth Amendment and *Miranda* is government coercion, and not the "moral and psychological pressures to confess emanating from sources other than official coercion."[408]   Thus, the Court determined

---

[400] *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).
[401] *Id*. at 444; *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citation omitted).
[402] *Moran*, 475 U.S. at 421 (citations omitted); *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002) (same).
[403] *Moran*, 475 U.S. at 421.
[404] *Id*.
[405] *Schneckloth*, 412 U.S. at 226 (collecting cases); *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citations omitted).
[406] *Soffar*, 300 F.3d at 596 (quoting *Moran*, 475 U.S. at 424).
[407] *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (quoting *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)).
[408] *Connelly*, 479 U.S. at 169 (citing *Oregon v. Elstad*, 470 U.S. 298, 305 (1985)).

that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."[409]

Therefore, a finding of coercive police conduct is a necessary prerequisite to a conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession.[410]    Determining whether an officer engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are entitled to deference when supported by the record.[411]    However, if the underlying facts as determined by the state courts indicate the presence of some coercive tactic, the impact that factor had on the voluntariness of the confession is a matter for independent federal determination and is ultimately a legal determination.[412]

### ii.   Deferential Review

In Jacobs' case, the state courts concluded that no coercive tactics or promises were used by Lt. Snow-Pernia, and the record does not demonstrate any evidence to the contrary.[413]    Instead, the state courts found her testimony credible, and testimony from Jacobs' father and uncles not credible, in concluding that Jacobs was not tricked or coerced into waiving his rights or giving the inculpatory statement.   The Louisiana Fifth Circuit noted that Jacobs and his father spoke

---

[409] *Id*. at 164.

[410] *Carter*, 131 F.3d at 462 (citing *Connelly*, 479 U.S. at 163-67).

[411] *See Miller*, 474 U.S. at 112 (subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness) (citations omitted).

[412] *Miller*, 474 U.S. at 117; *ShisInday*, 511 F.3d at 522.   Nevertheless, even if the confession is deemed involuntary under these standards, the Supreme Court has held that the admission of an involuntary confession is a trial error subject to harmless error analysis.  *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991).   Under these standards, to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).   Therefore, even if this court were to find that petitioner's Fifth Amendment rights were violated, the Court would also have to consider whether use of the confession at trial was harmless in determining the verdict.  *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022); *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003).

[413] *Jacobs*, 67 So. 3d at 584; St. R. Vol. 54 of 109 at 13469, 5th Cir. Opinion, 07-KA-887, 5/24/11; *see also* St. R. Vol. 20 of 109 at 5139-40, 5th Cir. Order, 05-K-820, 10/19/05 (denying Jacobs' pretrial writ application on the statement suppression issue).

privately before signing the waivers, and they even asked Lt. Snow-Pernia to step out of the room so they could speak privately during questioning.[414]    The court also concluded that Jacobs' father's statement conflicted at times with that of his uncles, noting as well that Jacobs' father also signed a waiver declaring his understanding of Jacobs' rights and the waiver of those rights.[415]    The court simply was not swayed by the families' declared misapprehensions about Lt. Snow-Pernia and her role in the investigation.    The state courts also concluded that Jacobs' demonstrated his understanding of his rights and the voluntariness of the waiver by his distinct acknowledgment (by his initials) of each right read to him and waived.[416]

Jacobs asks this Court to reassess the state courts' credibility determinations and independently ignore, discount, and reassess Lt. Snow-Pernia's testimony, which the Supreme Court has declared a federal habeas court cannot do.[417]    Jacobs has offered no clear and convincing evidence to discount the factual and credibility findings made by the state courts in denying him relief and those findings are supported by the record and testimony.

Similarly, Jacobs beseeches this court to lend credence to the testimony of his medical expert who opined in 1998 that, in 1996, Jacobs probably did not understand the implications of his waiver at age 16 with limited educational and cognitive ability.[418]    The state courts, however, discounted those findings in concluding that Jacobs' waiver was in fact voluntarily, knowingly, and intelligently made.    This conclusion by the state courts is squarely in line with the precedent cited above.    That is, a defendant's mental state alone, without a showing of police coercion, is not enough to challenge the constitutionality of the waiver of his rights before giving an

---

[414] *Jacobs*, 67 So. 3d at 582 & n.39; St. R. Vol. 54 of 109 at 13465, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[415] *Id.* at 582; St. R. Vol. 54 of 109 at 13465.

[416] *Id.* at 582-83; St. R. Vol. 54 of 109 at 13465-66.

[417] *Miller*, 474 U.S. at 117.

[418] *Jacobs*, 67 So. 3d at 583-84; St. R. Vol. 54 of 109 at 13468-69, 5th Cir. Opinion, 07-KA-887, 5/24/11.

inculpatory statement.[419]   The Supreme Court is clear that *Miranda* protects a defendant from governmental coercion, not those outside of that influence.[420]   Thus, absent a showing of coercive tactics by Lt. Snow-Pernia, the state court's determination that Jacobs' waiver was voluntary, knowing, and intelligent, was not unreasonable.[421]

This Court has considered, as did the state courts, the totality of the circumstances surrounding Jacobs' statement to Lt. Snow-Pernia, and those circumstances do not reflect an unconstitutional influence, coercion, or promise to taint Jacobs' understanding and voluntary waiver of his constitutional rights.   The record contains no clear and convincing evidence to support Jacobs' contention that the state courts erred in concluding that his statement was not coerced by promises or trickery and was instead voluntarily, knowingly, and intelligently made. Even considering the possibility that Jacobs was mentally unstable at the time of his waiver and confession, he still fails to establish any impropriety or undue influence by Lt. Snow-Pernia or any other officer that would have rendered his confession involuntary.   The record lacks any persuasive evidence that Jacobs' statement was not "the product of a free and deliberate choice" but rather the result of overly coercive police tactics.[422]

Jacobs ultimately fails to present "clear and convincing evidence" to rebut the presumption that the findings of the state courts are correct and due deference here.   He also has failed to establish that the denial of relief on this claim was contrary to or an unreasonable application of Supreme Court precedent.   He is not entitled to federal habeas relief.

---

[419] *Carter*, 131 F.3d at 462 (citing *Connelly*, 479 U.S. at 169); *James v. Cain*, 468 F. App'x 401, 403 (5th Cir. 2012).
[420] *Connelly*, 479 U.S. at 164-65, 169-70.
[421] *James*, 468 F. App'x at 403.
[422] *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (citation omitted).

### 7.    Claim 7:    Exclusion of Prosecutor's Arguments from Co-Defendant's Trial

Jacobs alleges that his due process rights were violated when he was denied the opportunity to present relevant evidence through the prosecutor's arguments from co-defendant Bridgewater's trial.   ECF No. 25, ¶VII, at 58.   Jacobs points to various arguments made by the prosecutor during Bridgewater's trial alleging that the prosecutor focused on Bridgewater as the shooter and leader at the robbery/murder scene.   *Id*. at 59-60.   He argues that this is relevant to the issue of Jacobs' specific intent to kill the Beaughs, especially since the prosecution eventually conceded at Jacobs' 2020 resentencing that they could not prove Jacobs was the shooter.   *Id*. at 60.

Jacobs presents his claim under two theories, just as he did in his direct appeal: first, the arguments were admissible non-hearsay statements by a party-opponent; and second, the inconsistent arguments at Bridgewater's trial violated due process.   *Id*.   Jacobs acknowledges that the second claim was addressed in pretrial writ applications and alternatively, the Louisiana Fifth Circuit denied the claim on the merits on direct appeal finding that the prosecutor's arguments were not inconsistent and did not violate due process.   He contends, nevertheless, that the Louisiana Fifth Circuit did not squarely address the admissibility as statements of party-opponents under LA. CODE EVID. ANN. art. 801(D)(3).

Jacobs next argues that the statements from the Bridgewater trial should have been admitted as inconsistent prosecutorial theories, citing the concurring opinions in *Bradshaw v. Stumpf*, 545 U.S. 175, 191 (2005), while conceding that the majority court did not discuss the merits of such a claim.   *Id*. at 61 & n.38 (citing *Bradshaw*, 545 U.S. at 187).   Jacobs contends that the State's inconsistent theories and statements prevented him from preparing to defend the State's charges against him.   He further argues in his reply to the State's opposition that the

Bridgewater transcript, which was not provided to the court, shows that the State targeted Bridgewater and not Jacobs as the murderer.    ECF No. 42, ¶VII, at 43-44.

The State asserts in its opposition that Jacobs fails to present a cognizable federal habeas claim in his challenge to the failure to admit the statements under Louisiana evidence rules.    ECF No. 38, ¶7, at 58-59.    The State further contends that Jacobs' reliance on the concurring commentary in *Bradshaw* fails to invoke "clearly established" Supreme Court law for purposes of AEDPA review.    *Id*. at 59.    The State also asserts that, as the Louisiana Fifth Circuit twice held as a matter of fact, the State did not take inconsistent positions in the prosecutions of Jacobs and Bridgewater and thus, did not violate due process or Jacobs' right to a fair trial.    *Id*. at 60-61 (citing *Jacobs*, 67 So. 3d at 577-78 & 579).    The State also notes that the arguments of counsel are not evidence and the snippets relied on by Jacobs are taken out of context.    *Id*. at 62.

The State openly conceded in both trials that the real shooter may never be known and that it was possible that Jacobs did not fire the fatal shots, but was still guilty of second degree murder either because of his specific intent or under the felony murder doctrine, or both.    *Id*.    In rebutting Jacobs' claims of inconsistency, the State asserts that, when the prosecutors in Bridgewater's trial commented that, "Lawrence Jacobs didn't commit a murder," this was referencing the fact that Jacobs did not murder the victim, Kenneth Stage, in a prior armed robbery, and was not a comment on his role in the Beaugh murders.    As support for this conclusion, the State references its pretrial motion hearing arguments in the state trial court.    In that hearing, specific pages of the Bridgewater transcripts were referenced for the court and placed in context to establish that the prosecutors acknowledged in Bridgewater's trial that "[w]e can't tell you who was on the other end of the gun," just as they did in Jacobs' trial.    *Id*. at 63 (quoting St. R. Vol. 47 of 109 at 11922-23, Hearing Tr., 8/24/05).

a.    State Court Rulings

On January 27, 2003, the state trial court heard oral argument on Jacobs' motion seeking to use at his trial the State's statements or arguments from Bridgewater's trial that indicated Bridgewater was the leader and murderer in the Beaugh murders.[423]   On June 5, 2003, the trial court issued a Judgment denying the motion without stated reasons.[424]

The Louisiana Fifth Circuit denied Jacobs' writ application on August 19, 2003, citing state law for the proposition that attorney arguments are not evidence.[425]   The court also stated that, should the *evidence* at Jacobs' trial be inconsistent with evidence at Bridgewater's trial, the point could be brought to the trial court's attention to allow presentation of the prior inconsistent evidence, if admissible.[426]   The Louisiana Supreme Court also denied Jacobs writ application without stated reasons on November 24, 2004.[427]

Jacobs later renewed this motion to introduce the prosecutor's prior statements (and added a second motion to preclude the State from presenting inconsistent theories) relying on statements in a concurring opinion in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005), which intimated that inconsistent prosecutorial theories could be brought to the factfinders attention.[428]   The state trial

---

[423] St. R. Vol. 43 of 109 at 11152-56, Hearing Tr., 1/27/03.
[424] St. R. Vol. 4 of 109 at 910, Trial Court Judgment, 6/5/03.
[425] St. R. Vol. 5 of 109 at 1083, 5th Cir. Order, 03-K-845, 8/19/03.
[426] *Id.*
[427] *State v. Jacobs*, 888 So. 2d 218 (La. 11/24/04); St. R. Vol. 95 of 109 at 23787, La. Sup. Ct. Order, 2003-KK-2614, 11/24/04.
[428] *Bradshaw*, 545 U.S. at 191–92.   In *Bradshaw*, Stumpf pled guilty to capital murder, although he claimed his co-defendant had actually been the shooter. The prosecution argued at the penalty phase that either Stumpf had shot the victim himself or that it didn't matter who the shooter was under Ohio's felony murder statute, which punished aiders and abettors equally as long as the aiding and abetting was done with the specific intent to cause death. Stumpf was ultimately sentenced to death. The State then tried Stumpf's co-defendant, and based on new evidence obtained after Stumpf's plea, attempted to show the co-defendant was the shooter. Based on what he alleged was prosecutorial inconsistency between his sentencing proceeding and the trial of his co-defendant, Stumpf attempted to withdraw his guilty plea. The Supreme Court rejected the argument, finding no major inconsistencies in the State's arguments. The *Bradshaw* court opined that the prosecutor's use of allegedly inconsistent theories may have a more direct effect on the defendant's sentence. But the high court concluded the issue was premature since the court of appeals had not fully considered the issue.

court held hearings on the renewed motion on August 8 and 24, 2005.[429]   The motion seeking to admit the prior statements was denied without stated reasons at the first hearing.[430]   The second motion seeking to prohibit use of inconsistent theories was denied without stated reasons at the second hearing.[431]

The Louisiana Fifth Circuit denied Jacobs subsequent writ application, finding in part that the State's theories in Bridgewater's trial were not inconsistent with Jacobs' current prosecution, Jacobs failed to show any unfairness under Louisiana law, and his claim otherwise was premature.[432]   The Louisiana Supreme Court denied Jacobs writ application without stated reasons on May 5, 2006.[433]

When Jacobs asserted this claim on direct appeal as a denial of due process, the Louisiana Fifth Circuit declined to reconsider the claim already decided as "law of the case" from pretrial review.[434]   Alternatively, the court stated that, should it reach the merits, it would find no error in the state trial court's ruling.   The court held that the prosecutors did not present inconsistent theories at the co-defendant's trial because they argued at both trials that either or both of them could have been the shooter.[435]   Instead, the court found that the State "attributed equal responsibility for the shootings to both offenders under the law of principals."[436]   The court

---

[429] St. R. Vol. 16 of 109 at 4105, Min. Entry, 8/8/05; St. R. Vol. 46 of 109 at 11834, Hearing Tr., 8/8/05; St. R. Vol. 20 of 109 at 5138, Min. Entry, 8/24/05; St. R. Vol. 47 of 109 at 11913, Hearing Tr., 8/24/05.
[430] St. R. Vol. 46 of 109 at 11846, Hearing Tr., 8/8/05.
[431] St. R. Vol. 47 of 109 at 11923, Hearing Tr., 8/24/05.
[432] St. R. Vol. 20 of 109 at 5165-67, 5th Cir. Order, 05-K-1015, 2/9/06.
[433] *State v. Jacobs*, 2006-0506 (La. 5/5/06); 927 So. 2d 321; St. R. Vol. 105 of 109 at 26899, La. Sup. Ct. Order, 2006-KK-0506, 5/5/06; *id.* at 26900, La. Sup. Ct. Writ Application, 06-KK-506, 3/6/06.
[434] *Jacobs*, 67 So. 3d at 578; St. R. Vol. 54 of 109 at 13458, 5th Cir. Opinion, 07-KA-887, 5/24/11.
[435] *Id.* at 579; St. R. Vol. 54 of 109 at 13459-60.
[436] *Id.* at 579; St. R. Vol. 54 of 109 at 13460.

concluded that Jacobs failed to show he was deprived of a fair trial by the exclusion of the prosecutors' prior statements.[437]

These were the last reasons for denial of relief provided by a state court. The Louisiana Supreme Court denied Jacobs' subsequent writ application without stated reasons on February 10, 2012.[438]

b.   Review of Evidentiary Rulings Not Cognizable on Federal Habeas

Federal habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.[439]   States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee.[440]   Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings under state law, as Jacobs asks the court to do now. This court's review is triggered only if he can show the state court proceedings violated due process in a manner to render his criminal proceeding fundamentally unfair.[441]   In this case, the state courts found that Jacobs failed to establish this type of due process violation and he has not shown a basis to overcome the denial of relief under the AEDPA standards of review.

---

[437] *Id.* at 579; St. R. Vol. 54 of 109 at 13460.

[438] *Jacobs*, 80 So. 3d at 468; St. R. Vol. 26 of 109 at 6967, La. Sup. Ct. Order, 2011-K-1753, 2/10/12.

[439] *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010) (citations omitted); *Lampton v. Cain*, 268 F. App'x 367, 368 (5th Cir. 2008) (citing *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992)).

[440] *Riggins v. Nevada*, 504 U.S. 127, 147 (1992) (Thomas, J., dissenting) (citing *Estelle*, 502 U.S. at 67-68); *Burgett v. Texas*, 389 U.S. 109 (1967).

[441] *Riggins*, 504 U.S. at 147 (quoting *Lisenba v. People of St. of Cal.*, 314 U.S. 219, 228 (1941)); see *Swarthout*, 562 U.S. at 219 (federal habeas review does not lie for errors of or in applying state law) (citations omitted); *see also Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are not cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right) (citation omitted).

c.    Review of Jacobs' Due Process Claim Under the AEDPA

The question of due process in a criminal proceeding presents a mixed question of law and fact.[442]   Under the applicable standard of review, this court must determine if the state court's last reasoned decision was contrary to or involved an unreasonable application of Supreme Court precedent.    Jacobs, however, has not presented Supreme Court *precedent* to demonstrate contradiction or unreasonable application by the state courts.

Jacobs cites, as he did in the state courts, *Bradshaw*, 545 U.S. at 175, claiming that the Court therein "reaffirmed defendants' right to admit [evidence of] inconsistent theories used by the government."   ECF No. 25 ¶VII, at 57.   That is not an accurate assessment of the case's holding.   In fact, in *Bradshaw*, the Court made clear that it was "express[ing] *no* opinion" on the due process claim arising from the prosecutor's alleged inconsistent theories.[443]   The Court also did not have before it, or rule on, any claim related to presentation of evidence of alleged inconsistent theories.

Instead, the *Bradshaw* Court considered the defendant's claim that his guilty plea was involuntary because the State offered inconsistent theories with regard to his specific intent to commit murder when it asserted that his co-defendant was the shooter.[444]   The Court found, however, that (much like Louisiana's law on principals), Ohio law considered aiders and abetters equally at fault under the aggravated murder statute.[445]   Further, despite his persistent claim that he did not shoot the victim, the defendant Stumpf could still be found guilty (and admit by guilty plea his specific intent) under the statute, especially in light of the facts which showed that both

---

[442] *Nobles*, 127 F.3d at 416-17; *Stumpf v. Robinson*, 722 F.3d 739, 748 (6th Cir. 2013); *see also Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997) (whether evidence is admitted or excluded contrary to the Due Process Clause also is a mixed question of law and fact) (citation omitted).
[443] *Bradshaw*, 545 U.S. at 187 (emphasis added).
[444] *Id*. at 183-84.
[445] *Id*. at 184 (citations omitted).

men went to the victim's home together with guns to commit the robbery.[446]   While the Court did not find an inconsistency in the prosecution's presentation, it recognized that Stumpf's actual role in the murder would be more relevant in his capital sentencing phase, a question that was not before it.[447]

Jacobs does not rely on the majority holding in *Bradshaw* to support his claim that he should have been allowed to present evidence of inconsistent theories at his trial.   Instead, Jacobs refers to one of the concurring opinions in which Justices Thomas and Scalia opined that the "proof beyond a reasonable doubt" standard was sufficient to dissuade prosecutors from presenting inconsistent theories because the accused "will bring the conflict [in theories] to the factfinder's attention."[448]   It is this latter thought upon which Jacobs relies to argue that he had a court-created right to bring evidence of the alleged inconsistent theories to his jury.

The Supreme Court has made clear that the AEDPA's reference to "clearly established federal law" means "only the holdings, as opposed to the dicta, of this Court's decisions."[449]   Dicta are "statements made by a court that are 'unnecessary to the decision in the case, and therefore[,] not precedential.'"[450]   Similarly, the Fifth Circuit has defined dicta as statements that "could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it."[451] These are the perfect descriptors for the comment from the *Bradshaw* concurrence relied on by Jacobs.   The Court did not declare any such right to present evidence nor was that a part of its

---

[446] *Id*.
[447] *Id*. at 187.
[448] *Id*. at 190.
[449] *White*, 572 U.S. at 419 (citations omitted).
[450] *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n*, 357 F.3d 1294, 1307 (Fed. Cir. 2004) (quoting BLACK'S LAW DICTIONARY 1100 (7th ed. 1999)).
[451] *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (quoting *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004) (internal citation and quotation omitted)).

holding in *Bradshaw*.   The Court did not have before it a claim related to presentation of inconsistent theory evidence, nor did it discuss or reach a holding on such a topic.

What is compelling in the *Bradshaw* opinion is that the Court chose to "express *no* opinion" as to whether inconsistent theories raised a due process concern.[452]   The concurrence also made clear that "[t]his Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories."[453]   In addition and most relevant in Jacobs' case, the Court concluded in *Bradshaw* that there was no inconsistency in the prosecution's arguments because, under the aider and abetter (or principals) doctrine, either Stumpf or his co-defendant could be found guilty of the murders.[454]   This is consistent with the conclusions reached by the Louisiana courts in Jacobs' case.

Thus, Jacobs has not demonstrated that the state court's denial of relief on his claim that he was denied the ability to present inconsistent theories evidence violated due process was contrary to or an unreasonable application of federal law.   He is not entitled to federal habeas relief on this claim.

### 8.   Claim 8:   Sufficiency of the Evidence

Jacobs alleges that it was unreasonable for the jury to find him guilty of second degree murder when he gave a statement that he tried to leave the burglary when he realized his co-defendant would shoot the victims and that his gun was inoperable and unloaded.   ECF No. 25, ¶VIII, at 61-62; ECF No. 42, ¶VIII, at 41.   He also references the fact that the State's ballistics expert testified that the bullets recovered from the murder scene could not have been fired from the type of gun Jacobs claimed he had at the scene.   *Id.*

---

[452] *Bradshaw*, 545 U.S. at 187.
[453] *Id.*
[454] *Id.* at 184.

The State argues in opposition that, as determined by the Louisiana Fifth Circuit, even the alleged inoperable gun qualified under Louisiana law as a dangerous weapon to prove the crimes. ECF No. 38, ¶8, at 64.   Furthermore, with or without a weapon, Jacobs was still guilty of armed robbery and second degree murder through Louisiana's felony-murder doctrine.   *Id.*   The State further argues that the Louisiana Fifth Circuit rejected Jacobs' claim that he was only guilty of lesser offenses and held that, as a willing principal to the crime, a rational trier of fact could find that he was guilty of second degree murder.   *Id.* at 65.

    a.  <u>State Court Rulings</u>

Jacobs asserted this claim on direct appeal to the Louisiana Fifth Circuit.   The court denied relief, finding that, under Louisiana law, "it was immaterial whether defendant's gun was unloaded or inoperable,"[455] or even if he were unarmed, because the evidence, including his inculpatory statement, demonstrated that Jacobs "knowingly participated in the execution of the [aggravated burglary], during which two people were killed."[456]   The court noted that, even if Jacobs only intended to rob the victims, he engaged in the risk that the robbery would escalate.[457]   The court also found that the evidence showed that, even if he did not pull the trigger, he was complicit in Bridgewater's actions when he failed to prevent the escalated crime and allegedly fled to the van rather than aid the victims.[458]   The court concluded that there was sufficient evidence to prove his guilt as a principal to the crime of second degree murder.[459]   This was the last reasoned state court

---

[455] *Jacobs*, 67 So. 3d at 552; St. R. Vol. 54 of 109 at 13413, 5th Cir. Opinion, 5/24/11.
[456] *Id.* at 554; St. R. Vol. 54 of 109 at 13416.
[457] *Id.* at 553; St. R. Vol. 54 of 109 at 13414.
[458] *Id.* at 553-54; St. R. Vol. 54 of 109 at 13415-16.
[459] *Id.* at 554; St. R. Vol. 54 of 109 at 13416.

opinion on the issue because the Louisiana Supreme Court denied Jacobs' subsequent writ application without stated reasons.[460]

      b.   <u>Applicable Supreme Court Law</u>

A court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[461] Thus, to determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.[462] This review is also limited to only to what was presented to the fact-finder at trial.[463]

However, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.[464] A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.[465] All credibility choices and conflicting inferences must be resolved in favor of the verdict.[466] In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"[467]

---

[460] *Wilson*, 138 S. Ct. at 1192; *Jacobs*, 80 So. 3d at 468; St. R. Vol. 26 of 109 at 6967, La. Sup. Ct. Order, 2011-K-1753, 2/10/12.

[461] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011) (same); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (same).

[462] *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n.16).

[463] *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324).

[464] *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

[465] *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander*, 775 F.2d at 598.

[466] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted).

[467] *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.[468]   Therefore, this federal habeas court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

        c.    <u>Discussion</u>

Jacobs was charged with and convicted of the second degree murder of the two victims, Nelson and Della Beaugh.   In keeping with the guidance provided by the United States Supreme Court in *Jackson*, the Louisiana Fifth Circuit addressed the elements of second degree murder defined in LA. STAT. ANN. § 14:30.1(A)(1), (2).   In relevant part, this statute defines second degree murder as the killing of a human being when the offender has a specific intent to kill or is engaged in the perpetration or attempted perpetration of certain felonies, including aggravated burglary and armed robbery, even though he has no intent to kill or to inflict great bodily harm. Under Louisiana law, specific criminal intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."[469]   Specific intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.[470]

The State presented evidence at trial that Jacobs and Bridgewater were engaged in the commission of an armed robbery[471] or aggravated burglary[472] which ultimately led to the murders.

---

[468] *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995) (citation omitted).

[469] LA. STAT. ANN. § 14:10(1).

[470] *State v. Tate*, 2001-1658 (La. 5/20/2003); 851 So. 2d 921, 930 (citing *State v. Brooks*, 505 So .2d 714, 717 (La. 1987); *State v. Holmes*, 388 So. 2d 722 (La. 1980)); *State v. Cummings*, 1999-3000 (La. App. 1 Cir. 2000); 771 So. 2d 874, 876 (citation omitted).

[471] Armed robbery in Louisiana is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." LA. STAT. ANN. § 14:64(A); *State v. Clark*, 52,256 (La. App. 2 Cir. 11/14/18); 259 So. 3d 1178, 1183.

[472] Aggravated burglary is defined in relevant part as "the unauthorized entering of any inhabited dwelling . . . with the intent to commit a felony or any theft therein" while the offender is armed with a dangerous weapon.   LA. STAT. ANN. § 14:60.   Theft itself is "the misappropriation or taking of anything of value which belongs to another" with "intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking."   LA. STAT. ANN. § 14:67.

Jacobs admitted, and the evidence showed, that he was involved in the intrusion into the victim's home and the taking of their property.   Jacobs' challenge here (like in his direct appeal) is based on his self-serving insistence that he participated in an "unarmed burglary" because his gun allegedly was inoperable and unloaded, which would reduce the charges below that required to support a second degree murder conviction.   ECF No. 25, ¶VIII, at 62.   This, however, is not the legal test for one to be armed with a dangerous weapon during the commission of these crimes in Louisiana.

As referenced by the Louisiana Fifth Circuit, "a person who commits a robbery by pointing an unloaded and unworkable pistol at the victim can be adjudged guilty of armed robbery."[473]   The Louisiana courts regularly hold that, as long as the perpetrator's alleged "unworkable or unloaded gun" was used in such a way as to excite fear and apprehension in the victims, it is considered a dangerous weapon under the law.[474]   Jacobs has not shown that the state courts' conclusion that he was carrying a dangerous weapon was factually or legally erroneous or otherwise unreasonable.

Furthermore, as the Louisiana Fifth Circuit considered, under Louisiana's felony-murder prong, for Jacobs to be guilty of second degree murder, the State must also have established that he was a principal to the armed robbery or attempted armed robbery which led to the murders.[475] The term principal is defined in Louisiana as, "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the

---

[473] *State v. Levi*, 259 La. 591, 598-99, 250 So. 2d 751, 754 (1971).

[474] *State v. Lewis*, 39,263 (La. App. 2 Cir. 1/26/05); 892 So. 2d 702, 706 ("[t]he jurisprudence has also long held that unworkable or unloaded guns can constitute dangerous weapons when used in a manner likely to produce death or great bodily harm.") (quoting *State v. Woods*, 494 So. 2d 1258, 1261 (La. App. 2 Cir. 9/24/86)); *see also State ex rel. W.H.*, 2010-1418 (La. App. 4 Cir. 4/6/11); 62 So. 3d 839, 845 (concluding that a toy or inoperable gun would satisfy the dangerous weapon element); *State v. Washington*, 00-1312 (La. App. 5 Cir. 5/16/01); 788 So. 2d 596, 601.

[475] *State v. Alexander*, --- So. 3d ---, No. 2021-641, 2022 WL 1766352, at *2 (La. App. 3rd Cir. 5/25/22).

crime, are principals."[476]    As recognized by the Louisiana Fifth Circuit, Louisiana courts have

long held that a principal involved in an armed robbery or aggravated burglary is responsible for

any killing that results from the perpetration of that crime.[477]    The Louisiana Supreme Court has

further explained principal liability for felonies that escalate into murders:

> [A] general principle of accessorial liability [is] that when two or more persons
> embark on a concerted course of action, each person becomes responsible for not
> only his own acts but also for the acts of the other, including "'deviations from the
> common plan which are the foreseeable consequences of carrying out the plan.'"
> *State v. Smith*, 98-2078, p. 7 (La. 10/29/99), 748 So. 2d 1139, 1143 (quoting 2
> Wayne R. LaFave and Austin Scott, *Substantive Criminal Law*, § 7.5, p. 212
> (1986)).    The rule has particular application in cases of felony murder.    Thus, a
> simple burglary may turn into an aggravated burglary and then escalate further into
> a second degree felony murder well beyond the original plan of the defendant or
> his accomplice who then unexpectedly kills during commission of the underlying
> felony offense.    *See, e.g.*, *State v. McFarland*, 07-0026, p. 10 (La. App. 5th Cir.
> 5/29/07), 960 So. 2d 1142, 1148 (affirming conviction for second degree felony
> murder in the course of an aggravated burglary because "the fact that the defendant
> claimed he did not know [the co-perpetrator] was armed does not absolve him from
> responsibility, as the risk that the unauthorized entry of an inhabited dwelling may
> escalate into violence and death is a foreseeable consequence of burglary which
> every party to the offense must accept no matter what he or she actually intended.")
> (citing *Smith*, 98-2078 at 7, 748 So. 2d at 1143).[478]

In *State v. McFarland*, Louisiana Fifth Circuit held that a person may be a principal to the offense

even though he did not personally have possession of the weapon used in the commission of the

crime.[479]    Thus, under the law of principals, a defendant who knows of his accomplice's intent

may be convicted of murder even if he did not personally hold a gun or fire the fatal shot.[480]

Jacobs argues that he could not have been a principal to the murder (or continued principal

to the robbery/burglary) because the "chain of events" of the underlying robbery ended when he

---

[476] LA. STAT. ANN. § 14:24.

[477] *State v. Johnson*, 365 So. 2d 1267, 1272 (La. 1978).

[478] *State v. Smith*, 2007-2028 (La. 10/20/09); 23 So. 3d 291, 296-97.

[479] *McFarland*, 960 So. 2d at 1142 (citations omitted); *State v. Williams*, 52,519 (La. App. 2 Cir. 2/27/19); 266 So. 3d 485, 489 (same).

[480] *Williams* at 489.

fled to the van once he realized that Bridgewater planned to kill the victims.    ECF No. 42, ¶VIII, at 41 (citing *State v. Anthony*, 427 So. 2d 1155 (La. 1983)).    Jacobs isolates one small phrase from the Louisiana Supreme Court's lengthy discussion in *Anthony* addressing the killing of a person after the commission of an aggravated burglary as part of the "res gestae" of the underlying felony.[481]    Unlike Jacobs' case, in *Anthony*, there was only one defendant who committed the aggravated burglary and the murder as he fled the scene. [482]    Nevertheless, the Louisiana Supreme Court examined holdings from a number of jurisdictions which held that, "within the context of the felony murder rule, the term 'res gestae' has been used to signify that the felony and the homicide form part of a continuous transaction; that the homicide be incidental to the felony; and that there be no break in the chain of events between the felony and the homicide."[483]    Before concluding that Anthony's situation was in fact continuing, the court summarized its review by finding "[w]hen 'res gestae' has been used to determine whether the homicide was committed in the perpetration of a certain felony, it seems to have been a short way of saying that the underlying felony and the homicide form part of one continuous transaction which occurred without a significant break in the chain of events."[484]    It is this "chain of events" language on which Jacobs apparently relies.

The Louisiana Fifth Circuit did not find that Jacobs had a significant break from the robbery/burglary when he claims to have fled to the van.    The court concluded, based on its review of the trial evidence, that it was reasonable for the jury to conclude that Jacobs was guilty as a

---

[481] *Id.* (citing *Anthony*, 427 So. 2d at 1158).

[482] In *Anthony*, the Louisiana Supreme Court addressed the appeal from denial of a motion to quash a first degree murder indictment.    *Anthony*, 427 So. 2d at 1158.    The defendant was accused of committing a simple burglary, and after leaving the apartment, snatching a woman's purse two blocks away.    *Id.*    As part of his flight, he returned to the first apartment to obtain a knife to aid in his continued flight.    On exiting the apartment, he was spotted by an elderly neighbor, and he slashed her throat, killing her.    *Id.* at 1156-57.

[483] *Id.* (citations omitted).

[484] *Id.*

principal because he entered the home armed with a dangerous weapon, he took property from the victims (which he kept even after they were shot), and when he discovered Bridgewater's intent to kill the victims of their crime, he chose not to intervene or in any way aid the victims or prevent or report the murders.[485]

Significantly, the evidence also showed that the van to which Jacobs' fled belonged to the victims.[486]   It is the same van where he admittedly loaded the victim's property during the robbery/burglary.[487]   It also was the final piece of property taken from the Beaughs *after* they were shot when Bridgewater and Jacobs drove off with their haul.[488]   This also stands as trial evidence tending to show that there was no significant break between the robbery/burglary chain of events and the murders.   For these reasons, Jacobs has not shown that the conclusions reached by the Louisiana Fifth Circuit regarding the continuing occurrence were factually or legally erroneous or unreasonable.

As required by *Jackson*, the state appellate court viewed the trial evidence in the light most favorable to the verdict and determined that the State presented sufficient evidence for a reasonable jury to conclude that Jacobs was guilty of second degree murder.   Jacobs has not shown that the state courts' factual and legal conclusions are not entitled to deference or that the denial of relief was contrary to or unreasonable application of federal law.   Jacobs is not entitled to relief on this claim.

---

[485] *Jacobs*, 67 So. 3d at 553-554; St. R. Vol. 54 of 109 at 13413-16, 5th Cir. Opinion, 5/24/11.
[486] *Id.* at 553; St. R. Vol. 54 of 109 at 13415.
[487] *Id.* at 552; St. R. Vol. 54 of 109 at 13413-14.
[488] *Id.* at 553; St. R. Vol. 54 of 109 at 13415.

### 9.  Claim 10:   Other State Court Evidentiary Rulings[489]

Jacobs combines three distinct evidentiary issues into one argument under a broad contention that the state trial court excluded relevant evidence and admitted irrelevant and prejudicial evidence at trial in violation of his due process rights.   ECF No. 25, ¶X(A), at 64; *id.*, ¶X(B), at 66; *id.*, ¶X(C), at 67.   His specific arguments regarding each of the three rulings challenged are addressed below.

The State argues that each of Jacobs' challenges to the evidentiary rulings of the state courts are not cognizable on federal habeas review.   ECF No. 38, ¶10, at 67-68.   The State further argues that Jacobs failed to establish a cognizable due process violation arising from the evidentiary rulings or that the denial of relief was contrary to Supreme Court law.   *Id.* at 68-69.   The State's specific arguments with regard to each of the evidentiary rulings are also set forth below.

### a.    No Federal Habeas Review of State Court Evidentiary Rulings

As was explained above, federal courts do not review the admissibility of evidence under state law as Jacobs repeatedly asks this court to do.[490]   State courts are free to follow their own rules and procedures to address evidentiary questions that do not implicate a constitutional guarantee.[491]   Jacobs generally claims that the state trial court's evidentiary rulings rendered his trial unfair in violation of his due process rights.   However, "fleeting references" to the United States Constitution or the phrase "due process" are not sufficient to change the nature of a state law evidentiary claim into a cognizable federal issue.[492]

---

[489]  Jacobs' claim that counsel was ineffective for failing to object to the autopsy photographs is addressed later in this report.

[490]  *Jones*, 600 F.3d at 536 (citations omitted); *Lampton*, 268 F. App'x at 368 (same).

[491]  *Riggins*, 504 U.S. at 147 (quoting *Lisenba*, 314 U.S. at 236-37); see *Swarthout*, 562 U.S. at 219 (citing *Estelle*, 502 U.S. at 67) (federal habeas review does not lie for errors of or in applying state law).

[492]  *See Norris v. Davis*, 826 F.3d 821, 831 (5th Cir. 2016) (citing *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001)) (a habeas petitioner does not present a federal claim by merely using the phrase "due process of law" buried in state law argument).

Jacobs uses the phrase "due process" in his petition and invokes its protections perhaps as an attempt to shield himself from the unfavorable state court evidentiary rulings or to garner review in this federal habeas court. However, as will be discussed below, Jacobs has not established a constitutional violation arising from the state court evidentiary rulings. Thus, Jacobs' challenge to these evidentiary rulings is not cognizable on federal habeas review and otherwise fails to overcome scrutiny under AEDPA standards.

b.    Admissibility of Dr. Sautter's Testimony

Jacobs asserts that the state trial court prevented him from presenting a complete defense through the testimony of Fred Sautter, Ph.D., a forensic psychologist who conducted a "mental evaluation" on Bridgewater during his penalty phase.[493] ECF No. 25, ¶X(A), at 64-65; ECF No. 42, ¶X, at 42. He argues that Dr. Sautter would have testified that, based on his observations, Bridgewater suffered from mental disorders which made him impulsive with a dominating personality. ECF No. 25, ¶X(A), at 65. Jacobs claims this was relevant to the question of his own specific intent in that he could have used the testimony to show that he was afraid of the more dominant influences of Bridgewater. *Id.* He further argues that, without Dr. Sautter's testimony, he was denied a "meaningful opportunity to present a complete defense" regarding Bridgewater's violent nature and the potential for Bridgewater to adversely influence another teenager. ECF No. 42, ¶X, at 42-43.

Citing the last reasoned opinion of the Louisiana Fifth Circuit, the State asserts that Dr. Sautter's testimony about Bridgewater's mental health issues was properly excluded as irrelevant and impermissible. ECF No. 38, ¶10(a), at 67-68. The State argues that Jacobs has not

---

[493] *See also* St. R. Vol. 52 of 109 at 13025, Trial Tr., 8/24/06 (counsel indicating Dr. Sautter's evaluation occurred during Bridgewater's penalty phase).

established that his trial was fundamentally unfair in violation of his due process rights since the Supreme Court has never held that the exclusion of expert testimony violates the Constitution.[494]

### i. State court rulings

During trial, on August 24, 2006, Jacobs' counsel advised the state trial court that the final defense witness would be Dr. Sautter, who would testify that Bridgewater suffered from a mood disorder and had a controlling personality such that he would have been the dominant actor and prone to violence in high-stress situations and likely was the shooter.[495]  The State opposed the testimony as hearsay, irrelevant, and unreliable.[496]  The State argued that the jury did not have to decide whether Bridgewater was the shooter and that Dr. Sautter could not testify about anything relevant to Jacobs or his mental state at that time.[497]  Before closing trial on August 25, 2006, the state trial court received additional argument from counsel, including a summary of Dr. Sautter's expected testimony and argument regarding the Fifth Amendment limitation on the State's ability to cross-examine Dr. Sautter about Jacobs.[498]  The state trial court denied the motion without elaboration.[499]  The defense did not proffer Dr. Sautter's testimony or his report.[500]

In the last reasoned state court opinion, the Louisiana Fifth Circuit recognized a defendant's right to present a defense, but only a limited right to present all trustworthy and probative evidence.[501]  The court reviewed the meaning of relevance and admissibility under state

---

[494] *Id*. at 68-69 (citing *Taylor v. Cain*, No. 12-03057, 2013 WL 5718543, at 6 (W.D. La. 2013) (Order adopting R&R)).

[495] *Jacobs*, 67 So. 3d at 579-80; St. R. Vol. 52 of 109 at 13021-24 , 13030-31, 13032-33, 13034, Trial Tr., 8/24/06.

[496] *Jacobs*, 67 So. 3d at 580.

[497] *Id.* at 580; St. R. Vol. 52 of 109 at 13025-27, 13033, 13034-35, Trial Tr., 8/24/06.

[498] St. R. Vol. 52 of 109 at 13049-60, 13061-63.

[499] *Id*. at 13063.

[500] *Jacobs*, 67 So. 3d at 580 & n.37; St. R. Vol. 54 of 109 at 13461, 5th Cir. Opinion, 07-KA-887, 5/24/11.  Defense counsel also advised the state trial court that Dr. Sautter's report would not be introduced at trial.  St. R. Vol. 52 of 109 at 13025, 13028-29, 13031, 13033, Trial Tr., 8/24/06.

[501] *Jacobs*, 67 So. 3d at 580 (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), and state case law); St. R. Vol. 54 of 109 at 13461, 5th Cir. Opinion, 07-KA-887, 5/24/11.

law noting that, under Louisiana law, expert testimony is admissible only if that specialized knowledge will assist the trier of fact and will "not express an opinion as to the guilt or innocence of the accused."[502]    The Louisiana Fifth Circuit held that Dr. Sautter's testimony would have been irrelevant as to Jacobs' state of mind because he never examined Jacobs.[503]    The testimony also would have been inadmissible because it went to Jacobs' guilt or innocence.[504]    The court therefore found no error in the trial's decision to exclude his testimony.[505]

### ii. Applicable Supreme Court Law

As recognized by the Louisiana Fifth Circuit, the United States Supreme Court has held that, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"[506]    The rights of an accused have been adequately protected if he has been given the opportunity to present his defense, to cross-examine witnesses, and to present testimony.[507]

The Constitution, however, does not guarantee the right to introduce *all* evidence the defendant deems relevant, because the right to present even relevant evidence is not "absolute."[508] The Supreme Court has "[o]nly rarely [. . .] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."[509]    Instead, the state

---

[502] *Jacobs*, 67 So. 3d at 580 (citations omitted); St. R. Vol. 54 of 109 at 13462, 5th Cir. Opinion, 07-KA-887, 5/24/11.
[503] *Id.* at 580-81; St. R. Vol. 54 of 109 at 13462.
[504] *Id.* at 581; St. R. Vol. 54 of 109 at 13462-63.
[505] *Id.* at 581; St. R. Vol. 54 of 109 at 13463.
[506] *Crane*, 476 U.S. at 690 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citations omitted)); *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).
[507] *See Washington v. Texas*, 388 U.S. 14, 20 (1967); *Pointer v. Texas*, 380 U.S. 400 (1965); *In re Oliver*, 333 U.S. 257, 273-74 & n.31 (1948) (collecting cases).
[508] *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).
[509] *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citations omitted).

courts are given broad latitude to establish rules excluding evidence from criminal trials.[510]   "[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted."[511]   "The Constitution leaves to the judges who make decisions 'wide latitude' to exclude evidence that is . . . 'only marginally relevant' . . ."[512]   The Court has held that this principle specifically applies to "rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged."[513]

Thus, the right to present a complete defense is not "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."[514] "For the exclusion of evidence to violate this right by denying the accused a fundamentally fair trial, the evidence must be 'material,' in the constitutional sense that it 'creates a reasonable doubt that did not otherwise exist . . .'"[515]   "'If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.'   But 'if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.'"[516]

---

[510] *Holmes*, 547 U.S. at 324; *Jackson*, 569 U.S. at 509.

[511] *Crane*, 476 U.S. at 690 (citing *Chambers,* 410 U.S. at 302).

[512] *Id.* at 689-90 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

[513] *Holmes*, 574 U.S. at 327 (citing 41 C.J.S., Homicide § 216, pp. 56–58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am. Jur. 2d, Homicide § 286, pp. 136–138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged . . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted))).

[514] *Taylor*, 484 U.S. at 410.

[515] *Jimenez v. Walker*, 458 F.3d 130, 146 (2nd Cir. 2006) (quoting *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)).

[516] *Id.* at 146-47 (quoting *Agurs*, 427 U.S. at 112-13).

The Louisiana courts found that Dr. Sautter's testimony was not relevant or admissible because he did not examine Jacobs to assess his vulnerability and instead addressed Bridgewater's perceived domineering personality flaws.   In addition, any expert opinion he could offer related to Jacobs would have been conjecture on the ultimate issue of guilt, because that is why the defense sought to offer him (*i.e.*, to raise doubt as to specific intent), and that is prohibited by Louisiana evidentiary rules.[517]

The Supreme Court has made clear that evidentiary rulings will rarely act to violate a defendant's due process rights unless that ruling excludes evidence that could create a reasonable doubt as to guilt.[518]   Jacobs argues that the exclusion of Dr. Sautter's testimony denied him the right to present a complete defense.   Jacobs' purported defense bolstered by Dr. Sautter's testimony would have been some combination of assertions that Bridgewater was controlling and prone to violence and Bridgewater may have been intimidating to a less assertive teen (assumingly like Jacobs).   Jacobs suggests that this constitutes evidence that Bridgewater was the "third party" who committed the crime since Dr. Sautter felt Bridgewater was easily agitated in stressful situations.

Assuming Dr. Sautter would have testified as counsel outlined, Jacobs has not established relevance or that Louisiana recognizes a defense of coercion by a co-defendant as justification for murder.   In fact, Louisiana law specifically excludes murder from the justification statute.[519] "While coercion, or threats by [defendant's] accomplice (which we will accept as true for purpose of this argument), may in large part have affected [defendant's] motivation, . . . this factor has no

---

[517] *See* LA. CODE EVID. ANN. art. 704.   "Under La. C. E. art. 704, a trial judge may admit expert testimony which 'embraces an ultimate issue to be decided by the trier of fact,' but the expert witness is not permitted to testify to the ultimate issue of a defendant's guilt." *State v. Bickham*, No. 2017-1308, (La. App. 1 Cir. 2/20/18); 2018 WL 947095, at 10 (citation omitted).

[518] *Jackson*, 569 U.S. at 509.

[519] *State v. Glass*, 455 So. 2d 659, 663-64 (La. 1984).

bearing on whether defendant had specific intent" to commit murder.[520]    Contrary to Jacobs'

claims, under Louisiana law, coercion or intimidation by Bridgewater was not relevant or available

to justify or challenge the specific intent prong.[521]    Jacobs, therefore, has not demonstrated that

the state courts' evidentiary rulings denied him the opportunity to present a legitimate defense to

his responsibility for the felony murders.

Furthermore, the United States Supreme Court has not considered, much less held, that a

defendant has a constitutional right to present expert testimony from a psychologist, who never

evaluated the defendant, to opine before the jury that a codefendant had a dominating and

aggressive personality that may have motivated or intimidated the defendant to participate in an

armed robbery and acquiesce in a murder, or that the denial of that opportunity violates due

process.    As the state courts concluded, Jacobs has not established that Dr. Sautter's testimony

would have created any reasonable doubt about Jacobs' guilt because Dr. Sautter never evaluated

Jacobs and could only speak to Bridgewater's propensities.

In other words, as the state courts resolved, Jacobs has not shown that Dr. Sautter's

testimony was material as required by the Supreme Court[522] or relevant to resolution of any

question of fact before the jury or a recognized defense in Louisiana.    Jacobs has not shown that

the state courts' denial of relief on this issue violated his due process rights or was contrary to, or

an unreasonable application of, Supreme Court law.

        c.      <u>Admissibility of Walzer's Testimony</u>

Jacobs also claims that the testimony of the State's ballistics expert, Louise Walzer, was

irrelevant, prejudicial, and contrary to the second prong of *Daubert v. Merrell Dow Pharms.*, 509

---

[520] *Id*. at 663 (parenthetical in original).
[521] *Id*. at 664 (citing LA. STAT. ANN. § 14:18(6) and *State v. Capaci*, 179 La. 462, 154 So. 419 (La. 1934)) (Threats are not a justification defense for murder).
[522] *Agurs*, 427 U.S. at 112-13.

U.S. 579, 592 (1993), in that it did not "assist the trier of fact to understand or determine a fact in issue."  ECF No. 25, ¶X(B), at 66.  He contends that her testimony was that she could not tell the number of guns or shooters from the ballistics evidence and the bullets could have been from the same gun.  Despite this, he argues, the State attempted to show that Jacobs could have been a shooter although it argued in Bridgewater's trial that Bridgewater was the shooter.  *Id*.  He concludes with no further argument that the admission of this evidence violated due process under the Fifth, Sixth, and Fourteenth Amendments.  *Id*. at 62-63.

The State contends that, in addition to the fact that the *Daubert* challenge is not cognizable on federal habeas review, ECF No. 38, ¶10(b), at 69-70, Jacobs failed to show that the admission of her testimony violated his constitutional rights as it was not a "'crucial, highly significant factor in the defendant's conviction.'"[523]

    i.   State Court Rulings

On January 27, 2003, the state trial court denied without a hearing Jacobs' *Daubert* motion seeking to limit or exclude the testimony of the State's ballistic expert, Louis Walzer.[524]  The Louisiana Fifth Circuit granted Jacobs' writ application in part to remand the motion for hearing on the reliability of scientific evidence but denied the application in part declining to address the admissibility of Walzer's testimony until after the hearing.[525]  At the hearing held May 12, 2005, the state trial court heard Walzer's testimony regarding her background, training, licensing, experience, scientific methodology, and conclusions reached with regard to the bullets recovered

---

[523] ECF No. 38, ¶10(b) at 70 (quoting *Logan v. Cain*, No. 11-2381, 2013 WL 3293659, at *18 (E.D. La. June 28, 2013) (Order adopting R&R)) (internal citations omitted).

[524] *Jacobs*, 67 So. 3d at 584; St. R. Vol. 54 of 109 at 13469, 5th Cir. Opinion, 07-KA-887, 5/24/11; St. R. Vol. 43 of 109 at 11135-40, Hearing Tr., 1/27/03; St. R. Vol. 35 of 109 at 9198, *Daubert* Motion, 12/6/02.

[525] *Jacobs*, 67 So. 3d at 584; St. R. Vol. 54 of 109 at 13469, 5th Cir. Opinion, 07-KA-887, 5/24/11; St. R. Vol. 36 of 109 at 9474, 5th Cir. Order, 03-K-395, 5/6/03.

from the crime scene.[526]   Following the testimony and argument, the state trial court denied the motion agreeing with the State that Walzer's methodology was reliable and the evidence admissible and relevant.[527]

Jacobs filed a writ application seeking exclusion of her testimony as conjecture, irrelevant, and prejudicial to the extent she suggested that there may have been more than one gun involved in the murders.[528]   The Louisiana Fifth Circuit denied the writ application, finding no abuse of discretion in the trial court's determination that Walzer's testimony was relevant and reliable.[529] The Court also noted that Jacobs "does not challenge the qualifications of Ms. Walzer or her scientific method."[530]

Walzer testified at trial as an expert in firearms examination without cross-examination by the defense.[531]   On direct appeal, Jacobs challenged her testimony under the second prong of the *Daubert* test regarding reliability based on known or potential rate of error because her testimony about the possible use of multiple guns was conjecture.[532]

The Louisiana Fifth Circuit declined to consider the argument based on its prior rulings under the "law of the case" doctrine.[533]   In the alternative, the court found the claim meritless because the *Daubert* criteria was satisfied at the pretrial hearing in the state trial court.[534]

---

[526] *Jacobs*, 67 So. 3d at 584-85; St. R. Vol. 54 of 109 at 13470-71, 5th Cir. Opinion, 07-KA-887, 5/24/11; St. R. Vol. 45 of 109, 11551-70, Hearing Tr., 5/12/05.
[527] *Id.* at 585; St. R. Vol. 54 of 109 at 13471-72; St. R. Vol. 45 of 109, 11572.
[528] *Jacobs*, 67 So. 3d at 585; St. R. Vol. 54 of 109 at 13471.
[529] *Jacobs*, 67 So. 3d at 585-86; St. R. Vol. 54 of 109 at 13471-72; St. R. Vol. 13 of 109 at 3465, 5th Cir. Order, 05-K-563, 6/16/05.
[530] St. R. Vol. 13 of 109 at 3466.
[531] *Jacobs*, 67 So. 3d at 586; St. R. Vol. 54 of 109 at 13472-73, 5th Cir. Opinion, 07-KA-887, 5/24/11.
[532] *Id.* at 586; St. R. Vol. 54 of 109 at 13473.
[533] *Jacobs*, 67 So. 3d at 586.
[534] *Id.* at 587.

ii.  Discussion

Jacobs' only express challenge to Walzer's testimony in this court is that her trial testimony was "irrelevant, prejudicial, and failed the second prong of the *Daubert* test" and admission of her testimony was unconstitutional.[535]    A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling resulted in violation of a specific federal constitutional right or is so egregious it renders the petitioner's trial fundamentally unfair.[536] Jacobs' conclusory invocation of and unexplained reference to the "Fifth, Sixth, and Fourteenth Amendments"[537] does not turn his *Daubert* evidentiary challenge into a cognizable federal habeas claim.[538]

In fact, "*Daubert* is not premised on the [federal] Constitution."[539]    Rather, as federal courts have discussed,

> *Daubert* is an exegesis of Rule 702 of the Federal Rules of Civil Procedure and governs the admission of expert evidence in federal trials only. *Daubert* does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution.[540]

---

[535] ECF No. 25, ¶X(B), at 66-67.   Jacobs also refers the court in a footnote to his state evidentiary and *Daubert* arguments made to the state courts in pretrial writ applications to the Louisiana Fifth Circuit, No. 05-K-563 and the Louisiana Supreme Court, No. 05-KK-1896.   *Id.* at 66 n.39.   These pretrial writ applications were not Jacobs' final presentation of his claims to the state courts nor were the pretrial decisions the last state court ruling owed deference on federal habeas review.   Jacobs also seems to conflate this claim with his claim that the state used inconsistent theories at Bridgewater's trial and his trial, an issue already addressed herein.

[536] *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 179-83 (1986)); *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (citation omitted); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005) (citing *Wilkerson*, 233 F.3d at 890); *Bigby*, 402 F.3d at 563 (citation omitted).

[537] ECF No. 62, ¶X(b), at 66.

[538] *Norris*, 826 F.3d at 831; *Schmidt v. Hubert*, No. 05-2168, 2008 WL 4491467, at *13 (W.D. La. Oct. 6, 2008) ("*Daubert* did not set a constitutional standard for the admission of testimony; the case simply examined the standard for the admissibility of scientific evidence in federal trials conducted in federal courts under the Federal Rules of Evidence. . . Thus, a claimed violation of *Daubert* does not equal a constitutional violation.") (collecting cases).

[539] *Black v. Thomas*, No. 04-567, 2006 WL 2547405, at *7 n.1 (M.D. Ala. Aug. 31, 2006); accord *Williams v. Withrow*, 328 F. Supp. 2d 735, 745 (E.D. Mich. 2004).

[540] *Kinder v. Bowersox*, 272 F.3d 532, 545 n.9 (8th Cir. 2001); *see also Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998).

Thus, *Daubert* has no direct application to federal habeas corpus claims and cannot serve as a basis for the granting of habeas relief.[541]

Of course, the Louisiana Supreme Court has found *Daubert* persuasive and, as a matter of state law, has similarly adopted "*Daubert*'s requirement that expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La.C.E. art. 702."[542]   The Louisiana Supreme Court adopted "the *Daubert* court's 'observations'" as a guide in determining the "threshold level of reliability."[543]   Nevertheless, in following or even applying *Daubert*, Louisiana courts are ultimately deciding whether the evidence in a particular case is admissible under LA. CODE EVID. ANN. art. 702.[544]

"[A] state cannot expand federal jurisdiction by deciding to copy a federal law.  If it incorporates federal law into state law and then gets the federal law wrong, it has made a mistake of state law, which cannot be a basis for federal habeas corpus."[545]   The state courts' decision regarding admissibility under Louisiana Code of Evidence article 702, as guided by *Daubert*, is a question of state law.[546]   State courts are the final arbiters of state law, and a federal habeas court does not sit to question the state courts' interpretation or application of its evidentiary rules.[547]

---

[541] *See Brown v. Watters*, 599 F.3d 602, 616 (7th Cir. 2010) (citation omitted); *Keller v. Larkins*, 251 F.3d 408, 419 (3rd Cir. 2001); *Craig v. Cain*, No. 08-3486, 2009 WL 117010, at *9 (E.D. La. Jan. 14, 2009) (citations omitted); *Stogner v. Cain*, No. 05-4317, 2008 WL 269078, at *13 (E.D. La. Jan. 30, 2008) (same); *Payne v. Bobby*, No. 05-050, 2006 WL 508784, at *23 (S.D. Ohio Feb. 27, 2006) (citing cases), *R&R adopted,* 2006 WL 2583380, at *1 (S.D. Ohio Sept. 6, 2006); *Hassinger v. Adams*, No. 05-01011, 2006 WL 294798, at *13 n.6 (N.D. Cal. Feb. 7, 2006), *aff'd*, 243 F. App'x 286 (9th Cir. 2007).

[542] *State v. Foret*, 628 So. 2d 1116, 1123 (La. 1993).

[543] *Id*.

[544] *Bella v. Cain*, No. 12-2323, 2015 WL 1311216, at *7 (E.D. La. Mar. 23, 2015).

[545] *Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999) (citations omitted).

[546] *See Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) ("In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law.") (citation omitted); *Bella*, 2015 WL 1311216, at *7 (same).

[547] *Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law.   When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions are state law."); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state's interpretation of its own law in a federal habeas corpus proceeding.   We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.").

State law determinations by the state courts simply are not reviewable in a federal habeas corpus proceeding.[548]

Furthermore, *Daubert* is clear that critiques of the substance of an expert's testimony and their conclusions go to the *weight* of the testimony, not its *admissibility*.[549]   Once expert testimony is admitted under state law, it is for the jury to resolve the credibility and the reliability of the expert's testimony, and it is not the role of a federal habeas court to reassess witness credibility.[550]

For these reasons, Jacobs has failed to state a cognizable federal claim or due process concern arising from the state courts' evidentiary rulings and admission of Walzer's trial testimony under *Daubert*.   The state courts' evidentiary rulings, even those guided by *Daubert*, were state evidentiary rulings not subject to federal habeas review.   His conclusory claim also failed to establish that he suffered a due process violation or unfair trial as a result of the state courts' evidentiary rulings or that the state courts' evidentiary rulings contravened Supreme Court law under the AEDPA standards set forth above.   He is not entitled to federal habeas relief on this claim.

d.    Admissibility of the Autopsy Photographs

Jacobs further argues that the autopsy pictures, depicting rods placed through the wounds to follow the bullet paths, were substantially more prejudicial than probative.   ECF No. 25, ¶X(C), at 67.   He also argues that the state court admitted the pictures on the condition that the State show

---

[548] *See Swarthout*, 562 U.S. at 219 (". . . federal habeas corpus relief does not lie for errors of state law.") (citation omitted); *see also Little*, 162 F.3d at 862 ("In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law."); *Bella*, 2015 WL 1311216, at *7.

[549] *See United States v. Valencia*, 600 F.3d 389, 428 (5th Cir. 2010).

[550] *Accord Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012) (collecting cases), *R&R adopted by* 2012 WL 2565025, at *1 (E.D. La. July 2, 2012); *Picou v. Cain*, No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

the relevance of the pictures at trial, and the State failed to do so.  *Id.* at 68.  Jacobs does not specifically assert a constitutional violation arising from this evidentiary ruling.

The State's opposition relies on the last reasoned opinion of the Louisiana Fifth Circuit which held that the State did not mislead the state trial court regarding use of the photographs to demonstrate the position of the shooter relative to the victims.  ECF No. 38, ¶10(c), at 71, 72.  The state appellate court also concluded that probative value of the outweighed any prejudicial effect arising from the "gruesome" nature of the photographs.  *Id.*  The State argues that the photographs also were not a "crucial, highly significant factor in the defendant's conviction.[551]

### i.  State Court Rulings

As summarized by the Louisiana Fifth Circuit, the alleged "gruesome" autopsy photographs at issue were addressed by the state trial court during the pretrial hearings held on December 6, 2002, April 4, 2006, and July 10, 2006.[552]  The defense argued at the hearing that the photographs were gruesome and irrelevant, did not reflect the crime that occurred, and had no probative value.[553]  The State argued that the photographs were important to show the course and track of the bullets and how the victims were killed possibly by at least two shooters.  The state trial court found that the four rod photographs, two of Nelson and two of Della, among other autopsy photographs, were admissible.

Jacobs sought review of the order, including admissibility of three of the four rod photographs, omitting one of the photographs of Della.[554]  The Louisiana Fifth Circuit denied the writ application on August 22, 2006, finding no abuse of the trial court's discretion at the time in

---

[551] ECF No. 38, ¶10(c) at 73 (quoting *Logan*, 2013 WL 32936559, at 18).

[552] *Jacobs*, 67 So. 3d at 566 n.32; St. R. Vol. 54 of 109 at 13437, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[553] *Jacobs*, 67 So. 3d at 566 n.32

[554] *Id.*

allowing the photographs to be admitted.[555]   The Louisiana Supreme Court denied Jacobs' related writ application without stated reasons on August 23, 2006.[556]

At trial, Dr. Garcia testified about the cause of death and the autopsy photographs were admitted during her testimony.[557]   She used two of the photographs to show how and at what angle the bullets passed through Della's body, referencing in one picture how the rod went through the entrance wound and out of the exit wound.[558]   She did not use the photographs of Nelson and instead pointed to her own body during her explanation of his bullet paths.[559]

On direct appeal, Jacobs argued that his trial was rendered unfair when the state trial court admitted the photographs, which suggested that the defendants had skewered the victims to death. He argued that the photographs were more prejudicial than probative and were not shown to be independently relevant as the State led the trial court to believe they would be.[560]   Instead, the photographs were prejudicial, of little probative value, and cumulative of the pathologists testimony.

After reviewing state evidentiary law on relevance and admissibility, the Louisiana Fifth Circuit first noted that Jacobs did not enter a specific objection to the photographs at trial, leaving the claim in procedural default.[561]   Alternatively, discussing the merits of the claim, the court found no error in the trial court's ruling admitting the photographs and that the State did not misrepresent the relevance of the photographs to demonstrate the position of a shooter and angle

---

[555] St. R. Vol. 24 of 109 at 6334-35, 5th Cir. Order, 06-K-559, 8/22/06.
[556] *State v. Jacobs*, 2006-2124 (La. 8/23/06); 936 So. 2d 808; St. R. Vol. 25 of 109 at 6394, La. Sup. Ct. Order, 2006-KK-2124, 8/23/06.
[557] *Jacobs*, 67 So. 3d at 566-67; St. R. Vol. 54 of 109 at 13437-38, 5th Cir. Opinion, 07-KA-887, 5/24/11.
[558] *Id.* at 566-67; St. R. Vol. 54 of 109 at 13438.
[559] *Id.* at 566; St. R. Vol. 54 of 109 at 13438.
[560] *Id.* at 566; St. R. Vol. 54 of 109 at 13437-39.
[561] *Id.* at 567; St. R. Vol. 54 of 109 at 13440.

of the bullet trajectory in relation to each victim.[562]   The court concluded that the probative value of the photographs outweighed any prejudicial effect of their gruesome nature, and there was no error by the state trial court.[563]

ii.   Discussion

Jacobs again challenges the propriety of the admissibility and relevance of evidence at his 2006 trial.   ECF No. 25, ¶X(C), at 67.   Jacobs claims that his "right to a fair trial, unencumbered by emotion" was violated by the State's reliance on photographs depicting rods placed by a morgue technician into the wound-paths through the victim's heads during the autopsy.   *Id.*   He asserts that the State used the photographs without meeting its burden of showing "a particularized relevance" that the pictures would show that there were at least two shooters and the course, scope, and angle of the shots.   *Id.* at 68.   He argues that the state courts also erred in finding that the pictures' probative value did not substantially outweigh any prejudicial effect.   *Id.* at 69.   He asserts that the photographs also had little probative value and were instead prejudicial where the jury could have been misled and confused by the "post-mortem mutilation" that was "demeaning to the victims."[564]   *Id.* at 68.

Jacobs fails to identify a constitutional violation in this counsel-filed petition arising from the state courts' evidentiary rulings on the admissibility of the autopsy photographs.   His mere conclusory reference to an "unfair trial" is not sufficient to turn his evidentiary challenges into constitutional issues, especially when he fails to present any argument other than challenges to the probative value of the photographs at issue.

---

[562] *Id.* at 567-68; St. R. Vol. 54 of 109 at 13440, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[563] *Id.* at 568; St. R. Vol. 54 of 109 at 13441.

[564] Jacobs again inappropriately refers the court to his arguments submitted in "all" of his state court pleadings rather than stating a federal claim.   ECF No. 25, n.40, at 67.   The state court's numerous pretrial proceedings were not Jacobs' final presentation of his claim to the state courts, nor were those rulings the last state court opinion owed deference on federal habeas review.

As previously explained, this federal habeas corpus review is limited to questions of constitutional dimension, and does not sit to review the admissibility of evidence under state law.[565] The court again declines Jacobs' invitation to do so.

He also has presented no argument, much less established, a basis for the court to consider that introduction of the photographs rendered his trial fundamentally unfair or that the state courts' finding of no prejudice at trial was contrary to or an unreasonable application of Supreme Court law. A state court's evidentiary ruling implicates due process "*only* for rulings 'of such a magnitude' or 'so egregious' that they 'render the trial fundamentally unfair.'"[566] The erroneous admission of prejudicial evidence will justify federal habeas relief *only* if the evidence was a "crucial, highly significant factor in the defendant's conviction."[567] Jacobs has not demonstrated that the state court's ruling was erroneous nor has he addressed any of the foregoing due process considerations in his petition.

Jacobs refer to the Supreme Court's *Holmes* opinion for the proposition that "'the Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'"[568] The Supreme Court in *Holmes* addressed a South Carolina evidentiary rule that the Court found to have arbitrarily precluded the defense from presenting exculpatory evidence of third party guilt if the prosecution had introduced forensic evidence of the defendant's guilt in violation of defendant's right to present a complete defense.[569] In general commentary, the Court noted its prior statement

---

[565] *Jones*, 600 F.3d at 536 (citations omitted); *Lampton*, 268 F. App'x at 368 (citing *Jernigan*, 980 F.2d at 298).

[566] *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011) (emphasis added) (citations omitted); *Payne*, 501 U.S. at 825; *Pemberton*, 991 F.2d at 1226 (state evidentiary ruling presents a cognizable federal habeas claim if the ruling results in a "denial of fundamental fairness.").

[567] *Wood*, 503 F.3d at 414 (quoting *Neal*, 141 F.3d at 214).

[568] ECF No. 25, ¶X(C), at 67 (quoting *Holmes*, 547 U.S. at 326-27 (other citations omitted)).

[569] *Holmes*, 547 U.S. at 330-31.

in *Crane*, 476 U.S. at 689-690, which was quoted in part by Jacobs in his petition.   The case otherwise has nothing to do with the admissibility of prejudicial evidence or any component of due process applicable to the state court's admission of the autopsy photographs in his case.   In fact, the quoted language from *Holmes* in context emphasizes the constitutional permissibility and deference given a trial court when considering whether to admit or exclude evidence.

Relevant to any federal habeas claim is not the evidentiary ruling, but the level of unfairness, if any, at his 2006 trial.   Dr. Susan Garcia was called first by the State to testify during its case in chief on August 23, 2006.[570]   During her direct testimony, she referred to some of the photographs taken at her direction by a crime scene technician during the autopsy at the morgue.[571] The pictures were admitted subject to defense counsel's previously lodged objections.[572]   She testified several times that Mr. Beaugh suffered three gunshot wounds, one through his right cheek, a lethal shot above his left ear, and one through his left shoulder, and Ms. Beaugh had a single fatal gunshot wound through her head.[573]   She also used one of the "rod" photographs while describing the trajectory of the fatal wound.[574]   She referred to the photograph as "graphic" or demonstrative, because the rod made it most "instructive" of the entrance and exit wounds.[575]   On cross-examination, Dr. Garcia testified that she could not tell whether the victims were standing or sitting or where the shooter was, but she could establish based on the entry and exit wounds

---

[570] St. R. Vol. 51 of 109 at 12818, Trial Tr., 8/23/06.   In a footnote, Jacobs represents that the State used "gruesome" autopsy pictures during rebuttal to counter the defense's assertion, apparently through questioning of the ballistics expert, that the trajectory of the bullets tended to show that the shooter was short in stature.   ECF No. 25, ¶X(C) & n.42, at 68.   This is a direct reference and citation to his first trial, "*Jacobs I*, R. 1572-76."   Jacobs' first trial and conviction are not at issue before this Court.   In his second trial, the only relevant trial here, the photographs were addressed during Dr. Garcia's direct testimony during the State's case in chief.

[571] St. R. Vol. 51 of 109 at 12820-22.

[572] *Id*. at 12822, 12825.

[573] *Id*. at 12823-24, 12826-28, 12829-30.

[574] *Id*. at 12830.

[575] *Id*.

"only in relation to where they were at the time of the discharge of the weapon."[576]   For example, she testified that "Ms. Beaugh was shot behind the left ear so it makes more logical sense that whoever discharged the weapon was behind her and to her left."[577]

Nothing in Dr. Garcia's testimony creates a suggestion that the jury would have been confused by the photographs or the rods in the photographs.   The testimony was very clear that the victims succumbed to gunshot wounds to the head.   There was no suggestion by Dr. Garcia that the rods played any role in their deaths.   On the other hand, the photographs were used to assist the jurors with understanding the paths of the bullets and for Dr. Garcia to explain which gunshot wounds were fatal.   The record does not support Jacobs' suggestion that the photographs were prejudicial or more prejudicial than probative.   The record for that reason supports the state courts' conclusions that the photographs were properly admitted.

Jacobs has not established an error by the state courts in admitting the photographs to have triggered due process concerns.   He also fails to establish a fundamental unfairness or due process violation at his trial as a result of the admission of the autopsy photographs.   He, therefore, has not established that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

### 10. Claim 11:   Denial of Proposed Jury Instructions

Jacobs alleges that the state trial court erred in denying his proposed instructions on leniency and his sentencing exposure for the lesser offense of manslaughter.   ECF No. 25, ¶XI, at 69.   He argues that the concept of "jury nullification" is a fundamental component of the right to

---

[576] *Id*. at 12832.
[577] *Id*.

a jury trial and the state trial court's refusal to charge the jury as proposed violated his constitutional rights.[578]   *Id.*

The State argues that the state trial court appropriately declined to instruct the jury as Jacobs requested because the court properly instructed the jury on the lesser included offenses and had no obligation to inform the jury of the sentence for manslaughter since it was not a mandatory sentence.   ECF No. 38, ¶11, a 73-74.   The State further argues that there is no federal constitutional right to have the jury instructed on nullification or the sentence for manslaughter. *Id.* at 74.

    a.   <u>State Court Rulings</u>

On the final day of trial, August 25, 2006, the state trial court addressed Jacobs' request for proposed jury charges, including numbers eight and nine at issue here.[579]   Proposed instruction number eight read:

> You may convict the defendant of the lesser offense, even though the evidence clearly and overwhelmingly supported a conviction of the charged crime.[580]

Proposed charge number nine read, in relevant part, as follows:

> In this case, if you convict the defendant of manslaughter, the court may sentence him to serve a term of imprisonment at hard labor for a period not to exceed 40 years.[581]

After hearing argument of counsel, the state trial court denied Jacobs' request for these proposed charges (two of nine submitted) to be read to the jury in part because the information encompassed in the charges was covered by the court's standard charge and otherwise, as to

---

[578] Jacobs again defers, without repeating, to his arguments made in a pretrial state court writ application to the state appellate court.   ECF No. 25, ¶XI, n.44, at 69.   The pretrial writ application was not Jacobs' last, complete presentation of this claim to the state courts, nor was that pretrial decision the last reasoned state court opinion owed deference on federal habeas review.

[579] St. R. Vol. 52 of 109 at 13041, 13047, Trial Tr., 8/25/06.

[580] St. R. Vol. 41 of 109 at 10712, Proposed Jury Instruction #8.

[581] *Id.* at 10713, Proposed Jury Instruction #9.

number nine, it was not a required charge.[582]   The Louisiana Fifth Circuit also denied his writ application on August 25, 2006, finding of no error.[583]

On direct appeal, Jacobs asserted a claim to the Louisiana Fifth Circuit challenging the denial of his request for these two proposed jury instructions as a violation of his Sixth Amendment right to a fair trial.[584]   The Louisiana Fifth Circuit provided the last reasoned decision on this issue. In addressing the merits of Jacobs' claim, the court cited state law providing that a state trial court "shall give a requested special jury charge 'if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent.   It need not be given if it is included in the general charge or in another special charge to be given.'"[585]   The court recognized that the failure to give a special instruction is "reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right."[586]   The Louisiana Fifth Circuit concluded that use of Jacobs' proposed instruction number eight "might have caused the jury to misunderstand or even disobey the law on responsive verdicts."[587]   The court further concluded that the trial court gave a proper instruction to the jury regarding a verdict for a lesser-included offense and explained to the jury the responsive verdicts. The court held that, because of this general instruction, there was no need for a special instruction.[588]

---

[582] St. R. Vol. 52 of 109 at 13041, 1043, 13047, 13048, Trial Tr., 8/25/06.
[583] St. R. Vol. 25 of 109 at 6459, 5th Cir. Order, 06-K-621, 8/25/06.
[584] *Jacobs*, 67 So. 3d at 573-74.   Contrary to Jacobs' suggestion, the state court recognized the federal grounds of his claim.
[585] *Id*. at 574 (citing LA. CODE CRIM. PROC. ANN. art. 807 and related case state law).
[586] *Id*. (citing *State v. Harris*, 01–2730, p. 46 (La. 1/19/05), 892 So. 2d 1238, 1261, *cert. denied*, 546 U.S. 848, 126 (2005).
[587] *Id*. at 575.
[588] *Id*.

With regard to Jacobs' ninth proposed jury charge, the court found that the state trial court had no duty to instruct the jury on the sentencing range because there is no mandatory sentence for manslaughter like there is for second degree murder.[589]

###### b.    Discussion

Generally, challenges to jury instructions in state criminal trials are matters of state law that do not present a cognizable federal habeas claim.[590]  A federal habeas court's inquiry focuses on whether the state trial court's failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process."[591]  The burden of proof is on the petitioner to show that an error resulting in a constitutional violation occurred.[592]

Jacobs essentially argues that he had a right for the jury to know that they could exercise a compromise or nullification verdict for a lesser offense even if the evidence was sufficient to prove the second degree murder.  The United States Supreme Court itself, however, has not squarely addressed jury nullification outside of the sentencing phase of a death penalty case.[593]  The Supreme Court also has not decreed any right for a state criminal defendant to have every sentencing range made known to the jury.

Jacobs has provided no Supreme Court decision to the contrary on these points to meet his burden under the AEDPA.  Thus, the denial of relief in the state courts with respect to the

---

[589] *Id*. at 575-76.

[590] *See Estelle*, 502 U.S. at 71-72 (collecting cases).

[591] *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)) (internal quotation omitted).

[592] *Cupp*, 414 U.S. at 146.

[593] *See Penry*, 532 U.S. at 787 & 797 (Jurors must be provided the opportunity to "fully consider [ ] the mitigating evidence as it [bears] on the broader question of [the defendant's] moral culpability," and "it is only when the jury is given a vehicle for expressing its reasoned moral response to [mitigating] evidence in rendering its sentencing decision . . . that [the court] can be sure that the jury has treated the defendant as a uniquely individual human being and has made a reliable determination that death is the appropriate sentence.") (citing *Penry v. Lynaugh*, 492 U.S. 302 (1989)).

proposed charges could not have been contrary to Supreme Court precedent under the AEDPA standards of review.

Further, Jacobs has failed to demonstrate any prejudice or unfairness in his trial in violation of due process as proscribed in *Estelle*.[594]  As the state appellate court recognized, the jury was instructed on the elements of each of the lesser included offenses applicable under Louisiana law. The jury was also made aware that the duty or decision regarding sentencing of the defendant was for the trial court and not the jury.  Jurors are presumed to follow the instructions given by a court.[595]  Jacobs concedes that these instructions were given to the jury at his trial.

Consistent with due process standards, the state appellate court considered the instructions given to the jury as a whole and the impact of the excluded proposed instructions, and found none. The court's findings are supported by the record.  In addition, this holistic consideration of the circumstances was not unreasonable and instead is guided by the Supreme Court's decision in *Estelle* and its progeny.[596]

For these reasons, Jacobs has not established a constitutional error or violation arising from the state trial court's decision to exclude proposed charges eight and nine.  He also has not demonstrated that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.  He is not entitled to federal habeas relief on this claim.

### 11. Claims 5, 9, and 10:  Ineffective Assistance of Counsel

Jacobs has asserted several incidents of alleged ineffective assistance by his trial counsel. As an alternative to his challenge to the validity of his indictment (claim 4 discussed above), Jacobs

---

[594] *See Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law") (citations omitted).

[595] *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

[596] *See Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 141) (the habeas court should consider the context of the instructions as a whole as well as the entire trial record).

claims that his counsel was ineffective for failing to challenge the State's use of an indictment that charged two counts of second degree murder instead of one.   ECF No. 25, ¶V, at 49.   He argues that it was deficient performance for counsel to have gone to trial without having obtained a copy of the amended indictment and for counsel to fail to recognize something "amiss" when the indictment was read at the start of trial.   *Id*. at 50; ECF No. 42, ¶V, at 37.   Jacobs also comments that both trial and appellate counsel did not recognize this error that was first noted by the Louisiana Fifth Circuit's errors patent review.   ECF No. 25, ¶V, at 51-52.   Jacobs claims that this error by trial counsel resulted in his conviction for two murders instead of one.

Jacobs also contends that he was deprived of effective assistance of counsel and the right to trial by jury because of his counsel's concession of the elements of the offense during trial.   *Id*, ¶IX, at 62; ECF No. 42, ¶IX, at 42.   In a rather conclusory statement, and without record citation to any specifically challenged statement by his counsel, Jacobs claims that his "counsel conceded all of the elements of the offense of second-degree murder without consulting the defendant." ECF No. 25, ¶V, at 63 (citing *McCoy v. Louisiana*, 138 S. Ct. 1500, 1511 (2018)).   Jacobs argues that the decision to concede the elements was inappropriate since Jacobs was no longer facing a death sentence like the defendants in *McCoy* and *Florida v. Nixon*, 543 U.S. 175, 187 (2004).   *Id*. He also asserts that counsel failed in her duty to put the State's case to a "meaningful adversarial testing."   *Id*. at 63-64 (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

In addition, in another conclusory statement, Jacobs further argues that his counsel was ineffective for failing to object to the autopsy "rod" photographs, addressed in claim ten, when the State failed to establish their relevance at trial.   *Id*., ¶X, at 64.

The State argues that counsel was not ineffective because the record was clear that the State intended to prosecute Jacobs for both murders listed in a single paragraph.   ECF No. 38, ¶5, at 48.

The State reiterates that the state appellate court found no prejudice arising from the form of the amended indictment as it had no impact on the substance of the charges.  *Id*. at 51, 53.   The State also indicates that the state courts did not find that Jacobs' counsel admitted his guilt to second degree murder and instead argued for the jury to return a manslaughter verdict instead of second degree murder.  *Id*. at 66.   Noting that *McCoy* is not retroactive on collateral review, the state argues that, even if it were, Jacobs has neither alleged nor shown that counsel made these arguments without consulting him or over his express objection.  *Id*. at 66-67.

    a.    <u>State Court Rulings</u>

The state trial court addressed Jacobs' ineffective assistance of counsel claims on post-conviction review under the *Strickland* standards.[597]   The court held that a review of the opening statements showed that "counsel clearly presented her defense and trial strategy, instructing the jury that the proper verdict was manslaughter, and the defendant was merely a follower who was not to blame."[598]   The court also found that Jacobs' counsel did not concede the elements of the offense, and instead "presented the facts in a way most favorable to the defendant."[599]

The court also held that the claim that counsel failed to challenge the indictment was barred from further review because the validity of the indictment was thoroughly addressed on direct appeal.[600]   Further, the court held that the claim was without merit because the prosecution amended the indictment in open court and in writing on May 13, 2005.[601]   Defense counsel acknowledged on the record that the defense was aware of the amended charges.   The court also found that any mistake was inadvertent and a "miswriting" under LA. CODE CRIM. PROC. ANN. art.

---

[597] St. R. Vol. 27 of 109 at 7057-58, Trial Court Order, 5/12/14.
[598] *Id*. at 7058.
[599] *Id*.
[600] *Id*. at 7059.
[601] *Id*.

487(A).    The court concluded that Jacobs failed to prove a deficiency in his counsel's performance or prejudice.[602]

The state trial court also held that Jacobs' challenge to counsel's failure to object to the autopsy "rod" pictures was procedurally barred because the admissibility of the photographs was fully litigated on appeal.[603]    Nevertheless, based on the substantive rejection of the claims on appeal, the court resolved that Jacobs could not prove prejudice.

On June 30, 2014, the Louisiana Fifth Circuit provided the last reasoned opinion denying Jacobs' claims as meritless under *Strickland* and related state case law.[604]    The court agreed with the trial court that its prior substantive rulings on appeal precluded further review of his challenges to the indictment as support for his ineffective assistance claim.[605]    The court also found no error in the trial court's findings that counsel did not concede the elements of the crime and presented facts in a light favorable to defendant, through proper strategic choices based upon professional judgment.[606]    The court, citing *Nixon*, also relied on by Jacobs, reiterated that defense counsel had the ultimate right to make certain strategic and tactical decisions without obtaining the client's approval.[607]    The court further reiterated, similar to the state trial court, that counsel could not be held ineffective for failing to object to the "rod" photographs which the court found on appeal had been properly admitted.[608]

The Louisiana Supreme Court denied Jacobs' related writ application without stated reasons on April 17, 2015.[609]

---

[602]    *Id*.
[603]    *Id*.
[604]    *Id*. at 7081, 5th Cir. Order, 14-KH-424, 6/30/14.
[605]    *Id*. at 7082.
[606]    *Id*. at 7083.
[607]    *Id*. at 7082 (citing *Florida v. Nixon*, 543 U.S. 175, 187 (2004)).
[608]    *Id*. at 7083.
[609]    *Jacobs*, 168 So. 3d at 394; St. R. Vol. 28 of 109 at 7275, La. Sup. Ct. Order, 2014-KP-1605, 4/17/15.

   b.  _Strickland_ Standards

  The issue of effective assistance of counsel is a mixed question of law and fact.[610] Under the AEDPA standards outlined previously, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

  In _Strickland_, relied on by the Louisiana courts, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[611] The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[612] Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[613] A court need not address both prongs of the conjunctive _Strickland_ standard, but may dispose of a claim based solely on a petitioner's failure to meet either prong of the test.[614] A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under _Strickland_, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[615]

  The Supreme Court has clarified that, on habeas review under _Strickland_, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[616] "Even under _de_

---

[610] _Strickland_, 466 U.S. at 698 (citation omitted); _Clark v. Thaler_, 673 F.3d 410, 416 (5th Cir. 2012); _Woodfox_, 609 F.3d at 789 (citing _Richards_, 566 F.3d at 561).

[611] _Strickland_, 466 U.S. at 697.

[612] _Id._ at 687-88.

[613] _Id._ at 694; _accord_, _United States v. Kimler_, 167 F.3d 889, 893 (5th Cir. 1999).

[614] _Kimler_, 167 F.3d at 893 (citation omitted).

[615] _Motley v. Collins_, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting _Strickland_, 466 U.S. at 693); _Harrington_, 562 U.S. at 112 (_Strickland_ requires a "substantial" likelihood of a different result, not just "conceivable" one.)

[616] _Harrington_, 562 U.S. at 105 (internal quotations and citation omitted).

*novo* review, the standard for judging counsel's representation is a most deferential one."[617]   The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[618]

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by a petitioner.[619]   "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[620]   A federal habeas court must eliminate the distorting effects of hindsight, reconstruct the circumstances of counsel's challenged conduct, and evaluate the conduct from counsel's perspective at the time of trial.[621]   Tactical decisions, when supported by the circumstances, are objectively reasonable and not deficient performance.[622]

### c.    No Challenge to the Indictment

This court has previously discussed in detail Jacobs' fourth claim challenging the validity and form of the indictment under which he was tried.   Based on the record and the reasoned state court opinions, the court has already determined that Jacobs was on notice that he was charged with and being tried for the second degree murder of both victims as pronounced by the district attorney when the indictment was amended on May 13, 2005.[623]   Jacobs and his counsel also had more than sufficient knowledge of the charged crime to pursue numerous pretrial matters and

---

[617] *Id.*

[618] *Strickland*, 466 U.S. at 690.

[619] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) *superseded by statute on other grounds as stated in Hernandez v. Thaler*, 463 F. App'x 349, 356 (5th Cir. 2012).

[620] *Harrington*, 562 U.S. at 105 (citations and quotations omitted).

[621] *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000) (citation omitted).

[622] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997), and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[623] *Jacobs*, 67 So. 3d at 546; St. R. Vol. 54 of 109 at 13402-03, 5th Cir. Opinion, 07-KA-887, 5/24/11; *see Domingue*, 517 So. 2d at 347 n.1 ("Since second degree murder is a lesser included offense of first degree murder, the state may abandon the charge of the greater crime and proceed with the prosecution of the lesser, and no formal amendment of the indictment is necessary.") (citation omitted).

prepare defenses.[624]   He was clearly on notice of the charges against him which is what the Constitution requires.[625]

In addition, although an incorrect piece of paper was the source, the verbiage describing the charges that was read to the jury by the trial court clerk accurately reflected the charges arising from the deaths of the two victims.[626]   Jacobs has shown no resulting prejudice from counsel's failure to object the reading of charges because the district attorney simply would have exercised its authority to amend the proper piece of paper and correct the technical error about which Jacobs now complains.

For all of the reasons discussed previously, Jacobs has not shown a constitutional error occurred in the form or content of his amended indictment.   He, therefore, cannot establish a deficient performance or prejudice resulting from counsel's failure to object to the indictment. Trial counsel is not ineffective for failing to make a specious objection.[627]   As the state courts concluded, because the underlying claims about the validity of the indictment were meritless, trial counsel was not ineffective for failing to object to the form or reading of the indictment.

As noted above, Jacobs made a veiled reference to his appellate counsel's failure to recognize the indictment concerns discussed in the Louisiana Fifth Circuit's errors patent review. Although he fails to expand on this notion, it too is meritless.   The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel.[628]   "[T]he

---

[624] *Jacobs*, 67 So. 3d at 546; St. R. Vol. 54 of 109 at 13403, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[625] *Cooper*, 714 F.3d at 877.

[626] St. R. Vol. 54 of 109 at 13650, Tr. of Reading of Indictment, 8/23/06.

[627] *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *see also Kimler*, 167 F.3d at 893 ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.") (citations omitted).

[628] *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997) (same); *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (criminal defendants are entitled to effective assistance of counsel in their first appeal of right) (same).

applicable test to be applied in assessing such a claim is instead whether the issue ignored by appellate counsel was 'clearly stronger' than the issues actually presented on appeal."[629]    Thus, to prevail on a claim that appellate counsel was ineffective, a petitioner must show that his appellate counsel unreasonably failed to assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.[630]

Just as with his trial counsel, Jacobs has not established that his appellate counsel was ineffective for failing to assert a frivolous claim.   The record is clear that had such a claim been asserted on direct appeal, it would have been rejected by the Louisiana Fifth Circuit, just as it did in its errors patent review.

For all of the foregoing reasons, Jacobs has failed to meet either prong of the *Strickland* standard or establish an error in the state courts' conclusions under *Strickland*.   He, therefore, has not established that the state courts denial of relief was contrary to or an unreasonable application of Supreme Court law.   He is not entitled to relief on this claim.

d.    Admission of the Elements of the Crime

Jacobs in a general fashion argues that his trial counsel was ineffective under *Strickland*, and denied him the right to a jury trial under *Cronic*, for conceding the elements of the crime apparently while attempting to convince the jury to reach a manslaughter verdict.   Jacobs, however, points to no particular statement(s) by counsel in the transcript for this court to review. There is no basis for the court to broadly construe this counsel-filed pleading or to scour the record to find support for Jacobs' overly-broad and conclusory representations.   "[C]onclusory

---

[629] *Matthews v. Cain*, 337 F. Supp. 3d 687, 712 (E.D. La. Aug. 29, 2018) (order adopting attached report and recommendation) (citing *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007), and *Smith*, 528 U.S. at 288).
[630] *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285-86.

allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."[631]

Furthermore, Jacobs asserts his claim under both *Strickland* and *Cronic*. A habeas petitioner typically must satisfy the two-prong *Strickland* test outlined above to obtain relief.[632] In *Cronic*, the Supreme Court created "a very limited exception to the application of *Strickland*'s two-part test," where prejudice is presumed "in situations that 'are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified.'"[633] The Supreme Court has identified three situations when *Cronic* may apply, one of which Jacobs relies on here in terms of the "meaningful adversarial test." [634]

Under *Cronic*, prejudice is presumed when the "petitioner is represented by counsel at trial, but his or her counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing.'"[635] Specifically, Jacobs argues that his trial counsel failed to put the State's case to a meaningful adversarial test because counsel admitted his guilt to critical facts when encouraging the jury to return a manslaughter verdict.

*Cronic* and its progeny are clear, however, that prejudice is not presumed unless an attorney fails *entirely* to defend the client.[636] This utter failure by counsel only occurs when it can be shown that counsel fails so egregiously that "it is as if the defendant had no representation at all."[637] *Cronic* applies to concessions of guilt "only when they result in a 'complete abandonment of

---

[631] *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

[632] *Haynes*, 298 F.3d at 380 (citing *Strickland*, 466 U.S. at 700).

[633] *Haynes*, 298 F.3d at 380 (quoting *Cronic*, 466 U.S. at 658).

[634] *See Bell v. Cone*, 535 U.S. 685, 695-606 (2002) (explaining the exceptions posed under *Cronic*).

[635] *Haynes*, 298 F.3d at 380 (citing *Cronic*, 466 U.S. at 659).

[636] *See Bell*, 535 U.S. at 696.

[637] *Haynes*, 298 F.3d at 381; *Thomas v. Davis*, 968 F.3d 352 (5th Cir. 2020).

counsel'; that is, the attorney must concede 'the only factual issues in dispute.'"[638]   However, strategic and tactical concession of fact are to be reviewed under *Strickland*.

By his own argument, Jacobs excuses himself from the *Cronic* exception.   Jacobs recognizes that his counsel's alleged admission of fact or guilt occurred during counsel's attempt to convince the jury, especially in light of his recorded confession, that manslaughter, not second degree murder, is all that could be proven.   This was not abandonment of a defense or concession of all fact.   To the contrary, this was an appropriate defense strategy designed to "garner credibility with the jury . . . on more severe counts."[639]   Thus, Jacobs' claim is governed by *Strickland* and not *Cronic*.

Jacobs also relies on the Supreme Court's holdings in *McCoy* and *Nixon* to support his claim that counsel was ineffective.   First, under AEDPA, a federal court is bound to consider "clearly established federal law as determined by the [United States] Supreme Court at the time that [a petitioner's] conviction became final."[640]   As noted by the State, the Supreme Court did not issue the *McCoy* decision until May 14, 2018, years after Jacobs' conviction was final.   More importantly, the Supreme Court has *not* pronounced *McCoy* to be either a new rule of law or one that is retroactively applicable.[641]

Second, even if *McCoy* were relevant, Jacobs has failed to establish the basic premise on which both *McCoy* and *Nixon* were resolved.   In those cases, the Supreme Court's holdings were

---

[638]   *Thomas* at 355 (quoting *Haynes*, 298 F.3d at 380 (citation omitted)).

[639]   *Id.*

[640]   *Nelson v. Quarterman*, 472 F.3d 287, 293 (5th Cir. 2006) (citation omitted).

[641]   *Smith v. Stein*, 982 F.3d 229, 235 (4th Cir. 2020) (holding that *McCoy* "is not retroactively applicable on collateral review"), *cert. denied*, 141 S. Ct. 2532 (2021); *Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir. 2020); *see also Fratta v. Lumpkin*, No. 21-70001, 2022 WL 44576, at *3 (5th Cir. Jan. 5, 2022) (recognizing that "it is doubtful" that *McCoy* applies retroactively on collateral review) (citing *Christian* and *Stein*); *Colvin v. Tanner*, No. 19-923, 2021 WL 356238, at *1 (W.D. La. Feb. 2, 2021).

focused on counsel making concessions and arguments against the defendant's clearly verbalized opposition to counsel's planned defense.

For example, in *Nixon*, a capital case decided on December 13, 2004, long before Jacobs' conviction was final, the Supreme Court held that the Sixth Amendment is not violated by counsel if the defendant never disavows or protests his counsel's decision to strategically admit guilt.[642] As noted above, years later in *McCoy*, a capital case decided on May 14, 2018, years after Jacobs' conviction was final, the Supreme Court clarified that point when it held that "counsel may not admit [a] client's guilt of a charged crime over the client's intransigent objection to that admission."[643]   The Court assuredly recognized that the defendant in *McCoy* "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt," and his objections were noted on the trial record.[644]   The Court also preserved the independent role of the attorney to make strategic and trial management decisions including "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence."[645]

Thus, the Sixth Amendment is violated by counsel's admission of guilt only when the defendant specifically instructs counsel not to concede any portion of guilt and counsel disregards the defendant's wishes.[646]   That is not the situation presented in Jacobs' case.   Jacobs has not at any time alleged or established, and the record fails to demonstrate, that before or during his trial, he vehemently opposed his trial counsel's decision to argue the facts, many of which were confessed in his inculpatory recorded statement played at trial, to convince the jury to return a

---

[642] *Nixon*, 543 U.S. at 188.
[643] *McCoy*, 138 S. Ct. at 1510.
[644] *Id*. at 1505.
[645] *Id*. at 1508 (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)).
[646] *Id*. at 1504.

manslaughter verdict.    There is no showing here that Jacobs opposed counsel's strategic argument.   This takes Jacobs outside of the Sixth Amendment protections expounded in *McCoy* and *Nixon*.    Jacobs' claim cannot be assessed under *Strickland* through the trappings of hindsight.[647]

For these reasons, Jacobs has not established that his counsel violated his Sixth Amendment rights or that he is entitled to relief under *Strickland*, or *Cronic* as stated above.    The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court precedent, especially that precedent in place at the time his conviction was final.    He is not entitled to relief on this claim.

e.    No Objection to the Autopsy "Rod" Photographs

As discussed thoroughly above, Jacobs' trial counsel challenged the propriety of the state court's decision to allow the State to admit the autopsy "rod" photographs because the "gruesome" prejudice outweighed the probative value of the photographs.    Jacob, nevertheless, asserts in one brief statement, that his counsel provided ineffective assistance when she failed to object to the State's use of the photographs at trial because the State failed to establish the relevance of the photographs "as promised" in pretrial proceedings.    Jacobs offers *no* explanation or briefing of this singular, conclusory argument in the introduction to his tenth claim.    ECF No. 25, ¶X, at 64. The court repeats, "[c]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."[648]

Moreover, Jacobs' lengthy pretrial and post-trial challenges to the photographs were previously summarized above.    Of note, when the "rod" photographs were admitted at trial, it was

---

[647] *Strickland*, 466 U.S. at 689; *accord*, *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (when applying *Strickland* in the context of a guilty plea, the courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences" on how to proceed with his defense).
[648] *Miller*, 200 F.3d at 282.

done with preservation of counsel's prior objections to their admittance.[649]   Jacobs' counsel also rigorously cross-examined the pathologist at trial to elicit testimony for the jury that the bullet paths depicted in the photographs could not definitively establish where the shooter or victim were in the room or how many shooters were present; the pictures instead proved, based on the angle of the path through the body, where the gun was in relation to the wounds in the victims.[650]

Jacobs' counsel did not specifically enter an objection on the record at trial complaining that the State failed to honor some perceived "promise" to establish through the pictures how many shooters were present.   This failure led the appellate court to initially note a procedural bar to review of that unpreserved objection.[651]   But the court did not stop there; the court alternatively addressed the merits of Jacobs' claim.   In doing so, the court resolved that that the photographs were properly admitted as relevant and that the State did not misrepresent the relevance of the photographs with respect to the position of a shooter and angle of the bullet trajectory in relation to each victim.[652]   As outlined above, the court found the probative value of the photographs outweighed any prejudicial effect of their gruesome nature.[653]

Thus, even if counsel had urged the objection and preserved it for appeal, the claim would have failed for the reasons given by the appellate court in finding the claim meritless.   As such, Jacobs' counsel was not ineffective for failing to assert a meritless objection.[654]   "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."[655]   Thus, Jacobs has not established prejudice under *Strickland* arising from his trial counsel's failure to urge the objection.

---

[649] St. R. Vol. 51 of 109 at 12822, Trial Tr., 8/23/06.

[650] *Id.* at 12832 - 33.

[651] *Jacobs*, 67 So. 3d at 567; St. R. Vol. 54 of 109 at 13440, 5th Cir. Opinion, 07-KA-887, 5/24/11.

[652] *Id.* at 567-68; St. R. Vol. 54 of 109 at 13440-41.

[653] *Id.* at 568; St. R. Vol. 54 of 109 at 13441.

[654] *Kimler*, 167 F.3d at 893 ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim") (citations omitted).

[655] *Clark*, 19 F.3d at 966.

For these reasons, Jacobs has not established that his counsel was ineffective or that he is entitled to relief under *Strickland*.   The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court precedent.   He is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Lawrence Jacobs' habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[656]

New Orleans, Louisiana, this _____6th_____ day of March, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[656] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).